**HERRICK, FEINSTEIN LLP**

Avery S. Mehlman
Stephen B. Selbst
Janice Goldberg
Zachary Denver
2 Park Avenue
New York, NY 10016
Tel: 212-592-1400
Fax: 212-592-1500

*Proposed Attorneys for Wythe Berry Fee Owner LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

| | |
|---|---|
| **In re** | **Chapter 11** |
| **WYTHE BERRY FEE OWNER LLC,** | **Case No. 22-11340 (MG)** |
| Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| **WYTHE BERRY FEE OWNER LLC,** | |
| Plaintiff, | **Adv. Proc. No._____** |
| -against- | <u>**NOTICE OF REMOVAL**</u> |
| **WYTHE BERRY LLC, YOEL GOLDMAN and ZELIG WEISS,** | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT,
         FOR THE SOUTHERN DISTRICT OF NEW YORK**

Wythe Berry Fee Owner LLC ("<u>Fee Owner</u>" or the "<u>Debtor</u>"), by its attorneys, Herrick,

Feinstein LLP, respectfully applies for the removal (the "<u>Notice of Removal</u>") of the State Court

Action (as defined below) to the United States District Court for the Southern District of New

York, with the intention that the action, upon removal, shall be referred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and in support thereof respectfully states as follows:

1.      On October 6, 2022 (the "Petition Date"), Mishmeret Trust Company Ltd., solely in its capacity as Trustee ("Mishmeret" or the "Trustee") of certain Series C Notes, Yelin Lapidot Provident Funds Management Ltd., The Phoenix Insurance Company Limited and Klirmark Opportunity Fund III L.P. (each, a "Petitioning Creditor" and together, the "Petitioning Creditors") filed an involuntary petition (the "Petition") pursuant to section 303 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") naming Fee Owner as the alleged debtor.

2.      On January 18, 2023, after hearing, an Order for Relief was granted by the Honorable Judge Glenn on the Petition.

3.      No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the chapter 11 case.

2.      Fee Owner is the owner of the luxury William Vale Hotel, office, retail, and parking located at 55 Wythe Avenue, Brooklyn, New York (the "WV Complex").

3.      On or about February 28, 2017, Fee Owner and Wythe Berry LLC ("Lessee") (and Yoel Goldman and Zelig Weiss, as guarantors) entered into a Lease Agreement (the "Lease") concerning the WV Complex. Fee Owner is the landlord under the Lease and Lessee is the tenant. Lessee, Yoel Goldman, and Zelig Weiss are defendants in the State Court Action ("Defendants").

4.      Fee Owner terminated the Lease effective May 20, 2021 based upon Lessee's failure to pay rent due under the Lease and other defaults, yet Lessee has thus far failed to vacate or surrender the WV Complex and is currently illegally holding over at the premises. Lessee presently owes Fee Owner at least $15 million in unpaid rent and/or use and occupancy, exclusive of interest.

5.      Fee Owner commenced the State Court Action on June 11, 2021 on the basis of the Lessee's failure to cure numerous defaults under the Lease, including failure to pay Fee Owner rent due in the amount of $7.5 million.  Copies of the pleadings in the State Court Action are attached as Exhibit "A" in accordance with Bankruptcy Rule 9027(1).

6.      In this Notice of Removal, Fee Owner is exercising its right pursuant to 28 U.S.C. §§ 1441 *et. seq.* and 1452,[1] *et. seq.*, and Bankruptcy Rule 9027, to remove the following pending state court action (the "State Court Action") from the Supreme Court of the State of New York, County of Kings (the "State Court") to the United States District Court for the Southern District of New York: *Wythe Berry Fee Owner LLC v. Wythe Berry LLC et al.*, Index No. 514152/2021.

---

[1] Under § 1452, a party may remove a cause of action in a civil action to the district court for the district where such civil action is pending. Although the civil action is pending in Kings County, removal to the Southern District is appropriate because the Bankruptcy Court has subject-matter jurisdiction over the State Court Action and for the benefit of consolidation. *See Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 49-50 (2d Cir. 2009) ("Where state and federal courts share subject matter jurisdiction, a removal statute may provide the procedural mechanism for transferring a case from one court to another, but the removal statute is not the source of subject matter jurisdiction. . . . It follows that, when a removal statute is not the source of subject matter jurisdiction, improper removal under that statute does not amount to a deficiency in subject matter jurisdiction."); *Scott v. N.Y. Admin. for Children's Servs.*, 678 F. App'x 56, 56 (3d Cir. 2017) ("Failure to remove a case in conformance with the venue provision of 28 U.S.C. § 1441(a) does not create a defect in subject matter jurisdiction."); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1388 (11th Cir. 1997) ("We hold that failure to comply with the geographic requirements of 28 U.S.C. § 1441(a) [the general federal removal statute] is a procedural defect that does not deprive a district court of subject matter jurisdiction in a removed case.").

Fee Owner requests that the State Court Action, upon removal, be transferred to the Bankruptcy

Court (Honorable Martin Glenn, U.S.B.J., presiding) for the reasons set forth herein.

7.      The State Court Action is pending in Kings County, but the Petition was filed in

the Southern District of New York Bankruptcy Court. Removal is appropriate because the

Bankruptcy Court has subject-matter jurisdiction over the State Court Action.[2]

8.      The State Court Action was initiated before the commencement of the Debtor's

chapter 11 case. This Notice of Removal is timely pursuant to Bankruptcy Rule 9027(a)(2) as it

has been filed within 90 days after entry of the order for relief in Debtor's chapter 11 proceeding.

9.      The Debtor's case is presently pending before the Honorable Martin Glenn,

U.S.B.J., United States Bankruptcy Court for the Southern District of New York under the

caption *In re Wythe Berry Fee Owner LLC*, Case No. 22-11340 (MG) (Bankr. S.D.N.Y.). Fee

Owner respectfully submits that the State Court Action should be removed to this Court pursuant

to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

10.      Bankruptcy Rule 9027(a) provides, in pertinent part, as follows:

(2)      *Time for Filing; Civil Action Initiated For Commencement of the
Case Under The Code.* If the claim or cause of action in a civil action is
pending when a case under the Code is commenced, a notice of removal
may be filed only within the longest of (A) 90 days after the order for
relief in the case under the Code, (B) 30 days after entry of an order
terminating a stay, if the claim or cause of action in a civil action has been
stayed under 5362 of the Code, or (C) 30 days after a trustee qualifies in a
Chapter 11 reorganization case but not later than 180 days after the order
for relief.

11.      At the time of the commencement of the Debtor's bankruptcy case, the State

Court Action was pending and, until the filing of this Notice of Removal and the filing of a copy

of this Notice of Removal with the State Court, continues to be pending before the State Court.

---

[2] *See Orange Cnty. Water Dist.*, 584 F.3d at 49-50.

12.    Pursuant to 28 U.S.C. § 157 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012, referring all cases under the Bankruptcy Code and any or all proceedings arising under the Bankruptcy Code or arising in or related to a case under the Bankruptcy Code to the Bankruptcy Court (the "Standing Order"), the Bankruptcy Court presiding over the bankruptcy case has jurisdiction over the causes of action asserted in the State Court Action under 28 U.S.C. § 1334.

13.    Although, as a procedural matter, removal must be to the District Court, upon removal to the District Court, pursuant to 28 U.S.C. § 157(a) and the Standing Order, the State Court Action should automatically be referred to the Bankruptcy Court. Fee Owner respectfully submits that the State Court Action should be referred to the Honorable Martin Glenn, as His Honor is fully familiar with the facts and circumstances of the Debtor's chapter 11 case.

**THIS COURT HAS JURISDICTION TO ADJUDICATE**
**THE STATE COURT ACTION PURSUANT TO 28 U.S.C. § 1334(b)**

14.    The jurisdiction of the bankruptcy court is delineated in 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all proceedings arising under title 11, or arising in or related to cases under title 11." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

15.    Section 1334 provides the procedural basis for removal of an action pursuant to 28 U.S.C. § 1452(a). District courts (and bankruptcy courts) may exercise three types of jurisdiction pursuant to the statute. They are "arising under" and "arising in" jurisdiction, which courts regard as a type of federal question jurisdiction, and "related to" jurisdiction. *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003). A bankruptcy judge may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11 but may only hear a "non-core" proceeding if it is

"related to" a bankruptcy action. *Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc.*, 209 B.R. 307, 310-11 (S.D.N.Y. 1997). The Second Circuit has construed a bankruptcy court's core jurisdiction "as broadly as possible" so as to be "close to or congruent with constitutional limits." *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail)*, 304 F.3d 223, 229 (2d Cir. 2002). This jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings." *Id.*

16.    The claims and causes of actions underlying the State Court Action are "core proceedings" within the meaning of, *inter alia*, 28 U.S.C. §157(b)(2)(A), (B) and (C) in that the State Court Action concerns, *inter alia*, matters involving property of the Debtor's estate under section 541 of the Bankruptcy Code. The claims at issue concern Fee Owner's sole asset, the WV Complex and, *inter alia*, allegations that Fee Owner has incurred damages.

17.    As set forth *supra*, this Court has original jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1334(b), and it is hereby removed to this Court under the provisions of 28 U.S.C. §§ 1446 and 1452(a).

18.    28 U.S.C. § 1452(a) provides as follows:

> (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit's police or regulatory power, to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

19.    The State Court Action, including all claims and causes of action asserted therein, is a civil action other than a proceeding before the United States Tax Court; and it is not a civil action by a governmental unit to enforce such governmental unit's police or regulatory power.

20.    As the title to 28 U.S.C. § 1452 itself indicates, ("Removal of Claims related to bankruptcy cases"), matters that can be removed include claims "related to" a bankruptcy case within the meaning of 28 U.S.C. § 1334(b).

21.    With respect to removal pursuant to 28 U.S.C. §1441(a), 28 U.S.C. §1446 sets forth procedures similar to those contained in Bankruptcy Rule 9027. Section 1446(a) provides as follows:

> (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

22.    As stated in *California Public Employees' Retirement System v. Worldcom, Inc.*, 368 F.3d 86, 103 (2d. Cir. 2004),

> When Congress enacted Section 1452(a) in 1984, . . . "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with *all* matters connected with the bankruptcy estate. . . ." Accordingly, in its every detail, Section 1452(a) is designed to further Congress's purpose of centralizing bankruptcy litigation in a federal forum.

*Id.* (quoting *Celotex v. Edwards*, 514 U.S. 300, 308 (1995)). That premise is applicable in the instant case where the subject matter concerns the administration of the Debtor's assets in its chapter 11 proceeding.

23.    Bankruptcy courts may also adjudicate state law claims pursuant to "arising in" jurisdiction when those claims are at the "heart" of the administration of the bankruptcy estate, as is the case here. *See, e.g.*, *Central Vt. Public Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003) (citing *In re Ben Cooper*, 896 F.2d 1394, 1399 (2d Cir. 1991)). The claims asserted in the State Court Action materially affect the ability of the Debtor to reorganize because, as noted

7

above, Fee Owner's sole asset is the WV Complex and the Lessee is occupying the premises and illegally holding over despite Fee Owner's termination of the Lease.

24.    Lessee currently owes Fee Owner not less than $15 million, exclusive of interest, in unpaid rent and/or use and occupancy for 2021. In December 2021, the State Court entered an Order requiring Lessee to pay $15 million annually in use and occupancy to Fee Owner, commencing February 1, 2022, for the pendency of the State Court Action as a condition of Lessee's continued occupancy at the WV Complex. Lessee paid the first ordered use and occupancy payment of $7.5 million on February 1, 2022 but then withheld the second ordered use and occupancy payment that was due on August 1, 2022. Lessee's non-compliance with the Order has been the subject of motions practice before the State Court. Lessee only recently cured its non-compliance with the Order by payments to Fee Owner of $7.5 million on January 26, 2023 and $7.5 million on February 1, 2023.

25.    Here, although Fee Owner's claims may nominally be state law claims, the nature of the proceedings and the relief requested nevertheless provide this Court with "arising in," "arising under," and "related to" jurisdiction over this action, pursuant to 28 U.S.C. § 1334(b). This action "arises in" a case under title 11 because it concerns, *inter alia*, the property of the Debtor's estate, which constitute "core proceedings" under 28 U.S.C. § 157(b). Second, the State Court Action is "related to" a case under title 11 because it will have a conceivable impact on the handling and administration of the Debtor's assets.

26.    To the extent that the Bankruptcy Court does not possess core jurisdiction over Fee Owner's claims, it possesses "related-to" jurisdiction over them. A proceeding meets the jurisdictional threshold of 28 U.S.C. § 1334(b) if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *See, e.g.*, *In re*

8

*Cayahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (stating the bankruptcy court has "related to" jurisdiction over any action that might have a "conceivable effect" on the bankrupt estate). Here, at a minimum, the resolution of Fee Owner's claims will directly affect the Debtor's ability to operate at the WV Complex and to reorganize under chapter 11. The claims set forth in the State Court Action are intimately related to the Debtor's bankruptcy case.

27.    Fee Owner's claims against Defendants are thus also "related to" the Debtors' bankruptcy case because the outcome of the litigation of said claims will have an effect upon the rights of the Debtor and upon the Debtor's estate.

28.    Although 28 U.S.C. § 1334(b) does not provide a definition for "related to" actions,[3] the Second Circuit applies the following test to determine if a third-party action is related to a bankruptcy proceeding:

> The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any *"conceivable effect"* on the bankruptcy estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.

*Publicker Indus. Inc. v. United States (In re Cuyahoga)*, 980 F.2d 110, 114 (2d Cir. 1992); *see also Kerusa, Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708 (GEL), 2004 WL1048239, at *3 (S.D.N.Y. May 7, 2004) (noting claims against non-debtor were clearly "related to" bankruptcy case because they likely give rise to contribution or indemnity claims). In light of the foregoing, the Bankruptcy Court can and should adjudicate any claims arising from the proceedings held before it, as the bankruptcy case will be directly impacted from the claims asserted by Fee Owner.

---

[3] *Nemsa Establishment, S.A. v. Viral Testing Systems Corp.*, No. 95 Civ. 0277 (LAP), 1995 U.S. Dist. LEXIS 11650, at *5, *6 (S.D.N.Y. Aug. 14, 1995).

29.     No previous application has been made for this or any similar relief in connection

with the State Court Action. In accordance with 28 U.S.C. § 1452 and Bankruptcy Rule 9027(c),

after the filing of this Notice of Removal, the Debtor shall promptly give written Notice of the

Filing of the Notice of Removal to Defendants, and shall file a copy of the Filing of the Notice of

Notice of Removal with the County Clerk of the Supreme Court of the State of New York,

County of Kings.

**WHEREFORE**, Fee Owner respectfully requests that the matter of *Wythe Berry Fee*

*Owner LLC v. Wythe Berry LLC et al.*, Index No. 514152/2021, presently pending in the Civil

Court of the State of New York, County of Kings, be removed to this Court, that this Court accept

jurisdiction of said action and, upon acceptance of jurisdiction, that the State Court Action be

thereupon be referred to the Honorable Martin Glenn of the United States Bankruptcy Court for

the Southern District of New York.

Dated: February 9, 2023
      New York, New York

Respectfully submitted,

**HERRICK, FEINSTEIN LLP**

By: */s/ Janice Goldberg*
    Avery S. Mehlman
    Stephen B. Selbst
    Janice Goldberg
    2 Park Avenue
    New York, New York 10016
    (212) 592-1400
    amehlman@herrick.com
    sselbst@herrick.com
    jgoldberg@herrick.com

    *Proposed Attorneys for*
    *Wythe Berry Fee Owner LLC*

# EXHIBIT A
# Part 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WYTHE BERRY FEE OWNER LLC,

      Plaintiff,

    -against-

WYTHE BERRY LLC, YOEL GOLDMAN and
ZELIG WEISS,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. _____

Date Index No. Purchased:

Plaintiff designates Kings County as
the place for trial.

Venue is based on CPLR §§ 501 &
503.

**<u>SUMMONS</u>**

TO THE ABOVE NAMED DEFENDANTS:

  PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the

Complaint in this action, and to serve a copy of your answer, or, if the Complaint is not served

with this Summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty

(20) days after the service of this Summons, exclusive of the day of service (or within thirty (30)

days after the service is complete if this summons is not personally delivered to you within the

State of New York).

  YOU ARE HEREBY NOTIFIED THAT, should you fail to answer or appear, a

judgment will be entered against you by default for the relief demanded in the Complaint.

Dated: New York, New York
   June 11, 2021

        HERRICK, FEINSTEIN LLP

        By: */s/ Janice Goldberg*
          Avery S. Mehlman
          Janice Goldberg
          Meaghan Roe
        Two Park Avenue
        New York, New York 10016
        (212) 592-1400
        *Attorneys for Plaintiff Wythe Berry Fee*
        *Owner LLC*

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 13 of 100

To:    Wythe Berry LLC
266 Broadway, Suite 301
Brooklyn, New York 11211

Yoel Goldman
c/o Wythe Berry LLC
266 Broadway, Suite 301
Brooklyn, New York 11211

Zelig Weiss
c/o Wythe Berry LLC
266 Broadway, Suite 301
Brooklyn, New York 11211

2

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 14 of 100



# NOTICE TO COMMERCIAL TENANT:

If you have lost significant revenue or had significantly increased necessary costs during the COVID-19 pandemic, and you sign and deliver this hardship declaration form to your landlord, you cannot be evicted until at least August 31, 2021 for nonpayment of rent or for holding over after the expiration of your lease. You may still be evicted for violating your lease by persistently and unreasonably engaging in behavior that substantially infringes on the use and enjoyment of other tenants or occupants or causes a substantial safety hazard to others.

If your landlord has provided you with this form, your landlord must also provide you with a mailing address and e-mail address to which you can return this form. If your landlord has already started an eviction proceeding against you, you can return this form to either your landlord, the court, or both at any time. You should keep a copy or picture of the signed form for your records. You will still owe any unpaid rent to your landlord. You should also keep careful track of what you have paid and any amount you still owe.

Index Number (if known/applicable): _____

County and Court (if known/applicable): _____

## COMMERCIAL TENANT'S DECLARATION OF HARDSHIP DURING THE COVID-19 PANDEMIC

I am the owner, chief executive officer, president, or similar officer of (name of business),

_____

in which is a commercial tenant at (address of commercial unit).

_____

Commercial Eviction Notice - English

☐ My business is resident in New York state, independently owned and operated, not dominant in its field, and employs fifty or fewer persons. My business is experiencing financial hardship, and is unable to pay the rent or other financial obligations under the lease in full or obtain an alternative suitable commercial property because of one or more of the following:

1. Significant loss of revenue during the COVID-19 pandemic.

2. Significant increase in necessary expenses related to providing personal protective equipment to employees or purchasing and installing other protective equipment to prevent the transmission of COVID-19 within the business.

3. Moving expenses and difficulty in securing an alternative commercial property make it a hardship for the business to relocate to another location during the COVID-19 pandemic. To the extent the business has lost revenue or had increased expenses, any public assistance the business has received since the start of the COVID-19 pandemic does not fully make up for the business's loss of revenue or increased expenses.

I understand that the business must comply with all other lawful terms under its commercial tenancy, lease agreement or similar contract. I further understand that lawful fees, penalties or interest for not having paid rent in full or met other financial obligations as required by the commercial tenancy, lease agreement or similar contract may still be charged or collected and may result in a monetary judgment. I further understand that the landlord may be able to seek eviction after August 31, 2021, and that the law may provide certain protections at that time that are separate from those available through this declaration.

Signed: _____

Printed name: _____

Date signed: _____

**NOTICE:** You are signing and submitting this form under penalty of law. That means it is against the law to make a statement on this form that you know is false.

Commercial Eviction Notice - English

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WYTHE BERRY FEE OWNER LLC,

                        Plaintiff,

    -against-

WYTHE BERRY LLC, YOEL GOLDMAN and
ZELIG WEISS,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. _____

**VERIFIED COMPLAINT**

Plaintiff Wythe Berry Fee Owner LLC ("<u>Lessor</u>"), by its attorneys, Herrick, Feinstein LLP, as and for its verified complaint against Wythe Berry LLC ("<u>Lessee</u>"), Yoel Goldman ("<u>Goldman</u>"), and Zelig Weiss ("<u>Weiss</u>" and together with Goldman, "<u>Guarantors</u>," and together with Lessee and Goldman, "<u>Defendants</u>"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      Lessor is the owner of The William Vale Hotel, office space, retail space and parking located at 55 Wythe Avenue, Brooklyn, New York. Pursuant to a ground lease dated February 2017, Lessor leased the premises and the land on which it is situated to Lessee, for a term of 15 years to operate the premises through 2032. As further security to Lessor, Guarantors — Lessee's principals — agreed to guaranty the rent due under the lease.

2.      Lessee failed to make a semi-annual rent payment of $7,500,000.00 due under the lease on February 1, 2021, and despite demand, Defendants, have still failed to pay Lessor. Upon information and belief, Lessee is in payment default even though the hotel complex is still operating, and Lessee is in possession of significant funds it is collecting from the operation of the hotel complex.  Defendants have also failed and refused to provide Lessor with any meaningful financial information concerning the hotel complex's cash flows and operations and have denied

Lessor access to the hotel complex, in further breach of express provisions of the lease requiring the production of such financial information and access to the premises.

3.     Upon further information and belief, while Lessee has refused to pay any rent or provide any financial information or access to Lessor, Weiss has caused Lessee to pay substantial management fees for operating the hotel complex to management companies at least one of which is owned and/or controlled by Weiss, which monies are flowing to Weiss' personal benefit.

4.     In the wake of Defendants' defaults and their continued refusal to engage with Lessor, Lessor served Defendants with a Notice of Default dated May 5, 2021, but Defendants failed to cure the defaults. As a result, Lessor served Defendants with a Notice of Cancellation and Termination, terminating the lease effective as of May 20, 2021.

5.     Despite Lessor's proper termination of the lease, Lessee has refused to cooperate with Lessor in effecting an orderly turnover of the property and has failed to vacate the premises and return possession to Lessor. Instead, Defendants have ignored the termination of the lease and have continued operating the hotel complex and collecting monies from those operations, and essentially continued to pay themselves the aforementioned management fees all while refusing to pay rent to Lessor.

6.     Given that Lessor's secured lender has now served a default notice under the mortgage secured by the hotel complex, Lessor has no choice but to seek judicial intervention. In this action, Lessor seeks monetary and declaratory relief against Defendants, including but not limited to (i) all pre- and post-termination sums due and owing to Lessor under the Lease, estimated to be not less than $165,000,000, exclusive of interest pursuant to the Lease; (ii) declaratory judgment that the Lease has been terminated; (iii) recovery on the Guarantors' guaranty obligations; and (iv) attorneys' fees and expenses.

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 18 of 100

### THE PARTIES

7.      Lessor is a limited liability company organized under the laws of the state of Delaware. Lessor is authorized to do business in the state of New York, and has a place of business located at 199 Lee Avenue, #693, Brooklyn, New York.

8.      Upon information and belief, Lessee is a limited liability company organized under the laws of the state of New York, with its principal place of business located at 266 Broadway, Suite 301, Brooklyn, New York.

9.      Upon information and belief, Goldman is an individual residing in the state of New York.

10.     Upon information and belief, Weiss is an individual residing in the state of New York.

### JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to CPLR 301 and/or 302.

12.     Venue in this Court is proper pursuant to CPLR 501 and 503.

### FACTUAL BACKGROUND

A.      **The Lease**

13.     Lessor is the owner of the luxury hotel, office, retail and parking located at 55 Wythe Avenue, Brooklyn, New York, as more fully described at pages 1 and Exhibit A of the Lease (defined below) (the "Leased Premises" or "Complex"). The luxury hotel located at the Complex is The William Vale Hotel.

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM

NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document

Pg 19 of 100

14.     On or about February 28, 2017, Lessor, Lessee and Guarantors (with respect to Article 18, discussed below) entered into a Lease Agreement (the "Lease").[1] A true and correct copy of the Lease is attached as **Exhibit A**.

15.     Upon information and belief, Goldman and Weiss are the sole members and owners of Lessee, with each owning fifty percent (50%) of Lessee. Upon information and belief, Weiss is the manager of Lessee and is therefore charged with, and responsible for, all business decisions made by Lessee.

16.     At all relevant times herein, Lessee has operated The William Vale Hotel, office, retail and parking located at the Complex.

17.     Lessee operates The William Vale Hotel through various subleases to entities that are, upon information and belief, partially or wholly owned and controlled by Weiss. Upon further information and belief, the Leased Premises are subject to management agreements with certain entities which are paid their management fees out of hotel revenue.

18.     Espresso Hospitality Management LLC, which manages the hotel and retail operations at the Leased Premises, is, upon information and belief, owned and/or controlled by Weiss (the "Weiss Management Company").

19.     Accordingly, Weiss, through the Lessee, the subtenants, and the Weiss Management Company, generates revenue from the business operations of the Complex, a portion of which is required to flow to Lessor in the form of rent payments pursuant to the Lease.

20.     However, as alleged herein, Lessee has failed to pay any rent to Lessor since February 2021 and refused to provide Lessor with critical information regarding the Complex's operations and revenues but has continued to pay the Weiss Management Company in full. Upon

---

[1] All capitalized terms not defined herein shall have the means ascribed to them in the Lease.

information and belief, Lessee had accumulated nearly $2.8 million in cash and cash equivalents as recently as March 2021.

**B.    Relevant Payment Provisions, Lessee's Other Obligations, and Lessor's Rights, Under The Lease**

21.    Pursuant to Section 1.2 of the Lease, Lessor has leased the Complex to Lessee for a lease term beginning on February 1, 2017 and ending on January 31, 2032, "unless sooner terminated" as provided for in the Lease (the "Lease Term").

**Lessee's Obligation to Pay Rent and Additional Rent to Lessor**

22.    Pursuant to Article 2 of the Lease, Lessee is required to pay Lessor annual rent in the amount of $15,000,000.00 payable in two $7,500,000.00 increments on February 1 and August 1 of each calendar year. Article 2 provides for increased rent payments in the event the Complex meets particular income thresholds. Thus, Article 2 of the Lease provides that:

> During the first year of the Lease Term, Lessee covenants and agrees to pay, as lease payments hereunder Fifteen Million Dollars ($15,000,000.00) per year (the "Rent") for each year of the Lease Term. The Rent shall be due and payable on or before the first day of each six month period beginning February 1, 2017. In the event that the Complex shall have gross annual income in excess of Fifty Million Dollars ($50,000,000.00) in a calendar year, the Rent shall be increased by an amount equal to one and a half (1.5%) percent of the amount of Complex gross annual income.

23.    Article 2 of the Lease provides for Lessee to pay additional property expenses as "Additional Rent," and interest on any unpaid Rent or Additional Rent:

> This is an absolutely net lease. Accordingly, Lessor shall receive a net return from the Leased Premises equal to the Rent, without deduction for any expense or charge for the Leased Premises (except as otherwise expressly provided in this Lease). Lessee shall pay as "Additional Rent" all expenses, of every kind and nature, relating to or arising from the Leased Premises, including Impositions (as hereinafter defined) and expenses arising from the leasing, insurance, management, operations, maintenance, repair, use, or

occupancy of the Leased Premises and all construction relating to the Leased Premises….[2]

\*\*\*

Throughout the Lease Term, Lessee will pay, or cause to be paid, all Impositions as and when the same shall become due and payable, provided that if any Imposition may be Law be paid in installments, Lessee may pay such Imposition in installments as permitted by Law.

Lessee's failure to pay such amounts when due, and all damages, costs and expenses which Lessor may incur by reason of any default of Lessee or failure on Lessee's part to comply with the terms of this Lease, all of which Lessee hereby agrees to pay within ten (10) days after written demand or as is otherwise provided herein. Upon any failure by Lessee to pay any of the Rent or other amounts due hereunder, such Rent and other amounts shall accrue interest at the greater of (1) five hundred (500) basis points above the Prime lending rate or (ii) four hundred (400) basis points above the thirty day LIBOR Rate and Lessor shall have all legal, equitable and contractual rights, powers and remedies provided either in this Lease or by statute, at law, in equity or otherwise in the case of nonpayment of Rent.

**Lessee's Obligation to Cure Legal Violations, Including NYC Department of Building Violations, at the Complex**

24.  Section 3.2 of the Lease requires that Lessee shall "maintain and conduct Lessee's business on the Leased Premises in a lawful manner and shall timely and fully comply in all material respects at all times" with any applicable law. Section 3.2 further requires that:

Lessee shall promptly cure all violations of Law as to which a notice of violation has been issued or as to which a directive or order has been issued by any public officer or other person having authority, promptly discharge of record any such notice of violation, promptly comply with any such order or directive, and pay all fines, penalties, interest and other costs imposed by any governmental authority in connection with any violation or requirement of law. At Lessee's sole cost and expense, Lessee shall be required to make any unforeseen and structural alternations, repairs, changes or modifications in or to the Leased Premises to be in compliance with all Laws. It shall be the obligation of Lessee to execute and satisfy the legal and administrative procedures enforceable to cause the Hotel to operate in compliance with all applicable Laws (now or hereafter enacted).

---

[2] "Impositions" is defined in Section 2.1 of the Lease, and includes, among other things, "all fines, fees, charges, penalties, and interest imposed by any governmental authority or utility."

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 22 of 100

**Lessee's Obligation to Permit Lessor's Physical Inspection of the Complex, and Provide Financial Reporting To Lessor**

25.     Section 15.1 of the Lease provides that "Lessor and Lessor's agents, insurers, lenders and/or representatives shall have the right to enter and inspect the Leased Premises during normal business hours."

26.     Section 16.1 of the Lease provides that "Lessor shall have access to records of the Lessee, which are determined by mutual agreement of the parties to be reasonably necessary for the Lessor to be able to ensure that the Lessee is complying with the terms and conditions set forth herein."

27.     Section 16.2 further provides that Lessee's books and records must be kept in accordance with GAAP, and must regularly furnish particular financial information to Lessor on a monthly, quarterly and annual basis, as well as tax returns.

28.     Moreover, Section 16.2(i) provides that within ten days after an Event of Default "and if requested by Lessor," Lessee must provide "a statement of an authorized member of Lessee setting forth details of such Event of Default or event and the action which Lessee has taken or proposes to take to cure the same."

29.     Section 17.8 generally provides that "Lessee will make available to Lessor[] such documents and information in respect of the Leased Premises to the extent necessary to facilitate audits, compliance with governmental requirements and regulations and the prosecution or defense of claims or for other legitimate purposes."

**Lessee's Obligation to Indemnify Lessor, and Defendants' Obligation to Reimburse Lessor's Expenses and Legal Costs**

30.     By Section 14.2 of the Lease, Lessee agreed to "indemnify and hold" Lessor "harmless from and against any claims, demands, causes of action, liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorney's fees and

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 23 of 100

associated costs and expenses) resulting from (i) the acts or omissions of Lessee … in respect of the Complex or caused in whole or in part by breach of this Agreement, (ii) any … non-fulfillment of any agreement … by or on the part of Lessee under this Lease, or (iii) any liability asserted against Lessor … in any way relating to the Lessee or to the Complex except those liabilities specifically assumed herein by Lessor."

31.    Section 17.2 of the Lease further provides that "[i]n the event either Lessor or Lessee institute any proceedings to enforce or interpret any provision of this Lease, the prevailing party will be entitled to recover its legal expenses, including, without limitation, reasonable attorney's fees, costs, and necessary disbursements, in addition to any other relief to which such party shall be entitled."

## C.    Guarantor's Guaranty of the Lease Obligations

32.    By Article 18 of the Lease, Guarantors guaranteed the payment of Rent to Lessor.

33.    Section 18.1 of the Lease provides that:

> In order to induce Lessor to enter into this Lease, [Guarantors] hereby make the following guaranty and agreement with and in favor of Lessor and its respective legal representatives and assigns:
>
> Guarantors guarantee to Lessor, its successors and assigns, that Guarantors shall pay to Lessor, the shortfall between the Rent owed under this Lease and the amount of gross income actually earned by the Lessee (the "Guaranty"). This Guaranty shall remain in effect until such time that Lessee has shown gross annual income of Sixteen Million Dollars ($16,000,000.00).

34.    Upon information and belief, to date, Lessee has not shown a gross annual income of $16,000,000.00, thus Guarantor's guaranty of the Lease remains in effect.

## D.    Events of Default of Lessee Under the Lease, and Lessor's Rights and Remedies

35.    The Lease provides for a number of "Events of Default of Lessee" in Section 12.1 including, in pertinent part:

8

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 24 of 100

A. Failure by Lessee to pay or cause to be paid, within thirty (30) days of the date required, rent specified to be paid under Section 2.1 hereof of any other monetary amount due to Lessor;

*\*\**

C. Failure of Lessee to observe and perform any covenant, condition or agreement of Lessee under this Lease, other than a breach addressed in Section 12.1(A) above, within ten (10) days after the date Lessee receives written notice of such failure of performance, or, with respect to failures of performance not susceptible of cure within ten (10) days upon approval in writing by the Lessor, the failure of Lessee to thereafter diligently prosecute same to completion and/or cure the same within sixty (60) days;

*\*\**

J. A failure by Lessee, whether by action or inaction, to meet any of the other material terms, covenants or conditions of this Lease …."

36.     Section 12.2 provides that upon the occurrence of an Event of Default, "Lessor shall have the option to pursue any one or a combination of the following remedies without any notice to or demand upon Lessee whatsoever":

A. Terminate this Lease, in which event Lessee shall immediately surrender the Leased Premises to Lessor and cooperate in any requested operation transfer as required by this Agreement, and if Lessee fails to surrender the Leased Premises and otherwise cooperate, Lessor may, without prejudice to any other remedy which Lessor may have, expel or remove Lessee and any other person who may be occupying the Leased Premises, or any part thereof, at Lessee's expense. In such event Lessor may, in addition to the foregoing, seek such other damages and remedies as are available at law or in equity for Lessee's breach of this Lease.

B. Enter upon and take possession of the Leased Premises and expel or remove Lessee and any other person who may be occupying Leased Premises, at Lessee's expense, or any part thereof, at Lessee's expense, without terminating this Lease, and exercise reasonable efforts to re-let the Leased Premises, as Lessee's agent; at the highest rent then obtainable and receive the rent therefore; and Lessee covenants and agrees to pay Lessor on demand any cost or expense incurred by Lessor in connection with re-letting the Leased Premises and any deficiency in Rent that may arise by reason of such re-letting. In no event shall Lessee be entitled to any profit made from any re-let or be relieved of any

9

obligation to make rent payments in the event the party re-letting fails to do so.

\*\*\*

> D.  Pursuit of any of the foregoing remedies shall not preclude pursuit of any other foregoing remedies or of the other remedies herein provided or any other remedies provided at law or in equity, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any Rent or other amounts due to Lessor hereunder or of any damages accruing to Lessor by reason of the violation of any of the terms, provisions, or covenants herein contained. No waiver by Lessor of any violation or breach of any of the terms, provisions or covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions or covenants herein contained. Forbearance by Lessor to enforce one or more of the remedies herein provided upon an Event of Default of Lessee shall not be deemed or construed to constitute a waiver of such default.

37.    Section 12.2(E) further provides that "[t]o the extent any amounts due to Lessor under the terms of this Lease, whether as a result of an Event of Default or otherwise, are not timely paid, such amounts shall bear interest at the rate of eighteen percent (18%) per annum from the date such amounts were due until paid to Lessor."

38.    Section 1.4 of the Lease provides that "[o]n the Expiration Date or such earlier date that this Lease terminates or expires, the Lessee shall peaceably and quietly surrender the Leased Premises to the Lessor vacant …."

39.    Section 11.1 of the Lease further requires that "[u]pon the expiration or termination of the Lease Term howsoever effected, Lessee shall forthwith surrender the Leased Premises to Lessor …"

**E.    Lessee's Defaults Under the Lease**

40.    During the Lease term, Lessee continually failed to provide meaningful financial reporting as required under Section 16.2 of the Lease. Instead, Lessee would deliver cursory "P&L statements" devoid of any information on the Complex's cash flows, balance sheet data, itemized

expenses, and other operational-level financial information that would permit the Lessor to assess the activity and health of the Complex.

41.     The financial reporting provisions contained in the Lease are a critical part of the business arrangement for the operation of the Complex, as Lessor must be able to assess the Hotel's management and financial activity to determine whether Lessee and the Weiss Management Company are operating the Complex in an appropriate manner.

42.     After having been left to guess at the Complex's business operations and financial health for months, the relationship between Lessor and Defendants began to deteriorate.

43.     First, Lessee breached Article 2 of the Lease by failing to make the semi-annual rent payment of $7,500,000.00 due on February 1, 2021. Instead, Lessee delivered a written letter to Lessor claiming that rent was purported "abated indefinitely" due to the COVID-19 pandemic.

44.     Lessee's position was not only contrary to New York law, but was also undermined by the fact that the notwithstanding the COVID-19 pandemic, The William Vale Hotel (the "Hotel"), which is a major component of the Complex, was operating and generating revenue, and, upon information and belief, continuing to pay management fees to the Weiss Management Company on a regular basis.

45.     Specifically, the most recent "P&L Statement" provided by Lessee to Lessor — while woefully deficient in detail and insufficient in terms of Lessee's obligations set forth in Section 16.2 of the Lease — indicates that despite the COVID-19 pandemic, Lessee's business operations are generating positive cash returns of hundreds of thousands of dollars per month, even after paying operating expenses and hundreds of thousands of dollars in management fees to the Weiss Management Company, *because Lessee is refusing to pay its rent.*

46.     According to hospitality industry reports that Lessor has access to (despite Lessee's failure to deliver financial information in compliance with Section 16.2 of the Lease), as of March 2021 the Hotel had a running three-month occupancy rate of 43.5% and was at 50% occupancy in March 2021, generating revenues from business operations.  Precisely where these revenues have gone, Lessor cannot ascertain because Lessee has refused to provide the detailed information to Lessor pursuant to Section 16.2 of the Lease.

47.     In addition to having positive cash flow from operations, upon information and belief, Lessee obtained a loan from the federal Small Business Administration Paycheck Protection Program ("PPP") in 2020, but never provided any details of the PPP loan on any financial reporting disclosed to Lessor, including no details concerning the use of the PPP loan proceeds or the loan's current status.

48.     But, based on publicly available federal PPP data, it appears that The William Vale Hotel LLC, the hotel subtenant at the Complex (which is, upon information and belief, owned and/or controlled by Weiss) received 2 PPP loans in the aggregate amount of $3.1 million in 2020 and 2021.  Similarly, The William Vale FNB LLC, another subtenant at the Complex (which is, upon information and belief, owned and/or controlled by Weiss) received 2 PPP loans in the aggregate amount of $4.015 million in 2020 and 2021. PPP loan proceeds can be used to make rent payments, however, upon information and belief, none of this money has been used to pay Lessor.

49.     In or about March 2021, after Lessee breached the Lease by failing to pay rent, Lessor learned of at least seventeen violations issued against the Complex by the New York City Department of Buildings dating back to January 1, 2020 (the "NYC DOB Violations"). Despite

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 28 of 100

INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

Lessee's obligation pursuant to Section 3.2 of the Lease to cure these violations and make any necessary repairs to be in compliance with applicable law, Lessee has not done so.

50.      Upon information and belief, it appears that Lessee has diverted the Complex's revenues, which should be paid as rent owed to Lessor, in a self-dealing enrichment scheme for the ongoing benefit of Weiss, the Weiss Management Company, and other Weiss owned and/or controlled entities while (i) wrongfully holding over in possession of the Complex after termination of the Lease ; (ii) operating the Complex rent-free; and (iii) allowing the NYC DOB Violations to accumulate and remain uncured.

**F.      Lessor's Defaults Under its Loan Documents, Caused by Lessee's Defaults Under the Lease**

51.      In or about February 2017, Lessor refinanced particular debt secured by the Premises with All Year Holdings Ltd. ("All Year"). Lessor and All Year entered into an Amended and Restated Promissory Note, Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing and other ancillary loan documents, all dated as of February 28, 2017 (collectively, the "Loan Documents").

52.      Pursuant to that certain (i) Assignment of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing dated as of March 16, 2021 between All Year and Mishmeret Trust Company Limited ("Mishmeret"), (ii) Assignment of Loan Documents, dated as of March 16, 2021 between All Year and Mishmeret, and (iii) Allonge, dated as of March 16, 2021 between All Year and Mishmeret, All Year transferred and assigned all of its rights, title and interest in the Loan Documents to Mishmeret and as of the date of such assignment, Mishmeret became the Lender under the Loan Documents.

53.      On April 16, 2021, Mishmeret served a Notice of Events of Default; Reservation of Rights (the "Mishmeret Notice of Events of Default") on Lessor (and Defendants), advising that

13

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 29 of 100

"certain Events of Default have occurred and are continuing under the Loan Documents." The identified defaults, which are payment defaults, stem from Lessee's failure to pay Rent to Lessor.

54.     Defendants' wrongful conduct alleged herein, including but not limited to failing to pay rent, failing to comply with the financial reporting obligations of the Lease, and failing to cure the NYC DOB Violations, have put Lessor in a precarious position with Mishmeret that may ultimately lead to foreclosure and loss of the Complex to the detriment of all while Weiss continues to divert monies from the Complex to benefit his own affiliated entity, the Weiss Management Company.

**G.    Lessor's Notice of Default, Termination of the Lease, and Defendants' Refusal to Pay Lessor**

**The May 5, 2021 Notice of Default**

55.     On May 5, 2021, Lessor served a Notice of Default on Defendants, via email and overnight delivery. A true and correct copy of the Notice of Default with proof of service is attached as **Exhibit B**.

56.     The Notice of Default advised that:

a)    Lessee was in default of its obligation to pay Rent due on February 1, 2021 in the amount of $7,500,000.00, constituting an Event of Default of Lessee;

b)    Lessor had learned of the seventeen active NYC DOB Violations; and

c)    Lessee failed to provide Lessor with the Financial Reports within ten days of Lessor's prior request of February 11, 2021, constituting another Event of Default of Lessee.

57.     Accordingly, by the Notice of Default:

a)    Lessor demanded that Defendants remit the $7,500,000.00 payment, with interest pursuant to Sections 2.1 and 12.2(e) of the Lease, immediately;

b)    Lessor demanded that Lessee cure the NYC DOB Violations within ten days of receipt of the Notice of Default (and that failure to do so would constitute another Event of Default of Lessee);

14

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2
INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 30 of 100

c) Lessor demanded that Lessee produce the Financial Reports previously demanded by Lessor;

d) Lessor demanded that pursuant to Section 16.2(i) of the Lease, "that Lessee provide Lessor with a statement of an authorized member of Lessee setting forth details of such Events of Default and the action which Lessee has taken or proposes to take to cure the same" (the "Default Remedy Letter") within ten days of receipt of the Notice of Default (and that failure to do so would constitute another Event of Default of Lessee); and

e) Lessor advised that pursuant to Section 15.1 of the Lease, Lessor (and/or its lenders, agents or representatives) would exercise its inspection rights of the Complex.

58.    The Notice of Default reminded Defendants that pursuant to Section 2.1 of the Lease, Lessee is required to pay Additional Rent within 10 days of written demand from Lessor, and failures to make such payment shall result in an additional Event of Default of Lessee under Section 12.1(a) of the Lease.

59.    Defendants failed to (i) cure the Events of Default of Lessee specified in the Notice of Default, (ii) make any payments to Lessor, (iii) provide any demanded financial information, and (iv) upon information and belief, cure the NYC DOB Violations.

**The Notice of Cancellation and Termination**

60.    Thus, on May 20, 2021, Lessor served a Notice of Cancellation and Termination on Defendants, via email and overnight delivery. A true and correct copy of the Notice of Cancellation and Termination with proof of service is attached as **Exhibit C.**

61.    The Notice of Cancellation and Termination, among other things, advised Lessee that Lessor cancelled and terminated the Lease and Lessee's tenancy at the Complex, "effective immediately as of May 20, 2021" (the "Cancellation Date" or "Termination Date"), based on Lessee's failure to timely cure the defaults set forth in the Notice of Default.

62.    The Notice of Cancellation and Termination further advised Lessee that in addition to the defaults set forth in the Notice of Default, Lessee was in default of its obligations under

15

Section 3.2 of the Lease, for failing to timely cure the NYC DOB Violations, and under Sections

16.1, 16.2 and 17.8 of the Lease for failing to provide the Default Remedy Letter.

63.     The Notice of Cancellation and Termination further directed Lessee to quit, vacate

and surrender the Complex to Lessor on or before the Termination Date.

64.     Finally, the Notice of Cancellation and Termination included a Notice to

Commercial Lessee and form Hardship Declaration pursuant to the COVID-19 Emergency Protect

Our Small Businesses Act of 2021.

65.     In response to the Notice of Cancellation and Termination, Lessee served Lessor

with a written notice denying the validity of the Notice of Cancellation.

66.     Despite Lessee's earlier (meritless) claim that the COVID-19 pandemic

necessitated a rent abatement, Lessee did not return a completed Hardship Declaration to Lessor.

67.     Thus, Defendants have consistently acted in bad faith by refusing to pay rent,

refusing to provide required financial information, and continuing to divert revenues generated by

the Hotel operations from Lessor to the Weiss Management Company by paying management fees.

**H.     Lessee's Refusal to Vacate and Further Breaches of the Lease**

68.     Lessee failed to quit, vacate or surrender the Complex to Lessor on or before the

Termination Date, as required by Sections 1.4, 11.1 and 12.2 of the Lease, and Lessee is presently

in possession of the Complex.

69.     In their response to the Notice of Cancellation and Termination, Defendants have

advised Lessor that Defendants do not consider Lessor to be the "Lessor" under the Lease due to

the Mishmeret Notice of Events of Default. Although Defendants' position is incorrect and

adopted solely for the purposes of delay in view of Defendants' uncontestable defaults under the

Lease, to the extent it is needed, Lessor had and has Mishmeret's authorization and consent to

serve the Notice of Default and Notice of Termination, and to bring this action against Defendants

in Lessor's name, subject to, and without waiver of, Mishmeret's rights pursuant to the Loan Documents.

## FIRST CAUSE OF ACTION
### (Breach of Contract – Pre-Termination Rent and Additional Rent – Against Lessee)

70.     Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

71.     The Lease is a valid and enforceable contract between Lessor and Lessee.

72.     Lessor fully performed its obligations under the Lease.

73.     Lessee breached the Lease by (i) failing to pay Rent as required by Articles 2 of the Lease due through termination of the Lease; (ii) failing to cure the NYC DOB Violations as required by Section 3.2 of the Lease; and (iii) failing to provide Lessor with the Financial Reports and other demanded financial information as required by Sections 16.1, 16.2 and 17.8 of the Lease.

74.     Lessor is entitled to a monetary judgment against Lessee in an amount to be determined at trial, but no less than $7,500,000.00, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Post-Termination Damages – Against Lessee)

75.     Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

76.     The Lease is a valid and enforceable contract between Lessor and Lessee.

77.     Lessor fully performed its obligations under the Lease.

78.     Lessor cancelled and terminated the Lease, effective as of May 20, 2021.

79.     Lessee has failed to vacate the Complex.

17

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 33 of 100

80.     Accordingly, Lessee is liable for and must indemnify Lessor for those additional damages set forth in Section 12.2 of the Lease, including, but not limited to (i) Rent for the remainder of what would have been the Lease Term had Lessor not terminated the Lease; and (ii) all damages resulting from Lessee's delay in surrendering the Complex, including but not limited to holdover rent.

81.     Lessor is entitled to a monetary judgment against Lessee in an amount to be determined at trial, but no less than $157,500,000.00, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease.

## **THIRD CAUSE OF ACTION**

### **(Declaratory Judgment – Termination of Lease – Against Lessee)**

82.     Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

83.     By the Notice of Termination, Lessor cancelled and terminated the Lease, effective May 20, 2021.

84.     However, Lessee disputes that the Lease has been terminated, and/or that Lessor has authority to terminate the Lease.

85.     An actual controversy exists between Lessor and Lessee with respect to whether the Lease has been terminated.

86.     Lessor has no adequate remedy at law.

87.     By reason of the foregoing, Lessor is entitled to a declaration that the Lease was cancelled and terminated by the Notice of Cancellation and Termination on the Termination Date in accordance with and pursuant to the terms and conditions of the Lease and applicable law.

18

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg   Doc 1   Filed 02/14/23   Entered 02/14/23 10:49:11   Main Document
Pg 34 of 100

### FOURTH CAUSE OF ACTION
### (Ejectment)

88.     Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

89.     Lessor is the owner of the Leased Premises.

90.     Lessor served Lessee with the Notice of Cancellation and Termination, which cancelled and terminated the Lease, effective May 20, 2021.

91.     By virtue of the Notice of Cancellation and Termination, the Lease has been terminated.

92.     By virtue of the Notice of Cancellation and Termination, Lessee has no rights to possession or occupancy of the Leased Premises.

93.     Lessee is currently in possession or occupancy of the Leased Premises.

94.     Lessor has an immediate right to possession and occupancy of the Leased Premises.

95.     Lessor has the right to re-enter and re-take possession of the Leased Premises.

96.     Lessee's present occupancy or possession of the Leased Premises wrongly deprives Lessor of its right to possession and occupancy of the Leased Premises.

97.     The Notice of Cancellation and Termination served by Lessor on Lessee included a Notice to Commercial Lessee and form Hardship Declaration pursuant to the COVID-19 Emergency Protect Our Small Businesses Act of 2021.

98.     At the time of this filing, neither Lessor nor any agent of Lessor has received a Hardship Declaration from Lessee.

99.     Lessor has no adequate remedy at law.

19

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 2

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 35 of 100

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

100.    Lessee is entitled to an order of ejectment: (i) directing the Sheriff of the County of Kings to eject Lessee, remove Lessee from the Leased Premises, and tender possession of the Leased Premises to Lessor, and (ii) permanently enjoining Lessee from occupying or possessing the Leased Premises.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**(Breach of Contract – Guaranty – Against Guarantors)**</u>

101.    Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

102.    The Lease is a valid and enforceable contract between Lessor and Defendants.

103.    Lessor fully performed its obligations under the Lease.

104.    Guarantors breached Section 18.1 of the Lease by refusing, failing, or neglecting to pay sums due to Lessor.

105.    Under Section 18.1 of the Lease, Guarantors guaranteed to Lessor "the shortfall between the Rent owed under this Lease and the amount of gross income actually earned by the Lessee."

106.    Lessor is entitled to a monetary judgment against Guarantors, jointly and severally, in an amount to be determined at trial, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**(Attorneys' Fees – Against All Defendants)**</u>

107.    Lessor repeats and realleges each and every allegation contained in the prior paragraphs of the Complaint as if fully set forth herein.

108.    Under Sections 12.2 and 14.2 of the Lease, Lessee agreed to pay all reasonable attorneys' fees and all other reasonable costs and expenses, including attorneys' fees, incurred by Lessor in the enforcement of its rights under the Lease, and to indemnify and hold Lessor harmless "from and against any claims, demands, causes of action, liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorney's fees and associated costs and expenses)"resulting from Lessee's actions in connection with the Complex and Lease.

109.    Further, pursuant to Section 17.2 of the Lease, the "prevailing party" in this action "will be entitled to recover its legal expenses, including, without limitation, reasonable attorney's fees, costs, and necessary disbursements, in addition to any other relief to which such party shall be entitled."

110.    Lessor has incurred and continues to incur attorneys' fees and costs in bringing this action and enforcing its rights.

111.    Lessor is entitled to a monetary judgment against Defendants, jointly and severally, for Lessor's attorneys' fees and costs, in an amount to be determined at trial, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease.

**WHEREFORE**, for the foregoing reasons, Lessor respectfully requests that it be granted judgment against Defendants, as follows:

(a)    On the First Cause of Action, awarding a monetary judgment against Lessee, in an amount to be determined at trial, but no less than $7,500,000.00, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease;

(b)    On the Second Cause of Action, awarding a monetary judgment against Lessee, in an amount to be determined at trial, but no less than $157,500,000.00, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease;

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 37 of 100

(c)  On the Third Cause of Action, an order declaring that the Lease was cancelled and terminated by the Notice of Cancellation and Termination on the Termination Date in accordance with and pursuant to the terms and conditions of the Lease and applicable law;

(d)  On the Fourth Cause of Action, an order of ejectment: (i) directing the Sheriff of the County of Kings to eject Lessee, and remove Lessee from the Leased Premises, and tender possession of the Leased Premises to Lessee, and (ii) permanently enjoining Lessee from occupying or possessing the Leased Premises; and

(e)  On the Fifth Cause of Action awarding a monetary judgment against Guarantors, jointly and severally, in an amount to be determined at trial, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease;

(f)  On the Sixth Cause of Action, awarding a monetary judgment against Defendants for Lessor's attorneys' fees and costs, jointly and severally, in an amount to be determined at trial, plus interest pursuant to Article 2 and Section 12.2(E) of the Lease; and

(g)  Awarding such other and further relief to Lessor as the Court deems just, proper and equitable.

Dated: New York, New York
      June 11, 2021

               HERRICK, FEINSTEIN LLP

               By: */s/ Janice Goldberg*
                   Avery S. Mehlman
                   Janice Goldberg
                   Meaghan Roe
               Two Park Avenue
               New York, New York 10016
               (212) 592-1400

               *Attorneys for Plaintiff Wythe Berry Fee Owner LLC*

## VERIFICATION

STATE OF NEW YORK )
                           ) ss.:
COUNTY OF KINGS )

         EPHRAIM DIAMOND, being duly sworn, deposes and says:

         I am the Associate Restructuring Officer of All Year Holdings Ltd., the sole Member of

YG WV LLC, which is the Managing Member of Wythe Berry Member LLC, which is in turn the

sole member of Plaintiff Wythe Berry Fee Owner LLC, and I am authorized to execute this

Verification. I have read the annexed Verified Complaint, know the contents thereof, and the same

is true to the best of my knowledge, based upon my personal knowledge and the books and records

of Wythe Berry Fee Owner LLC, except as to those matters therein which are alleged upon

information and belief, and as to those matters, I believe them to be true.

                                              EPHRAIM DIAMOND

Sworn to before me this
11th day of June 2021

Notary Public

*Notary Public currently located in _Westchester_ via video teleconference in
accordance with New York State Executive Order No. 202.7.

ANNABELLA A. CRUZ
Notary Public, State of New York
No. 01CR6400239
Qualified in Westchester County
My Commission Expires November 12, 2023

23

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 39 of 100

# EXHIBIT A

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg   Doc 1   Filed 02/14/23   Entered 02/14/23 10:49:11   Main Document
Pg 40 of 100

**LEASE AGREEMENT**

THIS **LEASE AGREEMENT** (this "**Lease**"), dated as of February 28, 2017 (the "**Effective Date**"), by and between **WYTHE BERRY FEE OWNER LLC** ("**Lessor**") and **WYTHE BERRY LLC** ("**Lessee**").

**WITNESSETH**

**WHEREAS**, Lessor owns a complex consisting of a luxury hotel containing 183 rooms (the "**Hotel**"), as well as office, retail and parking, located at 55 Wythe Avenue, Brooklyn, New York (collectively, the "**Complex**");

**WHEREAS**, Lessee currently operates the Complex and is aware of any and all existing conditions thereat; and

**WHEREAS**, Lessor desires to lease to Lessee, and Lessee desires to lease from Lessor, the Complex and the other real and personal property, equipment and interests described in this Lease on the terms and conditions described below.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants and agreements contained in this Lease, and other good valuable consideration, the receipt and sufficiency of which are acknowledged and confessed, the parties, intending to be legally bound, agree as follows:

**ARTICLE I**
**LEASE**

1.1     **Leased Premises.** Lessor hereby leases, rents and lets unto Lessee, and Lessee hereby leases, rents and hires from Lessor, for the Lease Term (as hereinafter defined) and subject to all the covenants and conditions hereinafter stated, all rights, title and interest of Lessor in and to the following (collectively, the "**Leased Premises**"):

1.1.1   All of the land and the real property upon which the Complex is located (the "**Real Property**"), including without limitation the building and fixtures (the "**Buildings**") located thereon, together with all tenements, hereditaments, rights, privileges, interests, easements and appurtenances now or hereafter belonging or in any way pertaining to the Real Property, Buildings and/or the Complex and subject to each and every matter affecting title to the Leased Premises, including, without limitation, all easements, rights of way, covenants, conditions and restrictions, liens, encumbrances, encroachments, licenses, changes, zoning laws, ordinances, regulations, building codes and other applicable laws. The Real Property is more particularly described on Exhibit A attached hereto.

1.1.2   All equipment, furniture, inventory, and other personal property in "AS IS and WHERE IS" condition without representations or warranties (to which Lessor has lawful title, specifically including, but not limited to, office supplies, other

supplies and foodstuffs (hereinafter the "**Inventory**"), appliances, tools, instruments, and other tangible personal property owned by Lessor as of the date of this Lease, and located on the Real Property (the "**Personal Property**"). In the event that any Lessor's Personal Property requires replacement, maintenance or upgrading, for any reason whatsoever, and without notice or demand of Lessor, Lessee is obligated to provide for the same at its own cost and expense and Lessor shall have no obligation therefore and such replacement shall immediately become Lessor's Personal Property.

1.2    **Lease Term**. The term of this Lease shall commence as of February 1, 2017 (the "**Commencement Date**"), and terminate January 31, 2032 (the "**Expiration Date**"), unless sooner terminated as hereinafter provided (the "**Lease Term**"). Lessee hereby acknowledges that it is currently in possession of and operates the Complex, and assumes all of the obligations with respect to the existing conditions thereat. Notwithstanding anything herein to the contrary, Lessee agrees to and does hereby indemnify and hold the Lessor, its officers, directors, agents, employees and lenders harmless from and against any claims, demands, causes of action, liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorney's fees and associated costs and expenses) resulting from (i) any of the existing conditions at the Complex or (ii) any violations shown on the Title Proforma (as hereinafter described).

1.3    **Renewal**. Upon the expiration of the Lease Term, the Lease shall be automatically renewed for a period of seven (7) years (as reflected in Section 17.3 hereof), unless terminated by the Lessor or Lessee at least thirty (30) days prior to the expiration of the Lease Term. Notwithstanding anything herein to the contrary, Lessee shall pay all transfer taxes, including New York State Real Estate Tax and New York City Real Property Transfer Tax imposed in connection with any additional extension of the Lease Term.

1.4    **End of Term**. On the Expiration Date or such earlier date that this Lease terminates or expires, the Lessee shall peaceably and quietly surrender the Leased Premises to the Lessor vacant (except for those sublessees occupying under leases with the Lessor, if any), broom clean, in good order, condition and repair excepting reasonable wear and tear and damage that is not the Lessee's obligation to repair, free and clear of all subleases and Liens (as hereinafter defined) (except for subleases and Liens caused or expressly consented to by the Lessor), and with all Personal Property acquired (or leased) by the Lessee (other than such Personal Property which is being used in connection with the operation of the Hotel) and all personal property of sublessees (except for the property of sublessees occupying under leases with the Lessor) removed.

## ARTICLE II
## LEASE PAYMENTS AND OTHER FINANCIAL CONSIDERATIONS

2.1    **Rent**. During the first year of the Lease Term, Lessee covenants and agrees to pay, as lease payments hereunder Fifteen Million Dollars ($15,000,000.00) per year (the "**Rent**") for each year of the Lease Term. The Rent shall be due and payable on or before the first day of each six month period beginning February 1, 2017. In the event

that the Complex shall have gross annual income in excess of Fifty Million Dollars ($50,000,000.00) in a calendar year, the Rent shall be increased by an amount equal to one and a half (1.5%) percent of the amount of Complex gross annual income.

This is an absolutely net lease. Accordingly, Lessor shall receive a net return from the Leased Premises equal to the Rent, without deduction for any expense or charge for the Leased Premises (except as otherwise expressly provided in this Lease). Lessee shall pay as "**Additional Rent**" all expenses, of every kind and nature, relating to or arising from the Leased Premises, including Impositions (as hereinafter defined) and expenses arising from the leasing, insurance, management, operation, maintenance, repair, use, or occupancy of the Leased Premises and all construction relating to the Leased Premises. Notwithstanding the foregoing, so long as no Event of Default of Lessee (as hereinafter defined) has occurred, Lessor shall pay all of the following expenses: (a) any expenses expressly agreed to be paid by Lessor pursuant to this Lease, (b) debt service and other payments with respect to any Lessor mortgagee, (c) expenses incurred by Lessor to monitor and administer this Lease, unless otherwise expressly provided in this Lease, (d) intentionally omitted, and (e) other expenses that are personal to the Lessor, including Lessor's income taxes.

Lessor's delay in rendering, or failure to render, any statement or bill for Additional Rent for any period shall not waive Lessor's right to render a statement or collect such Additional Rent for that or any subsequent period. If Lessor delivers to Lessee an incorrect statement with respect to any Rent, Lessor shall have the right to give Lessee a corrected statement for the period covered by the incorrect statement and to collect the correct amount of the Rent.

If at any time during the Lease Term the Rent is not fully collectible by reason of any Law (as hereinafter defined), Lessee shall enter into such agreements and take such other action as Lessor reasonably requests and which is not prohibited by any Law, to permit Lessor to collect the maximum permissible Rent (but not in excess of the Rent). On the termination of that Law prior to the Expiration Date (a) the Rent shall be paid in accordance with this Lease, and (b) Lessee shall pay to Lessor, if not prohibited by any Law, the Rent which would have been paid but for that Law, less the Rent paid by Lessee to Lessor during the period of that Law.

For purposes of this Lease, "**Impositions**" shall mean, collectively, (a) all real estate taxes, all special assessments and all other property assessments, including all assessments for public improvements or betterments, whether or not commenced or completed within the term of this Lease and for New York City all Business Improvement District ("**BID**") charges and assessments, (b) all ad valorem, sales and use taxes, (c) all rent and occupancy taxes and all similar taxes, (d) all personal property and other taxes on the Personal Property, (e) all water, sewer, and other utility charges imposed by any governmental authority, (f) all fines, fees, charges, penalties, and interest imposed by any governmental authority or utility, and (g) all other governmental charges and taxes, in each case of any kind or nature whatsoever, general or special, foreseen or unforeseen, ordinary or extraordinary, which are at any time during or with respect to the Lease Term assessed, levied, charged, confirmed or imposed with respect to the Leased

Premises, the Personal Property or the use, leasing, ownership or operation thereof, or become payable out of or become a lien upon the Leased Premises, the sidewalks or streets adjoining the Leased Premises, or the Personal Property or the rents or income therefrom. Notwithstanding the foregoing, Impositions shall not include (i) any tax imposed on Lessor's income or receipts (whether net or gross); (ii) any mortgage recording tax imposed with respect to any Lessor mortgage, as to which Lessee shall pay any mortgage tax), (iii) any tax imposed with respect to the sale, exchange or other disposition by Lessor of the Leased Premises, including any lease by Lessor of all or part of the Leased Premises; or (iv) franchise taxes, excess profits taxes, capital gains taxes, and taxes on doing business that are imposed on Lessor. If at any time during the Lease Term the present method of real estate taxation or assessment is changed so that there is substituted for the type of Impositions presently being assessed or imposed on real estate, or in lieu of any increase in such Impositions, a tax described in clauses (i) or (iv) that is imposed solely on owners of real estate, such substitute taxes shall be deemed to be included within the term "**Impositions**".

Throughout the Lease Term, Lessee will pay, or cause to be paid, all Impositions as and when the same shall become due and payable, provided that if any Imposition may by Law be paid in installments, Lessee may pay such Imposition in installments as permitted by Law.

Lessee's failure to pay such amounts when due, and all damages, costs and expenses which Lessor may incur by reason of any default of Lessee or failure on Lessee's part to comply with the terms of this Lease, all of which Lessee hereby agrees to pay within ten (10) days after written demand or as is otherwise provided herein. Upon any failure by Lessee to pay any of the Rent or other amounts due hereunder, such Rent and other amounts shall accrue interest at the greater of (i) five hundred (500) basis points above the Prime lending rate or (ii) four hundred (400) basis points above the thirty day LIBOR Rate and Lessor shall have all legal, equitable and contractual rights, powers and remedies provided either in this Lease or by statute, at law, in equity or otherwise in the case of nonpayment of Rent.

It is understood and agreed that Lessor shall be obligated to make any mortgage payments relating to the Leased Premises as said payments become due. In the event that Lessor fails to make such mortgage payments, Lessee may make the mortgage payments and Lessee shall be entitled to deduct from the Rent the amount of such mortgage payments actually paid by Lessee.

## ARTICLE III
## USE OF LEASED PREMISES/COMPLIANCE WITH LAW

3.1    **Use of Premises**. Lessee expressly agrees to use the Leased Premises, subject to the provisions of this Lease, for hotel use with food and beverage services and any other lawful uses permitted pursuant to the certificate of occupancy in existence on the date hereof (the "**Permitted Use**") and cannot, in any way and under any circumstances, alter the Permitted Use. Lessee shall operate the Leased Premises in accordance with industry standards and shall at all times operate the Leased Premises in a

manner consistent with the current operations, the zoning laws then in effect and the certificate of occupancy. Notwithstanding the foregoing, Lessee shall not at any time use or occupy the Leased Premises, or suffer or permit anyone else to use or occupy the Leased Premises, (a) in any manner that violates the provisions of this Lease or the certificate of occupancy, if any, for the Leased Premises, (b) so as to cause waste, (c) so as to violate any insurance policy then issued in respect of the Leased Premises, or (d) so as to create a nuisance. All employees of the Leased Premises shall be employees of Lessee and Lessor shall have no responsibility for any employees or staff at the Leased Premises.

Notwithstanding anything herein to the contrary, Lessee acknowledges that it shall have no rights with respect to the use, transfer or construction within air rights or unutilized development rights; the rights and benefits to which belong to the Lessor.

3.2     **Compliance with the Law**. Lessee shall maintain and conduct Lessee's business on the Leased Premises in a lawful manner and shall timely and fully comply in all material respects at all times, with any and all federal, state and local laws, statutes and ordinances and all regulations, orders and directives of appropriate governmental and accrediting agencies, as such laws, statutes, ordinances, regulations, orders and directives now existing or that may hereafter be enacted ("**Law**") applicable to the Leased Premises. Without limiting the foregoing, Lessee shall promptly cure all violations of Law as to which a notice of violation has been issued or as to which a directive or order has been issued by any public officer or other person having authority, promptly discharge of record any such notice of violation, promptly comply with any such order or directive, and pay all fines, penalties, interest and other costs imposed by any governmental authority in connection with any violation or requirement of Law. At Lessee's sole cost and expense, Lessee shall be required to make any unforeseen and structural alterations, repairs, changes or modifications in or to the Leased Premises to be in compliance with all Laws. It shall be the obligation of Lessee to execute and satisfy the legal and administrative procedures enforceable to cause the Hotel to operate in compliance with all applicable Laws (now or hereafter enacted).

3.4     **Permits and Licenses**. It shall be the sole obligation of Lessee to obtain and maintain throughout the Lease Term all permits and licenses necessary for the Permitted Use of the Leased Premises (the "**Permits and Licenses**"), as provided for in Section 3.1 above. Lessor agrees to reasonably cooperate with Lessee to the extent reasonably required to obtain and maintain the Permits and Licenses. If the competent governmental authority, having jurisdiction over the Leased Premises, refuses, suspends, revokes or delays the issuance of any of the Permits and Licenses, and if such refusal, suspension, revocation or delay is not due to the breach of the terms hereof by Lessor, the Lessee waives any claim against the Lessor and this Lease shall continue in full force and effect with no abatement of the Rent.

3.5     **Waste; Nuisance**. Lessee shall not perform or fail to perform any acts or carry on or permit to exist any practices that may injure or damage the Leased Premises in any respect or that may constitute a public or private nuisance or menace to the owners

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 3

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 45 of 100

or occupants of adjacent property, or that may violate the provisions of any required insurance on the Leased Premises or that may diminish the coverage under such insurance or render such insurance void. Lessee shall not commit or suffer to exist any waste upon the Leased Premises or permit any conduct which exposes Lessor to liability as a result of its conduct.

3.6    **Liens.**    Lessee shall not permit any liens, charges or encumbrances ("**Liens**") upon the Leased Premises.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF LESSOR

Lessor hereby warrants and represents to Lessee, as of the date of this Lease, that:

4.1    **Authority**.    Lessor has full power and authority to execute and to deliver this Lease and all related documents, and to carry out the transaction contemplated herein. This Lease is valid, binding and enforceable against Lessor in accordance with its terms.    The execution of this Lease and the consummation of the transaction contemplated herein do not result in a breach of the terms and conditions of, nor constitute a default under, nor violation of any law, regulation, court order, mortgage, note, bond, indenture, agreement, license or other instrument or obligation to which Lessor is now a party or by which Lessor or any of the assets of Lessor may be bound or affected.

4.2    **Title**.    Lessor has good and insurable fee simple title to the real property identified and described in the title proforma, a copy of which is attached hereto on Exhibit B (the "**Title Proforma**"), subject only to the easements, reservations and encumbrances of record, those which an accurate survey would disclose or which are identified in the Title Proforma or schedule thereto ("**Permitted Exceptions**"), and has good and insurable title to the personal property to be leased to Lessee under the term of this Lease. Lessor warrants that so long as Lessee is not in default hereunder, Lessee shall have quiet enjoyment of the Leased Premises.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF Lessee

Lessee hereby warrants and represents to Lessor, as of the date of this Lease and continuing up to and throughout the Lease Term, that:

5.1    **Status of Lessee**. Lessee is a limited liability company duly organized and validly existing under the laws of the State of New York, and is qualified to do business in the State of York.

5.2    **Authority**. Lessee has full power and authority to execute and to deliver this Lease and all related documents, and to carry out the transactions contemplated

herein. This Lease is valid, binding and enforceable as against Lessee in accordance with its terms. The execution of this Lease and the consummation of the transaction contemplated herein do not result in a breach of the terms and conditions nor constitute default under or violate Lessee's Articles of Organization or any law, regulations, Court order, mortgage, note, bond, indenture, agreement, license or other instrument or obligation to which Lessee is a party or by which Lessee or any of the assets of Lessee may be bound or affected.

5.3     **Litigation**. To the best of Lessee's knowledge there is no litigation, investigation or other proceeding pending or threatened against or in relation to Lessee, its properties or business which is material to this Lease, nor does Lessee know or have reasonable grounds to know of any business for any such action.

5.4     **Necessary Action**. Lessee has taken all action necessary to enter into this Lease and to carry out the terms of this Lease.

5.5     **Taxes**. Lessee has filed all tax returns (federal, state and local) required to be filed and paid all taxes shown thereon to be due, including interest and penalties, other than such taxes that Lessee is contesting in good faith by appropriate legal proceedings and proper reserves have been established on the books of the Lessee.

5.6     **Liens**. There are no Liens upon or with respect to any of the properties of Lessee or right to receive revenues of Lessee other than Permitted Liens.

5.7     **Conflicts**. Lessee is not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument (including company charters or other organizational documents) which is likely to have a material adverse effect on the ability of Lessee to perform its obligations under the Lease or which would restrict or otherwise limit the incurring of the debt arising under this Lease.

5.8     **Reserved**.

5.9     **Solvency.** Lessee has capital sufficient to carry on its business and transactions and all businesses and transactions in which it is about to engage and is solvent and able to pay its debts as they mature. No transfer of property is being made and no debt is being incurred in connection with the transactions contemplated by this Agreement with the intent to hinder, delay or defraud either present or future creditors of Lessee.

5.10    **Reserved**.

5.11    **Accuracy of Information**. To the best of Lessee's knowledge after a due and diligent investigation, all factual information heretofore or contemporaneously furnished by or on behalf of Lessee to Lessor for the purposes of satisfying the provisions of or in connection with this Agreement or any transaction contemplated hereby is, and all other factual information (taken as a whole) hereafter furnished by or on behalf of Lessee to Lessor will be, to the best of Lessee's knowledge after a due and diligent

investigation, true and accurate in every material respect on the date as of which such information is dated or certified, and Lessee has not omitted and will not omit any material fact necessary to prevent such information from being false or misleading. Lessee has disclosed to Lessor, in writing, all facts which Lessee has knowledge of and which Lessee believes is more likely than not to materially and adversely affect the business, credit, operations or financial condition of Lessee or which Lessee believes is more likely than not to materially and adversely affect any material portion of Lessee's property, or Lessee's ability to perform its obligations under the Lease.

5.12    Lessee does not have any employees engaged in work at the Leased Premises that are subject to a union contract or collective bargaining agreement, and Lessee is not subject to any unfunded pension liabilities with respect to any employees engaged in work at the Leased Premises.

## ARTICLE VI
## MAINTENANCE AND REPAIR

6.1    **Maintenance and Repair**. Except as otherwise expressly provided in this Lease, throughout the Lease Term, Lessee: (a) at Lessee's sole cost and expense, shall have full responsibility for the condition, alteration, maintenance, management, repair and replacement of the Leased Premises and all parts thereof, and to keep and maintain the Complex in good working order and condition, ordinary wear and tear excepted, including but not limited to, the maintenance, repair and replacement, if necessary, of the roof, foundation, all structural components, the heating, ventilation and air conditioning system of the Complex and all plumbing, electrical and equipment systems of the Complex and the grounds, driveways, walkways, paving and parking lots of the Leased Premises, and (b) acknowledges that Lessor shall have no obligations whatsoever to perform any work or make any repairs with respect to the Leased Premises, to furnish any services with respect to the Leased Premises, or to incur any expenses with respect to the Leased Premises.

Lessee expressly acknowledges and agrees that Lessor has not made and is not making, and Lessee, in executing and delivering this Lease, is not relying upon, any warranties, representations, promises or statements, except to the extent that the same are expressly set forth in this Lease. Lessee shall at all times (i) maintain the Leased Premises in an orderly and safe condition, in a good state of repair, and in a manner consistent with the standards of operation and maintenance of hotels in the same Hotel Category, and (ii) make such repairs, replacements and Alterations (as hereinafter defined) to the Leased Premises as are necessary to keep it in the condition required by the preceding clause (i). Notwithstanding, Lessor shall have the obligation to make repairs to the Leased Premises as specified in this Lease.

Lessee shall, within a reasonable period of time after learning of such condition, send Notice to the Lessor of any repairs that may be necessary throughout the Term of this Lease, and of any incidents or deterioration occurring in the Property, even when no apparent damage can be deduced from that, provided that the Lessee is aware of such condition. These expenses will be borne directly by Lessee. If Lessee has not carried out

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 48 of 100

such repairs itself when they are necessary, Lessor can carry them out itself, immediately passing on the corresponding expenses to Lessee.

6.2    **Alterations**.  Lessee may, at its sole option and in accordance with the applicable Annual Operating Budget and as otherwise required by the terms of this Lease, make any additions, replacements, changes, alterations, installations, repairs or improvements to the Leased Premises (the "**Alterations**") that Lessee, in its sole discretion, deems necessary or appropriate; except that Lessee shall not, without Lessor's consent, which shall not be unreasonably withheld, conditioned or delayed, make any Material Alterations (as hereinafter defined) to the Leased Premises. For purposes of this Lease, a "**Material Alteration**" shall mean any Alteration to the Leased Premises that (i) costs in excess of Five Hundred Thousand Dollars ($500,000.00) (as such amount shall be increased during the Lease Term by increases in the CPI) or (ii) which materially affects the structure of the Leased Premises. Lessee shall not commence any Material Alterations until Lessee has met all of the following conditions:

a) the proposed Material Alterations are in accordance with a project drawn up by a competent technician, to the extent required by applicable Law;

b) Lessee has obtained all permits, approvals, and authorizations required by the Building Department of the City of New York (the "**Building Department**") and all other applicable governmental authorities for the Material Alterations;

c) the Material Alterations will be performed by Lessee from funds in the Hotel Reserve or otherwise with funds that Lessee makes available for that purpose as may be required by the terms of this Lease;

d) the Material Alterations will comply with all applicable laws and statutory regulations and the Building Department code;

e) Lessee has caused its general contractors, construction managers, architects, engineers, and subcontractors to obtain insurance reasonably satisfactory to Lessor and with such additional coverages as may be reasonably required by Lessor, and (ii) Lessee has delivered to Lessor certificates (in form reasonably acceptable to Lessor) evidencing such required insurance; and

f) Lessor has reasonably consented to the final plans and specifications for the proposed Material Alterations and the source and use of funds required therefor.

## ARTICLE VII
## EQUIPMENT

7.1    **Lessor's Equipment**. All equipment, furniture and furnishings on hand as of the Commencement Date and which are not tagged or marked by Lessee as Lessee's

equipment shall constitute a part of the Leased Premises and shall be and remain the personal property of Lessor ("**Lessor's Equipment**").

7.2     **Lessee's Equipment**. All equipment, fixtures, and furnishings acquired by Lessee and not constituting Lessor's Equipment and not necessary for the operation of a hotel shall be and remain the personal property of Lessee ("Lessee's Equipment") and shall be tagged or marked by Lessee as such and all other property shall become that of Lessor's when purchased and left at the Leased Premises at Lease termination.

7.3     **Disposition of Obsolete Equipment**. Lessor and Lessee recognize that portions of Lessor's Equipment may become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary in the operation of the Leased Premises. In any instance in which Lessee in its sole discretion determines that any items of Lessor's Equipment has become inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary in the operation of the Leased Premises, Lessee may remove such items of Lessor's Equipment from the Leased Premises, and on behalf of Lessor sell, trade-in, exchange or otherwise dispose of same without any responsibility or accountability to Lessor thereof; provided, however, that Lessee shall substitute and install in the Leased Premises other equipment having equal or greater utility (but not necessarily the same function) in the operation of the Leased Premises, and provided further that such removal and substitution shall not impair the operations of the Leased Premises. All such substitute equipment shall constitute Lessor's Equipment and shall be held by Lessee on the same terms and conditions as items originally comprising Lessor's Equipment. Lessee shall execute and deliver to the Lessor such documents as may from time to time be requested to confirm the title of the Lessor to any items of Lessor's Equipment. Lessee will not remove or permit the removal of any Lessor's Equipment from the Leased Premises except in accordance with the provisions in this Section.

### ARTICLE VIII
### TAXES AND UTILITIES

8.1     **Taxes**. From and after the Commencement Date, Lessee shall be responsible for and shall pay prior to delinquency any and all taxes, assessments, charges, and all other amounts demanded from any governmental and/or quasi-governmental agency for or relating to the Leased Premises including, but not limited to, ad valorem taxes assessed against the Leased Premises, and any and all federal, state or local taxes incurred or assessed in connection with Lessee's operation of the Leased Premises, including, without limitation, federal and state income taxes, franchise taxes, FICA, FUTA and other unemployment taxes. It shall not be a defense that such tax, assessment or charge was not in existence or contemplated at the time of the execution of this Agreement. Lessee shall not be obligated to pay any franchise, excise, corporate, estate, inheritance, succession or capital levy or tax of Lessor or any income, profits or revenue tax upon the income of Lessor.

8.2     **Utilities**. Lessee shall be solely responsible for and shall pay all charges for utilities, leases, and impositions in respect of the Leased Premises, including, without

limitation, charges for water, gas, electricity, sewer service, refuse disposal, telephone service and similar services incurred in connection with the operation of the Leased Premises during the Lease Term and for all other cost or expenses associated with its business or the usage of the Leased Premises during the Lease Term.

## ARTICLE IX
## INSURANCE

9.1    **General Requirements**. Lessee, at Lessee's sole cost and expense, shall take out, and maintain at all times throughout the Lease Term (except as otherwise specifically provided below), and after the Lease Term for so long as Lessee, or any person or entity holding through or under Lessee, remains in possession of the Leased Premises, insurance with the coverages and deductibles described below. All policies required by this Article IX shall be issued by insurance companies licensed to do business in the State of New York. All such insurers shall have a claims paying ability rating of no less than "A-" and a financial class category rating of at least "VIII" by A.M. Best Company (or any successor rating agency or entity reasonably selected by Lessor if A.M. Best Company discontinues publishing ratings of insurance companies or if the rating system is changed). If it is commercially impracticable to obtain insurance from an insurer with an "A-" rating and a financial size category of at least "VIII" because of changes in the insurance industry or conditions in the Competitive Set, the Lessee's insurers shall have a policy holder's rating that is at least equal to the Customarily (as hereinafter defined) required rating.

All insurance policies required by this Article IX shall (i) contain endorsements that such insurance may not be canceled or amended, except upon not less than thirty (30) days' prior written notice to Lessor, and (ii) be written as primary policies not contributing to or in excess of any policies carried by Lessor, and (iii) each contain a Waiver of Subrogation endorsement, in form and substance reasonably satisfactory to Lessor, in favor of Lessor.

If Lessee fails to maintain the insurance required by the foregoing provisions of this Article IX or to timely furnish to Lessor the required evidence of such insurance and payment of the insurance premiums, Lessee shall be liable for all expenses incurred by Lessor with respect to such default, together with any costs, expenses, losses and/or liabilities that would have been covered by the insurance Lessee is required to maintain. If Lessee fails to maintain any of the insurance required by this Article IX, Lessor may, at its option, in addition to exercising any other remedies available to it under this Lease or at law, obtain the insurance described in this Article IX, in which event Lessee shall reimburse Lessor, as Additional Rent, within ten (10) days of being billed therefor, for the costs incurred by Lessor to obtain such insurance.

Lessee, at Lessee's expense, shall comply, and shall cause permitted sublessees, if any, and contractors, to comply, in all material respects at all times, with all insurance requirements set forth hereunder. Anything to the contrary notwithstanding, coverages existing at the Commencement Date shall be not less than the following:

a) *Property Insurance.* a commercial property policy covering Building, Contents and Business Income interruption in a form satisfactory to Lessor (the "**Property Policy**"). Such policy shall name Lessor as loss payee as its interest may appear and shall expressly provide that any losses thereunder shall be adjusted with Lessor, the Lessee and any Lessor's Lender or other applicable superior interest holder; and (b) such policies shall include a standard New York mortgagee endorsement with respect to each Lessor's Lender; and (c) all proceeds paid under such policies shall be applied in accordance with the requirements of this Lease.

b) *Liability Insurance.* Lessee shall maintain a policy of commercial general liability insurance in Customary (as hereinafter defined) form (the "**Liability Policy**") protecting Lessee against claims of third parties for bodily injury, death, personal injury, and property damage (including personal injury liability covering libel, liquor liability, slander, false arrest and malicious prosecution, and fire and water damage legal liability) occurring in, upon, or about the Leased Premises and any appurtenances thereto. Such policy shall include contractual liability coverage covering Lessee's indemnification obligations under this Lease with respect to covered claims, together with fire damage legal liability coverage. Subject to Lessor's right (as set forth below) to require Lessee to increase coverage limits and to the other provisions of this Article IX, such policy shall have a per occurrence combined single limit of at least Two Million Dollars ($2,000,000) annually and per location. Such coverages and amounts may be modified by Lessor as required from time to time by Lessor's lender or any applicable superior interest holders. The policy shall name the Lessee as insured and shall include as additional insureds Lessor and Lessor's lender and any other superior interest holders, if any.

c) *Workers Compensation.* Lessee shall maintain workers compensation insurance as required by Law and which shall include employer's liability insurance for all employees of Lessee, in accordance with the statutory limits required by Law.

d) *Boiler Insurance.* Lessee shall maintain insurance covering losses from explosion caused by steam, boilers, pressure vessels and similar equipment, if any, in an amount to be determined by the Lessor (in its commercially reasonable discretion) (the "**Boiler Policy**"). The Boiler Policy shall name Lessor as loss payee as its interest may appear and shall expressly provide that any losses thereunder shall be adjusted with Lessor, the Lessee and any Lessor's Lender or other applicable superior interest holder; and (b) such policies shall include a standard New York mortgagee endorsement with respect to each Lessor's Lender; and (c) all proceeds paid under such policies shall be applied in accordance with the requirements of this Lease.

e) *Automobile Insurance.* Lessee shall maintain a policy of Automobile Liability insurance on owned, non-owned and hired motor vehicles used in connection

with the operation of the Hotel with a combined single limit for bodily injury and property damage of not less than One Million Dollars ($1,000,000).

f) *Insurance Required by Lenders and by Laws for Hotel-Related Operations.* To the extent any Lessor mortgagee or Law for hotel related operations, including but not limited to insurance required for taverns and the serving of liquor, may require Lessee to obtain any insurance coverage not required by this Lease, or require additional insurance coverage, or require a different or more highly rated insurance company to issue the insurance, or impose any requirement relating to Lessee's insurance that is more stringent that the requirements of this Lease, Lessee shall comply with such insurance requirements.

Notwithstanding anything herein to the contrary, any and all insurance policies maintained by both Lessor and Lessee in connection with this Lease must contain an endorsement thereto naming the other (and other parties in interest) as an "additional insured", and that each party waives the respective insurance company's rights of subrogation as against the other, and any hotel or property manager operating or managing the Leased Premises.

As used in this Lease and in all amendments to this Lease (unless otherwise specified or unless the context otherwise requires), a **"Customary"** form of policy or amount of coverage or endorsement or other aspect of insurance is that form of policy, amount of coverage, endorsement or other aspect that is then customarily required by prudent Institutional Lenders for the hotels in the Competitive Set.

9.2   **Cancellation/Certification**.   Certificates of insurance evidencing such coverage shall be delivered to Lessor prior to the Commencement Date and annually thereafter prior to expiration of the then-current policy terms.

9.3   **Fee Mortgagee**.   Supplementing the foregoing, Lessee shall satisfy any and all insurance requirement of any mortgagee of Lessor and provide such mortgagee with certificates and other evidence of insurance as set forth in the document and instruments governing and securing any and all credit facilities of such mortgagee to Lessor.

## ARTICLE X
## DAMAGE, DESTRUCTION AND CONDEMNATION

10.1   **Damage or Destruction**. Should the building upon the Leased Premises be totally or partially destroyed by fire or other cause, the damage shall be repaired and the building restored with the proceeds of the insurance provided for in Article IX of the Lease. Should the building be damaged by any cause whatsoever, so that rebuilding or repairs are not completed within six (6) months of the occurrence of such damage, this Lease may be terminated at the option of the Lessee. Lessee shall be allowed an equitable

abatement of the rent during such time as it is unable to enjoy the use of the whole or part of the Leased Premises.

10.2  **Condemnation**. In the event that all or any part of the Leased Premises shall be taken or damaged by the exercise of the power of eminent domain, then (whether or not this Lease shall terminate by operation of law upon such exercise of the power of eminent domain) the respective interest of the Lessor and Lessee in and to the Leased Premises by reason of such exercise of power and eminent domain shall be separately determined and computed by the Court having jurisdiction and separate awards and judgments with respect of such damage to the Lessor and Lessee, respectively, and to each of such respective interest, shall be made and entered. The Lessor shall receive and retain the full amount of such damages to be determined whether or not such amount is in its favor or in favor of the Lessee. In the event the Leased Premises is so substantially and permanently taken by the power of eminent domain as to make the Leased Premises in the reasonable and good faith opinion of the Lessee unsuitable for continuing the operation of the Complex, then this Lease may be terminated by the Lessee, as of the effective date of the taking, by notice given by Lessee to Lessor. Any such termination shall be without prejudice to any claim of Lessee against the condemning authority for damages resulting to Lessee from such condemnation. In the event the Leased Premises shall be partially and permanently taken by the power of eminent domain but in the reasonable and good faith opinion of Lessee, Lessor and any of its lenders, if such consent is required by any loan documents then in effect, the uncondemned portion of the Leased Premises is suitable for continuing the operation of the Complex, then this Lease shall not terminate and Lessor shall repair the Leased Premises, with an equitable abatement of the monthly rent commensurate with a proportionate percentage reduction in income to Lessee as a result of the taking.

### ARTICLE XI
### SURRENDER OF POSSESSION

11.1  **Surrender**. Upon the expiration or termination of the Lease Term, howsoever effected, Lessee shall forthwith surrender the Leased Premises to Lessor, free and clear of all claims, liens, security interests and other encumbrances (except Permitted Encumbrances and other encumbrances approved in writing by Lessor during the Lease Term) and in as good working order and condition as on the Commencement Date, ordinary wear and tear excepted. Lessor's Equipment and all inventory acquired by Lessee during the Lease Term and on hand as of the date of expiration or termination shall also be surrendered to Lessor and all equipment and inventory surrendered shall have an aggregate functional capability at least equal to the aggregate functional capability of the equipment and inventory existing at the Complex as of the Commencement Date, Lessee may remove Lessee's Equipment from the Leased Premises upon the expiration or termination of the Lease Term; provided, however, that Lessee shall be responsible for and shall immediately repair any damage to the Leased Premises caused by the removal of Lessee's Equipment.

### ARTICLE XII

14

## DEFAULT AND LEASE TERMINATION

12.1     **Events of Default of Lessee**. Each of the following acts, omissions or occurrences shall constitute an "**Event of Default of Lessee**" hereunder:

A.     Failure by Lessee to pay or cause to be paid, within thirty (30) days of the date required, rent specified to be paid under Section 2.1 hereof or any other monetary amount due to Lessor;

B.     The vacating of the Leased Premises by Lessee;

C.     Failure of Lessee to observe and perform any covenant, condition or agreement of Lessee under this Lease, other than a breach addressed in Section 12.1(A) above, within ten (10) days after the date Lessee receives written notice of such failure of performance, or, with respect to failures of performance not susceptible of cure within ten (10) days upon approval in writing by the Lessor, the failure of Lessee to thereafter diligently prosecute same to completion and/or cure the same within sixty (60) days;

D.     Lessee shall make a transfer in fraud to creditors or shall make an assignment for the benefit of creditors not approved by Lessor;

E.     Lessee shall file a petition under any section or chapter of the United States Bankruptcy Code, as amended, or under any similar law or statue of the United States or any state thereof, or Lessee shall be adjudged bankrupt or insolvent in proceeding filed against Lessee thereunder;

F.     The filing or execution or occurrence (or contemplation thereof) of any of following: (i) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets or of Lessee's leasehold estate in the Leased Premises; or (ii) the judicial seizure of substantially all of Lessee's assets or Lessee's leasehold estate in the Leased Premises;

G.     If (1) a final judgment, including any judgment or other final determination of any contest, is entered against Lessee in an amount in excess of the monthly Rent (to the extent not covered by independent third party insurance as to which insurer does not dispute coverage), or (2) execution or other final process issues thereon with respect to the Lessee's property, and (3)     Lessee does not discharge the same or provide for its discharge in accordance with its terms, or procure a stay of execution thereon, in any event within sixty (60) days from entry, or shall not, within such period or such longer period during which execution on such

15

judgment shall have been stayed, appeal therefrom or from the order, decree or process upon or pursuant to which such judgment shall have been entered, and cause its execution to be stayed during such appeal, or if on appeal such order, decree or process shall be affirmed and Lessee shall not discharge such judgment or provide for its discharge in accordance with its terms within sixty (60) days after the entry of such order or decree or affirmance, or if any stay of execution on appeal is released or otherwise discharged.

H.   Any representation or warranty of Lessee is breached or is false or misleading in any material respect when made or which becomes false during the pendency of this Lease.

I.   The reduction of the number of rooms at the Hotel by more than five (5%) percent, without the prior written consent of Lessor, to be given or withheld in Lessor's sole discretion and the failure by Lessee to remedy such action within thirty (30) days of receipt of Notice from Lessor of such failure.

J.   A failure by Lessee, whether by action or inaction, to meet any of the other material terms, covenants or conditions of this Lease, including, but not limited to, Alterations that are not in compliance with the provisions of this Lease, or subletting that is not in accordance with the provisions of this Lease, and the failure by Lessee to remedy such failure within thirty (30) days following receipt of Notice thereof from Lessor.

K.   Lessee's failure to discharge any mechanic's or other Lien that is its obligation to discharge under the terms of this Lease within the applicable time period provided in this Lease.

12.2   **Remedies of Lessor**. Upon the occurrence and continuance, beyond any applicable cure period, of any Events of Default of Lessee specified in the foregoing Section 12.1, Lessor shall have the option to pursue any one or a combination of the following remedies without any notice to or demand upon Lessee whatsoever:

A.   Terminate this Lease, in which event Lessee shall immediately surrender the Leased Premises to Lessor and cooperate in any requested operation transfer as required by this Agreement, and if Lessee fails to surrender the Leased Premises and otherwise cooperate, Lessor may, without prejudice to any other remedy which Lessor may have, expel or remove Lessee and any other person who may be occupying the Leased Premises, or any part thereof, at Lessee's expense. In such event Lessor may, in addition to the foregoing, seek such other damages and remedies as are available at law or in equity for Lessee's breach of this Lease.

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 3

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 56 of 100

B.     Enter upon and take possession of the Leased Premises and expel or remove Lessee and any other person who may be occupying Leased Premises, at Lessee's expense, or any part thereof, at Lessee's expense, without terminating this Lease, and exercise reasonable efforts to re-let the Leased Premises, as Lessee's agent, at the highest rent then obtainable and receive the rent therefor; and Lessee covenants and agrees to pay Lessor on demand any cost or expense incurred by Lessor in connection with re-letting the Leased Premises and any deficiency in Rent that may arise by reason of such re-letting. In no event shall Lessee be entitled to any profit made from any re-let or be relieved of any obligation to make rent payments in the event the party re-letting fails to do so.

C.     Enter upon the Leased Premises and, at Lessee's expense, take such actions as may be required of Lessee to cure the complained of default; and Lessee covenants and agrees to reimburse Lessor on demand for any expense, direct or indirect, which Lessor may incur in thus effecting compliance with Lessee's obligations under this Lease.

D.     Pursuit of any of the foregoing remedies shall not preclude pursuit of any other foregoing remedies or of the other remedies herein provided or any other remedies provided at law or in equity, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any Rent or other amounts due to Lessor hereunder or of any damages accruing to Lessor by reason of the violation of any of the terms, provisions or covenants herein contained. No waiver by Lessor of any violation or breach of any of the terms, provisions or covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions or covenants herein contained. Forbearance by Lessor to enforce one or more of the remedies herein provided upon an Event of Default of Lessee shall not be deemed or construed to constitute a waiver of such default.

E.     To the extent any amounts due to Lessor under the terms of this Lease, whether as a result of an Event of Default or otherwise, are not timely paid, such amounts shall bear interest at the rate of eighteen percent (18%) per annum from the date such amounts were due until paid to Lessor.

       12.3    **Events of Default of Lessor**. Each of the following acts, omissions or occurrences shall constitute an "**Event of Default of Lessor**" hereunder:

A.   Failure of Lessor to observe and perform any material covenant, condition or agreement of Lessor under this Lease within ten days (10) after the date Lessor receives written notice of such failure of performance, or, with respect to failure of performance not susceptible of cure within ten (10) days upon approval in writing by the Lessee, the failure of Lessor to commence a cure within said ten (10) day period and to thereafter diligently prosecute same to completion;

B.   Lessor shall make a transfer in fraud to creditors or shall make an assignment for the benefit of creditors;

C.   Lessor shall file a petition under any section or chapter of the United States Bankruptcy Code, as amended, or under any similar law or statute of the United States or any state thereof or Lessor shall be adjudged bankrupt or insolvent in proceedings filed against Lessor hereunder; or

D.   The filing or execution or occurrence (or contemplation thereof) of any of the following: (i) the appointment of a trustee or receiver to take possession of substantially all of Lessor's assets or of Lessor's leasehold estate in the Leased Premises; or (ii) the judicial seizure of substantially all of Lessor's assets or of Lessor's leasehold estate in the Leased Premises.

12.4   **Remedies of Lessee.** Upon the occurrence and continuance of any of the Events of Default of Lessor specified in the foregoing Section 12.3, Lessee shall have the option to pursue any one or combination of the following remedies without any notice to or demand upon Lessor whatsoever:

A.   Terminate this Lease, in which event Lessee shall surrender the Leased Premises to Lessor upon notice to Lessor without further remedy.

B.   Take such actions as may be required of Lessor from time to time to cure the complained of default; and Lessor covenants and agrees to reimburse Lessee on demand for any expenses, direct or indirect, which Lessee may incur in thus effecting compliance with Lessor's obligations under this Lease.   Lessee may not deduct amounts due hereunder from payments due to Lessor.

Pursuit of any foregoing remedies shall not preclude pursuit of any of the other foregoing remedies or of the other remedies herein provided or any other remedies provided at law or in equity.   No waiver by Lessee of any violation or breach of any of the terms, provisions or covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions or

18

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021

NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 58 of 100

covenants herein contained. Forbearance by Lessee to enforce one or more of the remedies herein provided upon an Event of Default of Lessor shall not be deemed or construed to constitute a waiver of such default. To the extent any amounts due to Lessee under the terms of this Lease, whether as a result of an Event of Default of Lessor or otherwise, are not timely paid, such amounts shall bear interest at the rate of seven percent (7%) per annum from the date such amounts were due until paid to Lessee.

## ARTICLE XIII
## PROHIBITION AGAINST LIENS

13.1  **Prohibition Against Liens.**  Lessee shall keep the Leased Premises and this Lease free from any Liens filed or recorded in favor of any mechanic, materialman, architect or engineer performing services by or through Lessee and free from any Lien with respect to work, material or services alleged to have been performed for Lessee. If any such Lien is filed or recorded, Lessee shall discharge any such Lien by bond or otherwise within thirty (30) days after Lessee receives notice of such Lien. If Lessee fails to discharge such Lien within such thirty (30) day period, Lessor may pay the amount reflected on such Lien (or any portion thereof) and any costs, interest, and/or penalties imposed in connection therewith or take such other action as Lessor deems necessary or desirable to remove such Lien, without being responsible for investigating the validity thereof and without regard to any objection by Lessee. The amount so paid and costs incurred by Lessor shall be deemed Additional Rent under this Lease payable within thirty (30) days after Lessee is billed therefor. Nothing in this Lease shall be deemed in any way to: (a) constitute the Lessor's consent or request, express or implied, that any contractor, subcontractor, laborer or materialman provide any labor or materials for any alteration, addition, improvement or repair of the Leased Premises; or (b) evidence Lessor's agreement to subject the Leased Premises to any such Lien.

Nothing contained in this Lease shall be deemed or construed to mean that Lessor has granted Lessee any right, power or permission to do any act or to make any agreement which may create, give rise to, or be the foundation for, any right, title, interest, easement or Lien upon the estate of Lessor in the Leased Premises.

13.2  **Permitted Liens**.  Notwithstanding any provision of this Lease to the contrary but without limiting Lessee's obligation to timely pay Rent and other amounts due and payable by Lessee hereunder, Lessee may create or permit to be created the following liens or encumbrances with respect to Lessee's leasehold interest in the Leased Premises ("**Permitted Liens**"):

A.  Liens granted in connection with any improvements, expansion, extension, additions or modifications of the Complex or any real property adjacent thereto.

B.  Any liens, charges, encumbrances and restrictions which may be created or exist by reason of this Lease or loan from Lessor.

    C.     Liens, charges and encumbrances for taxes or assessments or other government charges or levies not then delinquent.

Notwithstanding anything herein to the contrary, Lessee shall not do any of the following (each, a "**Transfer**"): mortgage, pledge, encumber, alienate, grant a lien on, grant and option with respect to or grant any other interest in the Complex or the Leased Premises, any part thereof or any interest therein (including any legal, beneficial or economic interest in Lessee), directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record the Complex or the Leased Premises without the prior written consent of the Lessor (and mortgagee and collateral mortgagee thereof).

## ARTICLE XIV
## LIABILITIES AND INDEMNIFICATION

14.1    **Reserved**.

14.2    **Indemnification**.  Lessee agrees to and does hereby indemnify and hold the Lessor, its officers, directors, agents, employees and lenders harmless from and against any claims, demands, causes of action, liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorney's fees and associated costs and expenses) resulting from (i) the acts or omissions of Lessee and Lessee's employees, agents, independent contractors, guests, invitees or any other persons or thing in respect of the Complex or caused in whole or in part by breach of this Agreement, (ii) any misrepresentation, breach of warranty or non-fulfillment of any agreement, representation, warranty or condition by or on the part of Lessee under this Lease, or (iii) any liability asserted against Lessor, its officers, directors, agents, employees and Lenders in any way relating to the Lessee or to the Complex except those liabilities specifically assumed herein by Lessor.

## ARTICLE XV
## INSPECTION

15.1    **Inspections**.   Lessor and Lessor's agents, insurers, lenders and/or representatives shall have the right to enter and inspect the Leased Premises during normal business hours.

## ARTICLE XVI
## ACCESS TO RECORDS AND
## REPORTING REQUIREMENTS OF LESSEE

16.1    **Access**. The Lessor shall have access to records of the Lessee, which are determined by mutual agreement of the parties to be reasonably necessary for the Lessor to be able to ensure that the Lessee is complying with the terms and conditions set forth herein.  Notwithstanding anything provided herein to the contrary, Lessor shall not have access to review patient medical records in possession of the Lessee without the specific

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
23-01012-mg   Doc 1   Filed 02/14/23   Entered 02/14/23 10:49:11   Main Document
RECEIVED NYSCEF: 06/11/2021
Pg 60 of 100

consent of such patients and/or without complying strictly with all local, State, and Federal laws, rules, and regulations relating to the protection of confidential patient records.

16.2   **Reporting Requirements of Lessee**.   Lessee shall keep true books of record and account in which full, true and correct entries in accordance with GAAP (consistently applied and in accordance with the International Financial Reporting Standards (IFRS)) (the "**Reporting Standards**") will be made of all dealings or transactions in relation to its business and activities, and an authorized member of Lessee shall furnish to Lessor:

(i)     as soon as possible and in any event within ten (10) days after the occurrence of an Event of Default or any event which, with the giving of notice, lapse of time, or both, would constitute an Event of Default, and if requested by Lessor, a statement of an authorized member of Lessee setting forth details of such Event of Default or event and the action which Lessee has taken or proposes to take to cure the same;

(ii)    as soon as reasonably available and in any event within seventy-five (75) days after the end of each calendar quarter, internally-prepared financial statements of Lessee, including a Balance Sheet and the related Income Statement as of the end of such quarter and for the portion of the fiscal year ended at the end of such quarter, setting forth in each case in comparative form the figures for the corresponding quarter and the corresponding portion of the previous fiscal year, all in reasonable detail and certified (subject to normal year-end adjustments) as to fairness of presentation, in accordance with the Reporting Standards, by Lessee's managing member;

(iii)   as soon as reasonably available and in any event within one hundred twenty (120) days after the close of each fiscal year, a combined and combining Balance Sheet and the related Income Statement as of the end of such fiscal year, fairly and accurately presenting the financial condition of Lessee at such date and the results of operations of Lessee for such fiscal year and setting forth in each case in comparative form the corresponding figures for the corresponding period of the preceding fiscal year, all in reasonable detail, prepared in accordance with the Reporting Standards consistently applied, compiled and reviewed, in each case, by an independent certified public accountant acceptable to Lessor and Lessee.   Lessor may, but is not required to, hire an independent certified public accountant of its choosing, at Lessee's own expense to verify the foregoing;

(iv)    at Lessor's request, a schedule showing the accounts receivable agings delivered to Lessor within thirty (30) days after the end of each month;

(v)     promptly upon receipt and, in any event, within thirty (30) days after receipt thereof, copies of all interim and supplemental financial reports submitted to Lessee by independent certified public accountants in connection with any interim review of the books and records of Lessee made by such accountants;

(vi)     **Reserved**;

(vii)    **Reserved**;

(viii)   immediately after notice to Lessee of the commencement thereof, notice, in writing, of any action, suit, arbitration or other proceeding instituted, commenced or threatened against or affecting the Lessee with an amount in controversy in excess of $100,000;

(ix)     as soon as available and in any event within fifteen days of filing, Lessee's federal, state and local tax returns, if and as applicable, as soon as said returns are completed in the form said returns will be filed with the Internal Revenue Service and any state or local department of revenue or taxing authority; and

(x)      such other information respecting the condition or operations, financial or otherwise, of Lessee as Lessor may from time to time reasonably request, or as is required to be furnished by Lessor to any and all lenders pursuant to the terms of any and all loan agreements and/or mortgages to which Lessor and/or the Leased Premises are currently or may hereafter be bound, including, without limitation, annual public aid rate updates, monthly accounts receivable aging reports, cost reports, annual survey reports and budget and cash flow projections.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

17.1   **Additional Assurances.**   The provisions of this Lease shall be self-operative and shall not require further agreement by the parties except as may be provided herein to the contrary; provided, however, at the request of either party, the other party shall execute such additional instruments and take such additional acts as may reasonably be necessary to effectuate this Lease,

17.2   **Legal Fees and Costs.**   In the event either Lessor or Lessee institute any proceedings to enforce or interpret any provision of this Lease, the prevailing party will be entitled to recover its legal expenses, including, without limitation, reasonable attorney's fees, costs, and necessary disbursements, in addition to any other relief to which such party shall be entitled.

17.3   **Assignment and Subletting**. Lessee shall not assign this Lease or any interest herein, whether by operation of law or otherwise, without the prior written consent of the Lessor (and mortgagee and collateral mortgagee thereof). Notwithstanding the foregoing, the option to extend this Lease for an additional seven (7) year term (as set forth in Section 1.2 hereof) is specific to Lessee and shall not be included in any assignment or be transferable to any other party in any other manner.  Lessor may freely assign this Lease with notice to Lessee.

22

Lessee shall not assign this Lease without the prior consent of the Lessor, which may be given or withheld in the Lessor's sole and absolute discretion. Any unauthorized assignment shall be deemed a Lessee Event of Default.

Any change in control taking place in the ownership or control of the Lessee as a result of its merger, demerger or transformation or of the global assignment of assets and liabilities, or change in control of Lessee by transfer of interests in Lessee in a single or multiple transfers shall be considered an assignment of the Lease by Lessee and will require the consent of the Lessor, failing which shall be deemed a Lessee Event of Default. Notwithstanding anything to the contrary contained herein, but in any event subject to any and all restrictions set forth in the documents and instruments evidencing, governing and securing any credit or other loan facilities to Lessor or encumbering the Lease Premises, upon prior written notice to Lessor and provided the management of and the controlling interest in Lessee does not change, Lessor hereby consents to transfers of interest in and among the existing members/partners/shareholders of Lessee (or to entities or forms of ownership in which such persons hold the equity interests) and transfers of interest to their immediate family members or to other entities owned solely by said immediate family members or to trusts for the benefit of same. "Immediate family members" shall be defined as mother, father, son, daughter, brother, sister, grandchildren, son-in-law, daughter-in-law and spouse. In addition, transfers of interest of Lessee made by bequest, demise or operation of law shall not be deemed a Default or an Event of Default hereunder.

Notwithstanding anything herein to the contrary, Lessee may sublease all or part of the Leased Premises for any Permitted Use.

17.4    **Subordination and SNDA**. This Lease is subject and subordinate to all ground, building or underlying leases and to all mortgages which may now or hereafter affect such leases or the Real Property of which the Leased Premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the Real Property of which the Leased Premises are a part. In confirmation of such subordination, Lessee shall from time to time execute promptly any certificate that Lessor (or Lessor's mortgagee or collateral mortgage thereof) may request.

Lessor shall use commercially reasonable efforts to procure a Subordiantion and Non-Disturbance Agreement ("**SNDA**") from any lender, but in any events subject to any and all restrictions set forth in the documents and instruments evidencing, governing and securing any credit or other loan facilities to Lessor or encumbering the Lease Premises.

17.5    **Notice**. Any notice, demand or communication ("**Notice**") required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered, delivered by prepaid certified mail, return receipt requested or

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 63 of 100

delivered by a nationally recognized overnight delivery service (e.g. Federal Express or Airborne), addressed as follows:

To Lessor:  Wythe Berry Fee Owner LLC
199 Lee Avenue, #693
Brooklyn, New York 11211

To Lessee:  Wythe Berry LLC
199 Lee Avenue, #693
Brooklyn, New York 11211

Or, to such other address, and to the attention of such other person or officer as any party may designate, with copies thereof to the respective counsel thereof as notified by such party.

17.6  **Waiver/Remedies Cumulative**. Any failure or delay by Lessor to exercise any right or remedy under this Lease shall not be deemed a waiver of such right or remedy, and no right or remedy of Lessor shall be deemed to be waived unless expressly waived in writing by Lessor. The waiver of any right or remedy by Lessor hereunder shall not constitute or operate as a waiver of any future similar right or remedy. All rights, powers, options, elections and remedies of Lessor herein contained shall be construed as cumulative and no one of them as exclusive of any other or exclusive of any rights or remedies as are or shall be allowed Lessor at law or in equity.

17.7  **Severability**. In the event any provision of this Lease is held to be invalid, illegal or unenforceable for any reason and in any respect, such invalidity, illegality or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Lease, which shall be and remain in full force and effect, enforceable in accordance with its terms.

17.8  **Post-Commencement Date access to Information**. Lessee acknowledges that subsequent to the Commencement Date Lessor may need access to information or documents in the control or possession of Lessee for legitimate purposes. Accordingly, Lessee agrees that subsequent to the Commencement Date Lessee will make available to Lessor's agents, independent auditors and/or governmental agencies such documents and information in respect of the Leased Premises to the extent necessary to facilitate audits, compliance with governmental requirements and regulations and the prosecution or defense of claims or for other legitimate purposes.

17.9  **Relationship of Parties**. Nothing contained in this Lease shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent, partnership or joint venture or of any association between Lessor and Lessee, and no provision contained in this Lease or any acts of the parties hereto shall be deemed to create any relationship between Lessor and Lessee other than the relationship of Lessor and Lessee. In addition, notwithstanding anything herein to the contrary, nothing herein is intended for the benefit of any third parties and no person or entity other

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 64 of 100

than Lessor or Lessee or their successors or assigns shall have any rights of anything contained herein. No person or entity shall have a right by virtue of this Lease Agreement to join Lessor as a party or otherwise bring the Lessor into a suit asking for damages from Lessee. The Lessor has no obligation or duty for: governmental compliance; patient care; to protect the health, safety and welfare of any employee or third party; or to anyone for anything whatsoever relating to the operation of the business or condition of the Leased Premises such lease being triple net and all obligations relating to the foregoing belonging solely to the Lessee.

17.10  **Revenues**. During the Lease Term, all revenues and income derived from the operation of the Complex shall be the property of Lessee.

17.11  **Choice of Law and Venue**. The parties agree that this Lease shall be governed by and construed in accordance with the laws of the State of New York, and that the courts of such state shall be the exclusive courts of jurisdiction and venue for any litigation, special proceeding or other proceeding as between the parties that may be brought, or arise out of, in connection with or by reason of this lease.

17.12  **Gender, Number**. Whenever the context of this Lease requires, the gender of all words herein shall include the masculine, feminine and neuter, and the number of all words herein shall include the singular and plural.

17.13  **Amendment**. No changes in or amendments to this Lease shall be recognized unless and until made in writing and signed by all parties hereto or them respective successors and assigns. This Lease may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument. This Lease amends and supersedes any and all prior leases between Lessor and Lessee.

17.14  **Binding Effect**. The terms of this Lease shall be binding upon, and shall inure to the benefit of and be enforceable by and against, the heirs, successors and assigns of the parties hereto.

17.15  **Time of the Essence**. Time is of the essence of this Lease, and each and every covenant, term, condition and provision hereof.

17.16  **Divisions and Headings**. The divisions of this Lease and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Lease.

17.17  **Liquor Licensing**. Lessor shall have the right to require Lessee to reasonably endeavor to endorse upon the existing manager's liquor license or to make an application for a temporary or permanent liquor license. Lessee shall be obligated, at its sole cost and expense, to maintain the liquor license in accordance with applicable Law. Lessee's failure to comply with this Section 17.17 shall be deemed a Lessee Event of Default under this Lease.

17.18   **Estoppels**.  Lessor and Lessee shall, at any time and from time to time, within ten (10) business days following receipt of written request from the other party, execute, acknowledge and deliver a written statement certifying:  that this Lease is in full force and effect and unmodified (or, if modified, stating the nature and date of such modification(s)); the Commencement Date; the then Expiration Date; whether the Lease has been extended; the dates to which the Rent reserved hereunder has been paid and the amount of such Rent; whether or not, to the best knowledge of the signer, the other party is in default in performance of any of its obligations under this Lease (and, if so, specifying each such default of which the signer shall have knowledge); if the signer is the Lessee, that Lessee is not in default of any of its obligations under this Lease; and as to such other matters regarding this Lease as may reasonably be requested.  Failure to deliver such statement within said ten (10) business days' period shall be conclusive as to the facts stated in the requested certification and binding upon the party who failed to deliver such certification.

17.19   **Memorandum of Lease**.  Except as provided in this Section 17.19, neither this Lease nor any memorandum thereof may be recorded by any party hereto without the prior written consent of the other party hereto.  Concurrently herewith, the parties have executed and delivered a memorandum of this Lease (the "**Memorandum**") in the form attached hereto as **Exhibit C**, which the parties agree to record in the appropriate New York City land records with respect to the Property promptly following the date hereof.  Any cost or expense in connection with the recordation of the Memorandum shall be shared equally between Lessor and Lessee.

## ARTICLE XVIII
### GUARANTY

18.1   **Guaranty**.  In order to induce Lessor to enter into this Lease, Yoel Goldman and Zelig Weiss, as guarantor (each, a "**Guarantor**", and collectively, the "**Guarantors**") hereby make the following guaranty and agreement with and in favor of Lessor and its respective legal representatives and assigns:

Guarantors guarantee to Lessor, its successors and assigns, that Guarantors shall pay to Lessor, the shortfall between the Rent owed under this Lease and the amount of gross income actually earned by the Lessee (the "**Guaranty**").  This Guaranty shall remain in effect until such time that Lessee has shown gross annual income of Sixteen Million Dollars ($16,000,000.00).

## ARTICLE XIX
### COVENANTS

19.1   **Covenants**.  Lessee hereby covenants to Lessor as follows:

A.     Lessee's financial debt (other than for its Rent and regularly occurring operations obligations contemplated under this Lease which Lessee covenants to pay on time and keep current) will not exceed Five Million Dollars ($5,000,000) (in the aggregate) at any time during the Lease Term.

B.     Lessee shall not accept payments of Rent in advance from tenants of the Leased Premises for a period exceeding one (1) year.

C.     Lessee shall not grant any guarantee that is not in the ordinary course of business of the Leased Premises.

D.     Every quarter Lessee will deliver to the Lessor an officers' certificate confirming the compliance with the foregoing covenants set forth in this Article XIX.

E.     Lessee shall not Transfer the Complex or the Leased Premises without the prior written consent of Lessor (and mortgagee and collateral mortgagee thereof).

**[REMAINDER OF PAGE INTENTIONALLY BLANK; SIGNATURE PAGE FOLLOWS]**

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021

NYSCEF DOC. NO. 3

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 67 of 100

RECEIVED NYSCEF: 06/11/2021

IN WITNESS WHEREOF, Lessor and Lessee have executed this Lease as of the Effective Date.

**LESSOR**:

**WYTHE BERRY FEE OWNER LLC**,
a Delaware limited liability company

By: _____
    Name: Yoel Goldman
    Title: Authorized Signatory

**LESSEE**:

**WYTHE BERRY LLC**,
a Delaware limited liability company

By: _____
    Name: Yoel Goldman
    Title:  Authorized Signatory

**GUARANTORS (AS TO ARTICLE XVIII ONLY)**:

_____
Name: Zelig Weiss

_____
Name: Yoel Goldman

## EXHIBIT A

### Legal Description

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough of Brooklyn, County of Kings, State of New York bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Wythe Avenue, with the southwesterly side of North 13th Street;

RUNNING THENCE southeasterly along the southwesterly side of North 13th Street, 250 feet;

THENCE southwesterly and at right angles to the last mentioned course, 200 feet, to the northeasterly side of North 12th Street;

THENCE northwesterly along the northeasterly side of North 12th Street, 250 feet to the southeasterly side of Wythe Avenue;

THENCE northeasterly along the southeasterly side of Wythe Avenue, 200 feet, more or less, to the point or place of BEGINNING.

## EXHIBIT B

## Copy of Title Proforma

ALTA LOAN POLICY                                    Last amended: February 27, 2017

### First American Title Insurance Company

#### SCHEDULE A

Title No.: MTANY-117524                            Policy No.: 5011336-0204941e

Date of Policy: February 28, 2017                  County: Kings

Amount of Insurance: $166,320,000.00

1. **Name of Insured:**

   All Year Holdings Limited, a British Virgin Islands company, its successors and/or assigns as their interests may appear, as mortgagee, and Mishmeret Trust Company Ltd., an Israeli company, its successors and/or assigns as their interests may appear, as collateral assignee of All Year Holdings Limited

2. **The Estate or interest in the land which is encumbered by the insured mortgage is:**

   Fee Simple

3. **Title to the estate or interest in the land is vested in:**

   Wythe Berry Fee Owner LLC, a DE LLC

4. **The insured mortgage and assignments thereof, if any, are described as follows:**

   See Mortgage Schedule attached hereto.

5. **The Land referred to in this policy is described as follows:**

   SEE LEGAL DESCRIPTION ATTACHED HERETO

Property Address: 55 Wythe Avenue, Brooklyn, NY 11249; Block(s) 2283, Lot(s) 1
(for information only - not insured hereunder)

117524/109

## First American Title Insurance Company

### SCHEDULE A
(Continued)

Title No.: MTANY-117524                                    Policy No.:

#### LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough of Brooklyn, County of Kings, State of New York bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Wythe Avenue, with the southwesterly side of North 13th Street;

RUNNING THENCE southeasterly along the southwesterly side of North 13th Street, 250 feet;

THENCE southwesterly and at right angles to the last mentioned course, 200 feet, to the northeasterly side of North 12th Street;

THENCE northwesterly along the northeasterly side of North 12th Street, 250 feet to the southeasterly side of Wythe Avenue;

THENCE northeasterly along the southeasterly side of Wythe Avenue, 200 feet, more or less, to the point or place of BEGINNING.


NOTE: Being Block(s) 2283, Lot(s) 1, Tax Map of the Borough of Brooklyn, County of Kings, having an address of 55 Wythe Avenue, Brooklyn, New York.

NOTE: Lot and Block shown for informational purposes only.

117524/109

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 71 of 100
RECEIVED NYSCEF: 06/11/2021

ALTA LOAN POLICY

Title No. MTANY-117524

Policy No.: 5011336-0204941e

# First American Title Insurance Company

## SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    Rights of tenants or persons in possession, if any, as shown on Exhibit A annexed hereto, with no option to purchase or right of first refusal.

2.    Covenants, Conditions, Restrictions, Easements, Agreements, etc. of record:

    1. Sewer Easement in Liber 3043, Page 367
    2. Waiver of Legal Grade in Liber 323, Page 1493

    FOR MORTGAGE POLICY ONLY: The Policy insures the Insured that there is no condition or right of re-entry or any other provision for forfeiture or reversion of title set forth therein under which the Insured could be cut-off, subordinated, foreclosed or otherwise disturbed.

3.    Survey made by Leonard J. Strandberg and Associates Consulting Engineers and Land Surveyors, P.C., as Job number 13-35567E dated August 20, 2013, and last updated September 20, 2016, shows a 1 story high concrete and glass building with a 22 story extension, a 3 story high concrete and concrete block building with a 22 story extension and 5 – 22 story overhang, numerous ramps, and also shows:

    1.    Stone steps extend up to 2.1 feet onto North 13th Street, north 12th Street and Wythe Avenue.
    2.    Walls on or near portions of southeasterly record line of title.

    FOR MORTGAGE POLICY ONLY: The Policy insures the Insured against loss or damage sustained by reason of any final court order or judgment (a) requiring the removal of said encroachment and (b) providing for monetary damages or divestment of title arising as a result of said encroachment.

    FOR MORTGAGE POLICY ONLY: The Policy insures the Insured against loss or damage sustained by reason of (a) said encroachment of existing improvements located on the land onto adjoining land and (b) any final court order or judgment requiring the removal from any land adjoining the land of said encroachment.

4.    This Policy will be issued contemporaneously with policy number LX-11654514 of Old Republic National Title Insurance Company and M-8912-001263822 of Stewart Title Insurance Company . At the time liability for any loss shall have been fixed pursuant to the conditions of this policy, this Company shall not be liable to the insured for a greater portion of the loss than the amount that this policy bears to the whole amount of insurance held by the insured as aforesaid.

### First American Title Insurance Company

117524/147

**SCHEDULE B**
(Continued)

**Policy No.:** 5011336-0204941e

Unless a Schedule B Part II is attached, there are no subordinate matters that affect the title to the estate or interest referred to in Schedule A

**First American Title Insurance Company**

117524/147

## MORTGAGE SCHEDULE

1.    Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: Wythe Berry Debt Holdings LLC
      Amount: $8,500,000.00
      Dated: 04/29/2014
      Recorded: 05/14/2014
      CRFN 2014000165946
      Tax Paid: $238,000.00

      Originally covered old Lot 10.

      Assignment of Mortgage
      Assignor: Wythe Berry Debt Holdings LLC
      Assignee: SDF93 Wythe Avenue 1 LLC
      Dated: 06/06/2014
      Recorded: 06/19/2014
      CRFN 2014000210612

2.    Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Amount: $8,050,000.00
      Dated: 06/06/2014
      Recorded: 06/19/2014
      CRFN# 2014000210813
      Tax Paid: $225,400.00

      Consolidation, Modification and Extension Agreement
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Dated: 06/06/2014
      Recorded: 06/19/2014
      CRFN# 2014000210614

      Consolidates Mortgages 1 and 2 to form a single lien of $16,550,000.00.

3.    Gap Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Amount: $17,236,000.00
      Dated: 12/04/2014
      Recorded: 01/14/2015
      CRFN: 2015000016216
      Tax Paid: $482,608.00

      Consolidation, Modification and Extension Agreement
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Dated: 12/04/2014
      Recorded: 01/14/2015
      CRFN: 2015000016217

117524/57

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 3

INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 74 of 100

Consolidates Mortgages 1, 2 and 3 to form a single lien in the amount of $33,786,000.00.

Collateral Assignment of Mortgage
Assignor: SDF93 Wythe Avenue 1 LLC
Assignee: Emigrant Realty Finance, LLC
Dated: 12/17/2014
Recorded: 01/14/2015
CRFN: 2015000016220

Modification Agreement
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 1 LLC
Dated: 07/01/2016
Recorded: 10/28/2016
CRFN: 2016000380648

Re-Assignment of Collateral Assignment of Mortgage
Assignor: Emigrant Realty Finance, LLC
Assignee: SDF93 Wythe Avenue 1 LLC
Dated: 11/02/2016
Recorded: 01/04/2017
CRFN: 2017000003991

Which Mortgage is currently held by SDF93 Wythe Avenue 1 LLC and is assigned to the insured in the
unpaid principal balance of $33,786,000.00.

4.   Mortgage
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 2 LLC
Amount: $1,800,000.00
Dated: 06/06/2014
Recorded: 06/19/2014
CRFN: 2014000210617
Tax Paid: $50,400.00

5.   Gap Mortgage
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 2 LLC
Amount: $1,934,000.00
Dated: 12/04/2014
Recorded: 01/14/2015
CRFN: 2015000016222
Tax Paid: $54,152.00

Consolidation, Modification and Extension Agreement
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 2 LLC
Dated: 12/04/2014
Recorded: 01/14/2015
CRFN: 2015000016223

117524/57

Consolidates Mortgages 4 and 5 to form a single lien in the amount of $3,734,000.00.

Collateral Assignment of Mortgage
Assignor: SDF93 Wythe Avenue 2 LLC
Assignee: Emigrant Realty Finance, LLC
Dated: 12/17/2014
Recorded: 01/14/2015
CRFN: 2015000016226

Modification Agreement
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 2 LLC
Dated: 07/01/2016
Recorded: 10/28/2016
CRFN: 2016000380649

Re-Assignment of Collateral Assignment of Mortgage
Assignor: Emigrant Realty Finance, LLC
Assignee: SDF93 Wythe Avenue 2 LLC
Dated: 11/02/2016
Recorded: 01/04/2017
CRFN: 2017000003990

Which Mortgage is currently held by SDF93 Wythe Avenue 2 LLC and is assigned to the insured in the unpaid principal balance of $3,734,000.00.

6.    Project Loan Mortgage
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 1 LLC
Amount: $4,936,184.00
Dated: 12/04/2014
Recorded: 01/14/2015
CRFN: 2015000016228
Tax Paid: $138,213.60

Collateral Assignment of Mortgage
Assignor: SDF93 Wythe Avenue 1 LLC
Assignee: Emigrant Realty Finance, LLC
Dated: 12/17/2014
Recorded: 01/14/2015
CRFN: 2015000016231

Modification Agreement
Mortgagor: Wythe Berry LLC
Mortgagee: SDF93 Wythe Avenue 1 LLC
Dated: 07/01/2016
Recorded: 10/28/2016
CRFN: 2016000380650

Re-Assignment of Collateral Assignment of Mortgage
Assignor: Emigrant Realty Finance, LLC
Assignee: SDF93 Wythe Avenue 1 LLC
Dated: 11/02/2016

117524/57

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
RECEIVED NYSCEF: 06/11/2021
Pg 76 of 100

Recorded: 01/04/2017
CRFN: 2017000003993

Which Mortgage is currently held by SDF93 Wythe Avenue 1 LLC and is assigned to the insured in the
unpaid principal balance of $4,936,184.00.

7.    Building Loan Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Amount: $38,543,816.00
      Dated: 12/04/2014
      Recorded: 01/14/2015
      CRFN: 2015000016233
      Tax Paid: $1,079,226.40

      Collateral Assignment of Mortgage
      Assignor: SDF93 Wythe Avenue 1 LLC
      Assignee: Emigrant Realty Finance, LLC
      Dated: 12/17/2014
      Recorded: 01/14/2015
      CRFN: 2015000016236

      Modification Agreement
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Dated: 07/01/2016
      Recorded: 10/28/2016
      CRFN: 2016000380651

      Re-Assignment of Collateral Assignment of Mortgage
      Assignor: Emigrant Realty Finance, LLC
      Assignee: SDF93 Wythe Avenue 1 LLC
      Dated: 11/02/2016
      Recorded: 01/04/2017
      CRFN: 2017000003992

      Which Mortgage is currently held by SDF93 Wythe Avenue 1 LLC and is assigned to the insured in the
      unpaid principal balance of $38,543,816.00.

8.    Project Loan Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Amount: $5,195,254.00
      Dated: 09/08/2016
      Recorded: 10/28/2016
      CRFN: 2016000380655
      Tax Paid: $145,468.41

117524/57

Which Mortgage is currently held by SDF93 Wythe Avenue 1 LLC and is assigned to the insured in the unpaid principal balance of $5,195,254.00.

9.    Building Loan Mortgage
      Mortgagor: Wythe Berry LLC
      Mortgagee: SDF93 Wythe Avenue 1 LLC
      Amount: $9,804,746.00
      Dated: 09/08/2016
      Recorded: 10/28/2016
      CRFN: 2016000380652
      Tax Paid: $274,531.61

Which Mortgage is currently held by SDF93 Wythe Avenue 1 LLC and is assigned to the insured in the unpaid principal balance of $9,804,746.00.

Gap Mortgage made by Wythe Berry Fee Owner LLC, a DE LLC, to All Year Holdings Limited, a British Virgin Islands Company dated February 28, 2017 in the amount of $70,320,000.00 and recorded in the Kings County Clerk/Register's Office on _____, 2017 as CRFN_____. Which Mortgage is consolidated with mortgages listed above to form a single lien of $166,320,000.00 by Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents, and Fixture Filing dated February 28, 2017 and recorded in the Kings County Clerk/Register's Office on _____, 2017 as CRFN_____.

Collateral Assignment of Agreement of Mortgage, Security Agreement, Assignment of Rents, and Fixture Filing
Assignor: All Year Holdings Limited, a British Virgin Islands Company
Assignee: Mishmeret Trust Company Ltd., an Israeli Company
Dated: February 28, 2017 and recorded in the Kings County Clerk/Register's Office on _____, 2017 as CRFN_____.

117524/57

Exhibit B to Lease – 55 Wythe Avenue

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**NY ENDORSEMENT (EPL 8.1 - NYC)**
**(NEW YORK CITY ONLY)**

Attached to Policy No. 5011336-0204941e

The Policy insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)   any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B, or

(b)   any environmental protection lien provided for by any state statute, New York City Code and/or Ordinance in effect at Date of Policy, except environmental protection liens provided for by the following statutes:

(1)   Administrative Code, City of New York, Title 17 (Health) Section 17-151.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the amount of insurance.

**DATED: February 28, 2017**

Countersigned by:

*[signature]*

Elliot S. Zaks                                                   **FIRST AMERICAN TITLE INSURANCE COMPANY**
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

TIRSA Endorsement 8.1 EPL (New York City Only) (2/11/02)                              117524

Exhibit B to Lease – 55 Wythe Avenue

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**NY ENDORSEMENT (WAIVER OF ARBITRATION)**
**(OWNER'S OR LOAN POLICY)**

Attached to Policy No. 5011336-0204941e

The policy is amended by deleting therefrom:

(A)    If this endorsement is attached to an ALTA Loan Policy: Condition and Stipulation Section 13.

(B)    If this endorsement is attached to an ALTA Owner's Policy: Condition and Stipulation Section 14.

(C)    If this endorsement is attached to a TIRSA Owner's Extended Protection Policy: Condition Number 12.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

*[signature]*

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

Waiver Of Arbitration Endorsement (Owner's or Loan Policy)
4/24/01

117524

Exhibit B to Lease – 55 Wythe Avenue

### FIRST AMERICAN TITLE INSURANCE COMPANY

### STANDARD NEW YORK LOAN POLICY
### (LOAN POLICY)

Attached to Policy No. 5011336-0204941e

1.  Covered Risk Number 11 is deleted, and the following is substituted:

    11.  The lack of priority of the lien of the Insured Mortgage upon the Title

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien arising under Article 2 of the New York the Lien Law for services, labor, or material arising from construction of an improvement or work related to the land when the improvement or work is either

    (i) contracted for or commenced on or before Date of Policy; or

    (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secure by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

    (b) over the lien of any assessments for street improvement under construction or completed at Date of Policy.

2.  Exclusion Number 7 is deleted, and the following is substituted:

    7. Any lien on the Title for real estate taxes, assessments, water charges or sewer rents imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11 (b).

3.  Exclusions From Coverage is amended by adding a new Exclusion Number 8:

    8. Any consumer protection law including, without limitation, New York Banking Law Sections 6-l ("High-Cost Home Loans") and 6-m ("Subprime Home Loans"), relating to a mortgage on Land improved or to be improved by a structure or structures intended principally for occupancy by one-to-four families.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 3

INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

23-01012-mg   Doc 1   Filed 02/14/23   Entered 02/14/23 10:49:11   Main Document
Pg 81 of 100

Policy No.: 5011336-0204941e

DATED: February 28, 2017

Countersigned by:

*[signature]*

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

Standard New York Loan Policy (Loan Policy)
5/1/07

117524

Exhibit B to Lease – 55 Wythe Avenue

### FIRST AMERICAN TITLE INSURANCE COMPANY

### CO-INSURANCE ENDORSEMENT

Attached to Policy No. 5011336-0204941e

Attached to and made a part of Madison Title Agency LLC, as agent for First American Title Insurance Company ("Issuing Co-Insurer") Policy No. 5011336-0204941e ("Co-Insurance Policy"). Issuing Co-Insurer and any other co-insurers are collectively referred to as "Co-Insurers."

1.   Co-Insurer issues this endorsement as evidence of Co-Insurer's liability under Co-Insurance Policy and directs that this endorsement be attached to the Co-Insurance Policy adopting its Covered Risks, Exclusions, Conditions, Schedules and Endorsements, as follows:

Amount and proportion of insurance and Aggregate Amount of Insurance under the Co-Insurance Policy:

| Co-Insuring Companies | Name and Address | Policy Number | Amount of Insurance | Percentage of Liability |
|---|---|---|---|---|
| Issuing Co-Insurer | Madison Title Agency LLC, as agent for First American Title Insurance Company 1 First American Way Santa Ana, CA 92707 | 5011336-0204941e | $60,000,000.00 | 36.075% |
| Co-Insurer | Madison Title Agency, LLC, as agent for Old Republic National Title Insurance Company 400 Post Avenue, Suite 310 Westbury, NY 11590 | LX-11654514 | $53,160,000.00 | 31.9625% |
| Co-Insurer | Madison Title Agency, LLC, as agent for Stewart Title Insurance Company 300 East 42nd Street, 10th Floor New York, NY 10017 | M-8912-001263822 | $53,160,000.00 | 31.9625% |
| Aggregate Policy Amount | | | $166,320,000.00 | |

2.   Each Co-Insurer shall be liable to the Insured under the Co-Insurance Policy only for the total of the loss and costs multiplied by its Proportion of Liability.

3.   Any notice of claim and any other notice or statement in writing required to be given under the Co-Insurance Policy must be given to Co-Insurer at its address set forth above.

TIRSA Endorsement (Co-Insurance) (11/1/08)                                                                117524

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021

NYSCEF DOC. NO. 3
23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document

Pg 83 of 100
RECEIVED NYSCEF: 06/11/2021

Policy No.: 5011336-0204941e

4.  Any endorsement to the Co-Insurance Policy issued after the date of this Co-Insurance Endorsement must be signed on behalf of the Co-Insurer by its authorized officer or agent.

5.  This Co-Insurance Endorsement is effective as of the Date of Policy of the Co-Insurance Policy. This Co-Insurance Endorsement may be executed in counterparts.

This endorsement is issued as part of the Co-Insurance Policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

DATED: _____
Madison Title Agency LLC, as agent for First American Title Insurance Company

By: _____


DATED: _____
Madison Title Agency, LLC, as agent for Old Republic National Title Insurance Company

By: _____


DATED: _____
Madison Title Agency, LLC, as agent for Stewart Title Insurance Company

By: _____


[Additional Co-Insurer signatures may be added if needed.]


DATED: February 28, 2017


Countersigned by:

FIRST AMERICAN TITLE INSURANCE COMPANY

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701


TIRSA Endorsement (Co-Insurance) (11/1/08)

117524

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**TIRSA ENDORSEMENT 9**
**(RESTRICTIONS, ENCROACHMENTS, MINERALS)**

Attached to Policy No. 5011336-0204941e

The Policy insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The existence, at Date of Policy, of any of the following:

   (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

   (b) Unless expressly excepted in Schedule B:

      (1) Present violations on the land of any enforceable covenants, conditions or restrictions, and any existing improvements on the land which violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

      (3) Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

      (4) Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

      (5) Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:

   (a) invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

   (b) loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements, including lawns, shrubbery or trees;

   (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

   (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

TIRSA Endorsement 9 (Restrictions, Encroachments, Minerals) (10/17/98) NY (5/1/07)                                117524

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 85 of 100

Policy No.: 5011336-0204941e

4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

*[signature]*

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

TIRSA Endorsement 9 (Restrictions, Encroachments, Minerals) (10/17/98) NY (5/1/07)                    117524

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
23-01012-mg   Doc 1   Filed 02/14/23   Entered 02/14/23 10:49:11   Main Document
RECEIVED NYSCEF: 06/11/2021
Pg 86 of 100

### FIRST AMERICAN TITLE INSURANCE COMPANY

**ACCESS ENDORSEMENT**
**(LOAN POLICY ONLY)**

Attached to Policy No. 5011336-0204941e

The Policy hereby insures the Insured against loss which the Insured shall sustain in the event that the described land does not abut upon a physically open public street known as Wythe Avenue, North 12th Street and North 13th Street.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

TIRSA Endorsement (Access) (10/22/99)

117524

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 3
INDEX NO. 514152/2021
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 87 of 100

## FIRST AMERICAN TITLE INSURANCE COMPANY

### LAND SAME AS SURVEY ENDORSEMENT

Attached to Policy No. 5011336-0204941e

The Company hereby assures the Insured that said Land is the same as that delineated on the plat of a survey made by Leonard J. Strandberg and Associates Consulting Engineers and Land Surveyors, P.C., dated August 20, 2013, and last updated September 20, 2016 as Job ID 13-35567E.

The Company hereby insures said Assured against loss which said Assured shall sustain in the event said assurances herein shall prove to be incorrect.

The total liability of the Company under said policy and any endorsement therein shall not exceed, in the aggregate, the face amount of said policy and costs which the Company is obligated under the Conditions thereof to pay.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

TIRSA Endorsement (Land Same As Survey) (5/1/07)                117524

Exhibit B to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 88 of 100

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**MORTGAGE TAX ENDORSEMENT**

Attached to Policy No. 5011336-0204941e

The Policy insures the owner of the indebtedness secured by the insured mortgage(s) against loss or damage which may be sustained by reason that all mortgage recording taxes required to be paid on the insured mortgage(s) have not been paid.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

*[signature]*

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

TIRSA Endorsement (Mortgage Tax) (12/27/00)

117524

Exhibit B to Lease – 55 Wythe Avenue

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**SINGLE TAX PARCEL ENDORSEMENT**
**SINGLE TAX LOT (LOAN POLICY ONLY)**

Attached to Policy No. 5011336-0204941e

The Policy insures against loss or damage which the insured may sustain by reason that the land described in Schedule A is not assessed for real estate tax purposes as a separate tax lot which includes no other land.

This endorsement is made a part of the Policy and is subject to all of the terms and provisions thereof and of any other endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any other endorsements, nor does it extend the effective date of the Policy and any other endorsements, nor does it increase the face amount thereof.

**DATED: February 28, 2017**

Countersigned by:

*[signature]*

Elliot S. Zaks
Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701

**FIRST AMERICAN TITLE INSURANCE COMPANY**

TIRSA Endorsement (Tax Parcel Single Lot) (Loan Policy)(12/27/00)                              117524

Exhibit B to Lease – 55 Wythe Avenue

## EXHIBIT C

## Memorandum of Lease

**WYTHE BERRY FEE OWNER,**

as Lessor

and

**WYTHE BERRY LLC,**

as Lessee

**MEMORANDUM OF LEASE**

Dated: February 28, 2017

Block:    2283
Lot:      1
County:   Kings County
Address:  55 Wythe Avenue, Brooklyn, NY
PREPARED BY AND UPON RECORDATION RETURN TO:

Madison Title Agency, LLC
1125 Ocean Avenue
Lakewood, NJ 08701
Attn: Mindy Lichtenstein

Exhibit C to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
INDEX NO. 514152/2021
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 91 of 100

## MEMORANDUM OF LEASE

This is a Memorandum of Lease for the Lease Agreement executed on the 28th day of February 2017 (the "**Lease**"), between **WYTHE BERRY FEE OWNER LLC**, a Delaware limited liability company, having its principle office at 199 Lee Avenue, #693, Brooklyn, New York 11211(the "**Lessor**") and **WYTHE BERRY LLC**, a New York limited liability company, having its principal office at 266 Broadway, Suite 301, Brooklyn, New York 11211 (the "**Lessee**").

1. Lessor is the owner of certain real property described in <u>Exhibit A</u> attached hereto and by this reference incorporated herein, and the buildings and improvements located thereon (the "**Premises**").

2. Lessor and Lessee, concurrently herewith, have entered into that certain Lease pursuant to which Lessor will lease to Lessee, and Lessee will lease from Lessor, the Premises, pursuant to the terms and conditions contained in the Lease.

3. The terms and conditions of the Lease are incorporated herein by reference. This memorandum is prepared for the purpose of notification and in no way modifies the terms and conditions of the Lease. If there is any inconsistency between the terms and conditions of this memorandum and the terms and conditions of the Lease, the terms and conditions of the Lease shall control.

4. The term of the Lease begins on the date hereof and expires on January 31, 2032 unless sooner terminated in accordance with the terms of the Lease.

[Signature page follows]

Exhibit C to Lease – 55 Wythe Avenue

**LESSOR**:

WYTHE BERRY FEE OWNER LLC,
a Delaware limited liability company

By:_____
   Name: Yoel Goldman
    Title: Authorized Signatory

WYTHE BERRY LLC,
a New York limited liability company

By:_____
   Name: Zelig Weiss
    Title: Authorized Signatory

Exhibit C to Lease – 55 Wythe Avenue

**EXHIBIT A**

Premises

ALL that certain plot, piece or parcel of land situate, lying and being in the Borough of Brooklyn, County of Kings, State of New York bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Wythe Avenue, with the southwesterly side of North 13th Street;

RUNNING THENCE southeasterly along the southwesterly side of North 13th Street, 250 feet;

THENCE southwesterly and at right angles to the last mentioned course, 200 feet, to the northeasterly side of North 12th Street;

THENCE northwesterly along the northeasterly side of North 12th Street, 250 feet to the southeasterly side of Wythe Avenue;

THENCE northeasterly along the southeasterly side of Wythe Avenue, 200 feet, more or less, to the point or place of BEGINNING.

NOTE: Being Block(s) 2283, Lot(s) 1, Tax Map of the Borough of Brooklyn, County of Kings.

Exhibit A - Memo of Lease

Exhibit C to Lease – 55 Wythe Avenue

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM

NYSCEF DOC. NO. 4

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 94 of 100

# EXHIBIT B

**WYTHE BERRY FEE OWNER LLC**
199 Lee Avenue, Suite 693
Brooklyn, New York 11211

May 5, 2021

**VIA EMAIL AND OVERNIGHT DELIVERY**
Wythe Berry LLC
266 Broadway, Suite 301
Brooklyn, New York 11211
Attn: Zelig Weiss, Managing Member

Zelig Weiss
50 Skillman Street, #1
Brooklyn, New York 11205
zelig@riversideny.com

Yoel Goldman
199 Lee Avenue, Suite 693
Brooklyn, New York 11211
yoel@allyearmgt.com

**NOTICE OF DEFAULT**

Re:    **Lessee:  Wythe Berry LLC (the "Lessee")**
**Guarantors:  Zelig Weiss and Yoel Goldman (the "Guarantors")**
**Location:  55 Wythe Avenue, Brooklyn, New York (the "Premises")**
**Notice of Default**

Dear Sirs:

We write in follow up of our letters of January 25, 2021 and February 11, 2021 to the Lessee (the "Letters"). This letter serves as notice that Lessee is in default under that certain Ground Lease, dated as of February 28, 2017 by and between Wythe Berry Fee Owner, LLC ("Lessor") and Lessee (the "Lease") for the Premises.  As you know, the Lease is guaranteed by the Guarantors, pursuant to Section 18.1 of the Lease (the "Guaranty"). Lessor expressly reserves all legal, equitable and contractual rights and powers and remedies provided either in the Lease or by statute, at law, in equity or otherwise, including the enforcement of the Guaranty, in relation to Events of Default of Lessee under the Lease, including, but not limited to, the Events of Default set forth herein.

Non-Payment of Rent and Additional Rent

Pursuant to Section 2.1 of the Lease, Lessee is responsible to pay Rent semi-annually in the amount of $7,500,000.00 which is due and payable on August 1st and February 1st of each year throughout the Lease Term. As set forth in the Letters, Lessee failed to remit payment of Rent that

1

was due on February 1, 2021 which failure constitutes an Event of Default of Lessee pursuant to Section 12.1(a) of the Lease. Lessor hereby demands that Lessee and Guarantors remit payment of Rent, to which they are jointly and severally obligated, with interest calculated pursuant to Section 2.1 and 12.2(e), immediately.

Section 2.1 of the Lease further provides that Lessee is required to pay Additional Rent within ten (10) days after written demand from Lessor. Failure to pay shall result in an additional Event of Default of Lessee pursuant to Section 12.1(a) of the Lease.

Lessor expressly reserves all legal, equitable and contractual rights, powers and remedies provided either in the Lease or by statute, at law, in equity or otherwise in relation to such Events of Default of Lessee, including, but not limited to, the enforcement of the Guaranty and the ability to terminate the Lease pursuant to Section 12.2(a) of the Lease.

NYC Department of Buildings Violations

Pursuant to Section 3.2 of the Lease, Lessee is required to promptly cure all violations of Law (as defined in the Lease) as to which a notice of violation has been issued or as to which a directive or order has been issued by any public officer or other person having authority, promptly discharge of record any such notice of violation, promptly comply with any such order or directive, and pay all fines, penalties, interest and other costs imposed by any governmental authority in connection with any violation or requirement of Law. Further, Lessee, at Lessee's sole cost and expense, is required to make any unforeseen and structural alterations, repairs, changes or modifications in or to the Leased Premises to be in compliance with all Laws. Lessor has been advised that the NYC Department of Buildings has issued at least seventeen (17) violations concerning the Complex dating back to January 1, 2020, which upon information and belief, currently remain active (the "NYC DOB Violations"). In the event that Lessee fails to cure the NYC DOB Violations within ten (10) days of receipt of this letter, an additional Event of Default of Lessee shall occur pursuant to Section 12.1(c) of the Lease.

Lessor expressly reserves all legal, equitable and contractual rights, powers and remedies provided either in the Lease or by statute, at law, in equity or otherwise in relation to such Event of Default of Lessee, including, but not limited to, the ability to enter upon the Leased Premises and, at Lessee's expense, take such actions as may be required to cure the NYC DOB Violations pursuant to Section 12.2(c) of the Lease.

Financial Reporting

Pursuant to Section 16.1 of the Lease, Lessor is entitled to access to, and pursuant to Section 16.2 of the Lease, Lessee is contractually obligated to provide Lessor with, certain financial records, including (i) internal quarterly prepared, and annual independently prepared, audited/reviewed financial statements related to the Hotel and Complex, together with any further interim and independent supplemental reports, and (ii) all other information reasonably requested by Lessor. Further, Section 17.8 of the Lease provides that Lessee will make available to Lessor's agents, independent auditors and/or governmental agencies such documents and information in respect of the Leased Premises to the extent necessary to facilitate audits, compliance with

governmental requirements and regulations and the prosecution or defense of claims or for other legitimate purposes.

As of the date hereof, Lessee has failed to provide Lessor with signed financial reports for the years 2019 and 2020 as well as documents related to loans under the U.S. Small Business Administration's Paycheck Protection Program that Lessee received or anticipates receiving as well as details pertaining to the business practices and other measures to address decreased commercial activity taken by Lessee (the "Financial Reports"), which Financial Reports were requested by Lessor in Lessor's Letter dated February 11, 2021. Accordingly, Lessor's failure to provide the Financial Reports within ten (10) days of written request by Lessor constituted another Event of Default of Lessee pursuant to Section 12.1(c) of the Lease. Lessor hereby reiterates its demand for the delivery of the Financial Reports and notes that the information contained in the Financial Reports is critical in order for Lessor to determine whether Lessee is in compliance with the financial covenants set forth in Section 19.1 of the Lease.

Lessor expressly reserves all legal, equitable and contractual rights, powers and remedies provided either in the Lease or by statute, at law, in equity or otherwise in relation to such Events of Default of Lessee.

Default Remedy Letter

Lessor hereby requests pursuant to Section 16.2(i) of the Lease that Lessee provide Lessor with a statement of an authorized member of Lessee setting forth details of such Events of Default and the action which Lessee has taken or proposes to take to cure the same within ten (10) days of receipt of this letter. In the event that Lessee fails to provide this letter within ten (10) days of receipt of this letter, an additional Event of Default of Lessee shall occur pursuant to Section 12.1(c) of the Lease.

Lessor expressly reserves all legal, equitable and contractual rights, powers and remedies provided either in the Lease or by statute, at law, in equity or otherwise in relation to such Events of Default of Lessee.

Right of Inspection

Pursuant to Section 15.1 of the Lease, Lessor and Lessor's agents, insurers, lenders and/or representatives have the right to enter and inspect the Leased Premises during normal business hours. Accordingly, please be advised that Lessor and/or our lenders, agents or representatives, including external advisors, shall be exercising its inspection rights for inspection on a date to be designated during normal business hours in order to inspect the Premises as well as business records, hardware, computer systems, and other assets located thereon.

Reservation of Rights

All rights and remedies of Lessor, whether under the Lease, Guaranty, law or equity, are all hereby expressly reserved, including without limitation, the filing of a lawsuit against Lessee and Guarantors under the Guaranty for damages, including but not limited to, unpaid past due and

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 4

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 98 of 100

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

future Rent and Additional Rent, damages that may exist to the Premises, payment of such expenses, reasonable attorney fees and costs incurred by Lessor in re-entering and repossessing the Premises and in making such repairs and alterations as may be necessary, and punitive and consequential damages. Any failure to assert or set forth herein any right or remedy of Lessor; any obligation of Lessee; any event of default by Lessee; or any other matter whatsoever, is not intended to be, and cannot be relied upon by you or anyone else as a release or waiver of any such right, remedy, obligation, default or other matter.

Sincerely,

**WYTHE BERRY FEE OWNER LLC**
By its Sole Member:

**WYTHE BERRY MEMBER LLC**
By its Managing Member:

**YG WV LLC**
By its Sole Member:

**ALL YEAR HOLDINGS LIMITED**

By:

_____
Asaf Ravid
Chief Restructuring Officer

Cc:    Wythe Berry LLC
       109 North 12th Street, Suite 5A
       Brooklyn, New York 11249

220627258v3

4

**Warrender, April A.**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Thursday, May 6, 2021 3:10 PM |
| **To:** | Warrender, April A. |
| **Subject:** | [EXT MAIL] FedEx Shipment 773642654026: Your package has been delivered |



# Hi. Your package was delivered Thu, 05/06/2021 at 3:09pm.



Delivered to 266 BROADWAY 301, BROOKLYN, NY 11211

**OBTAIN PROOF OF DELIVERY**

**TRACKING NUMBER**      773642654026

**FROM**      Archer Greiner

33 East Euclid Avenue

1 CENTENNIAL SQUARE

HADDONFIELD, NJ, US, 08033

**TO**      Wythe Berry LLC

Attn: Zelig Weiss, Managing Member

FILED: KINGS COUNTY CLERK 06/11/2021 01:16 PM
NYSCEF DOC. NO. 4

23-01012-mg    Doc 1    Filed 02/14/23    Entered 02/14/23 10:49:11    Main Document
Pg 100 of 100

INDEX NO. 514152/2021

RECEIVED NYSCEF: 06/11/2021

266 Broadway, Suite 301

BROOKLYN, NY, US, 11211

| | |
|---|---|
| **REFERENCE** | ALL221.00404 |
| **SHIPPER REFERENCE** | ALL221.00404 |
| **SHIP DATE** | Wed 5/05/2021 05:34 PM |
| **DELIVERED TO** | Residence |
| **PACKAGING TYPE** | FedEx Envelope |
| **ORIGIN** | HADDONFIELD, NJ, US, 08033 |
| **DESTINATION** | BROOKLYN, NY, US, 11211 |
| **SPECIAL HANDLING** | Deliver Weekday |
| | Residential Delivery |
| | NSR |
| **NUMBER OF PIECES** | 1 |
| **TOTAL SHIPMENT WEIGHT** | 0.50 LB |
| **SERVICE TYPE** | FedEx Standard Overnight |



# Download the FedEx® Mobile app

Get the flexibility you need to create shipments and request to customize your deliveries through the app.

**LEARN MORE**