Jon Schuyler Brooks
**ABRAMSON BROOKS LLP**
1051 Port Washington Blvd. #322
Port Washington, New York 11050
Tel: (516) 455-0215

*Counsel for Wythe Berry LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In re                                                                    :        Chapter 11
                                                                              :
WYTHE BERRY FEE OWNER LLC,                :        Case No. 22-11340 (MG)
                                                                              :
                              Debtor.                          :
                                                                              :
------------------------------------------------------------X
                                                                              :
WYTHE BERRY FEE OWNER LLC                :
                                                                              :
                              Plaintiff,                        :        Adv. Proc. No. 23-01012 (MG)
                                                                              :
                                                                              :        **ANSWER AND AFFIRMATIVE**
            v.                                                    :        **DEFENSES OF WYTHE BERRY LLC**
                                                                              :        **WITH COUNTERCLAIMS**
WYTHE BERRY LLC, YOEL GOLDMAN    :
and ZELIG WEISS,                                      :
                                                                              :
                              Defendants.                   :
                                                                              :
------------------------------------------------------------X

Defendant Wythe Berry LLC ("Wythe Berry" or "Defendant" or "Company"), by and

through its attorney, Abramson Brooks LLP, as and for its answer to the Verified Complaint

("Complaint") of plaintiff, Wythe Berry Fee Owner LLC ("Fee Owner"), states as follows:

1.        Admits (a) that, at all times relevant prior to February 28, 2017, Wythe Berry was

the owner of the real property known generally as 111 North 12th Street, Brooklyn, NY (the

"Property"), having (i) first acquired and merged two parcels identified on the Tax Map for the

Borough of Brooklyn as Block 2283, Lots 1 & 10, (ii) then remediated the grossly-contaminated

former Brooklyn Union Gas Company manufactured gas holder site under the supervision of the

New York State Department of Environmental Conservation, and (iii) finally implemented the

redevelopment plan devised by co-defendant Zelig Weiss ("Weiss") to construct a mixed-use

facility that includes a world-class hotel, The William Vale Hotel ("Hotel"), restaurant and retail

space, community space, and parking area (collectively, the "Complex"); (b) that, on or about

February 28, 2017, (i) title to the Property passed from Wythe Berry to Fee Owner (the "Title

Transfer"), and also (ii) Fee Owner and Wythe Berry entered into a ground lease (the "Lease"),

that co-defendant Yoel Goldman ("Goldman") signed on behalf of not only Fee Owner but also

Wythe Berry;[1] and (c) that the transfer of title and Lease were part of a scheme, devised and

implemented by Goldman, to refinance the debt on the Property, pursuant to which Goldman's

then wholly-owned company, All Year Holdings Ltd. ("All Year"), issued certain bonds (the

"Series C Bonds") on the Tel Aviv Stock Exchange ("TASE") denominated in New Israeli

Shekels ("NIS"), raised an amount equivalent to $166,320,000 (the "Funds"), and then loaned

the Funds (the "Loan") to the newly-established Fee Owner pursuant to a promissory note (the

"Note") and secured by a mortgage on the Property (the "Mortgage"), both of which Fee Owner

issued in favor of All Year (collectively, the "Goldman Refi Scheme"); but except as thus

expressly admitted, Defendant denies the allegations set forth in Paragraph 1 of the Complaint,

and denies that Fee Owner is the *de jure* lessor of the Property.

    2.      Denies the allegations in Paragraph 2 of the Complaint.

    3.      Admits that, (i) prior to the Title Transfer, Goldman and the other members of

Wythe Berry ratified in writing the Management Agreement pursuant to which Wythe Berry

pays management fees to Espresso Hospitality Management LLC ("Espresso"), an entity Weiss

owns, (ii) subsequent to the Title Transfer, Goldman, through All Year, owned YG WV LLC, the

---

[1] Defendant respectfully directs the Court to the Lease for an accurate and complete statement of its contents.

titular Managing Member of Fee Owner's sole member, Wythe Berry Member LLC ("Member

LLC"), and (iii) none of Goldman, All Year, Member LLC, or Fee Owner ever objected to or

sought to terminate either the Management Agreement or Espresso Hospitality; but except as

thus expressly admitted, Defendant denies the allegations set forth in Paragraph 3 of the

Complaint.

4.      Admits that, on or about the dates stated, Fee Owner caused to be delivered to

Wythe Berry documents bearing the mentioned titles; but except as thus expressly admitted,

Defendant denies the allegations set forth in Paragraph 4 of the Complaint.

5.      Admits that, during the pendency of this litigation, (i) since February 1, 2022,

Wythe Berry has paid $22.5 million in use and occupancy in lieu of any Rent due under the

Lease, (ii) Wythe Berry continues to oversee the operations of the Complex, including the Hotel,

and (iii) as a direct result of the efforts of Weiss, Wythe Berry, and the operating entities, the

Hotel recently was recognized by Travel + Leisure magazine as the No. 3 hotel on its list of the

"15 Best Hotels in New York City," and the No. 14 hotel on its list of the "15 Best City Hotels in

the Continental U.S.," and for five years in a row, the Hotel (which opened in 2016) has been

voted one of the top 20 hotels in New York City by the Condé Nast Traveler's Readers' Choice

Awards, and the only hotel in Brooklyn among those recognized; but except as thus expressly

admitted, denies the allegations set forth in Paragraph 5 of the Complaint.

6.      States that no answer is required to Goldman's characterization of the relief

sought in this action; but except as thus expressly admitted, denies the allegations set forth in

Paragraph 6 of the Complaint.

7.      Admits, upon information, that (i) Fee Owner is a limited liability company

organized under the laws of the State of Delaware, (ii) Fee Owner, on or about February 8, 2017,

was authorized to do business in the State of New York, and (iii) Fee Owner, in violation of

Section 301(e) of the New York Limited Liability Company Law, failed to submit the required

Biennial Statement and pay the associated fee to the New York State Department of State when

due in February 2021, and again in February 2023; but except as thus expressly admitted, denies

the allegations set forth in Paragraph 7 of the Complaint.

8.      Admits that Wythe Berry is a limited liability company organized under the laws

of the State of New York; but except as thus expressly admitted, denies the allegations set forth

in Paragraph 8 of the Complaint.

9.      Upon information and belief, admits the allegations in Paragraph 9 of the

Complaint.

10.     Admits the allegations in Paragraph 10 of the Complaint.

11.     Paragraph 11 sets forth legal conclusions to which no answer is required.

12.     Paragraph 12 sets forth legal conclusions to which no answer is required.

13.     Admits that the luxury hotel at the Complex is The William Vale Hotel; but

except as thus expressly admitted, denies the allegations set forth in Paragraph 13 of the

Complaint, and respectfully refers the Court to its answer set forth, *supra*, in Paragraph 1 of the

Answer.

14.     States that, to the extent the Complaint is quoting documents, Defendant

respectfully refers the Court to the documents for an accurate and complete statement of their

contents; and admits that, on or about February 28, 2017, (i) Goldman executed the Lease on

behalf of both Fee Owner and Wythe Berry, and (ii) Goldman and Weiss signed as to only

Article XVIII of the Lease; but except as thus expressly admitted, denies the allegations set forth

in Paragraph 14 of the Complaint.

15.     Admits that (i) as originally established, Weiss and Goldman each held 50% of the membership interests in Wythe Berry, (ii) Weiss still owns at least 50% of the membership interests of Wythe Berry, and (iii) the Fifth Amendment of the Operating Agreement of Wythe Berry (the "Fifth Amendment") contains the following language: "Weiss shall be the 'Managing Member' responsible for the management of the business and affairs of the Company and the day to day operation and functioning of the Property, and Goldman shall be responsible for overseeing matters relating to the funding, financing and refinancing of Property"; but except as thus expressly admitted, denies the allegations set forth in Paragraph 15 of the Complaint.

16.     Denies the allegations set forth in Paragraph 16 of the Complaint

17.     Admits that Wythe Berry sublet space within the Complex for the Hotel to The William Vale Hotel LLC ("TWVH"), and admits further that Weiss owns a 50% membership interest in TWVH; but except as thus expressly admitted, denies the allegations set forth in Paragraph 17 of the Complaint.

18.     Admits that Espresso manages the Hotel and retail space at the Complex, and that Weiss owns Espresso; but except as thus expressly admitted, denies the allegations set forth in Paragraph 18 of the Complaint.

19.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and admits that the business operations at the Complex generate revenue; but except as thus expressly admitted, denies the allegations set forth in Paragraph 19 of the Complaint.

20.     Admits that, since February 2022, in lieu of Rent under the Lease, Wythe Berry has paid Fee Owner (or its designee) $22.5 million in use and occupancy; but except as thus expressly admitted, denies the allegations set forth in Paragraph 20 of the Complaint.

21.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 21 of the Complaint.

22.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 22 of the Complaint.

23.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 23 of the Complaint.

24.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 24 of the Complaint.

25.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 25 of the Complaint.

26.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 26 of the Complaint.

27.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 27 of the Complaint.

28.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their

contents; and denies any remaining allegations set forth in Paragraph 28 of the Complaint.

29.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 29 of the Complaint.

30.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 30 of the Complaint.

31.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 31 of the Complaint.

32.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 32 of the Complaint.

33.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 33 of the Complaint.

34.    States that, to the extent Paragraph 34 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 34 of the Complaint.

35.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 35 of the Complaint.

36.    States that, to the extent the Complaint is quoting documents, Defendant

respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 36 of the Complaint.

37.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 37 of the Complaint.

38.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 38 of the Complaint.

39.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 39 of the Complaint.

40.    Admits that, since the inception of the Lease, in lieu of the financial reporting set forth in the Lease, Fee Owner directed Wythe Berry to provide only certain financial information at certain times, and Wythe Berry complied with that direction; but except as thus expressly admitted, denies the allegations set forth in Paragraph 40 of the Complaint.

41.    Denies the allegations in Paragraph 41 of the Complaint.

42.    Denies the allegations in Paragraph 42 of the Complaint.

43.    Admits that, in response to correspondence received from Fee Owner, Wythe Berry delivered to Fee Owner a letter, dated January 31, 2021, stating among other things that, due to the COVID-19 pandemic, Wythe Berry was invoking its rights under the Lease (and otherwise) to an abatement of the Rent that, on paper, was due on February 1, 2021; but except as thus expressly admitted, denies the allegations set forth in Paragraph 43 of the Complaint.

44.    States that, to the extent Paragraph 44 purports to state conclusions of law, no

answer is required; and admits that (a) the Hotel is a "major component" of the Complex, (b) due to government-imposed pandemic-related closures, the Hotel operated during only part of the COVID-19 pandemic, (c) the Hotel generated some revenue during the COVID-19 pandemic, and (d) due to government-imposed pandemic-related closures, and the drastic decline in room sales/occupancy during the COVID-19 pandemic, the Hotel paid Espresso only one component of its management fee during 2020, but did not pay Espresso any "incentive" fee; but except as thus expressly admitted, denies the allegations set forth in Paragraph 44 of the Complaint.

45.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 45 of the Complaint because the Complaint fails to identify with any specificity the mentioned "P&L Report."

46.     Denies knowledge or information sufficient to form a belief as to the truth or falsity about unspecified "hospitality industry reports" to which Fee Owner claims to have access and/or the contents of such reports; and admits that, as of March 2021, the Hotel had a running three-month occupancy rate of 43.5%, and a running 12-month occupancy rate of only 34.6%, a decline of 52.3% over the prior 12-month period; but except as thus expressly admitted, denies the allegations set forth in Paragraph 46 of the Complaint.

47.     Denies the allegations set forth in Paragraph 47 of the Complaint.

48.     Admits that (a) Weiss owns 50% of the membership interests in both TWVH and The William Vale FNB LLC ("FNB"), (b) TWVH is the sublessee of the space within the Complex allocated to the Hotel, and (c) TWVH and FNB each received two PPP loans in the aggregate amounts stated in the Complaint; but except as thus expressly admitted, denies the allegations set forth in Paragraph 48 of the Complaint.

49.     Denies knowledge or information sufficient to form a belief as to the truth or

falsity about what Fee Owner purportedly learned regarding violations issued against the

Complex by the New York City Department of Buildings ("DOB"); and denies the remaining

allegations set forth in Paragraph 49 of the Complaint.

50.     Denies the allegations set forth in Paragraph 50 of the Complaint.

51.     Admits that, pursuant to the Goldman Refi Scheme, as set forth in greater detail in

Paragraph 1 of this Answer, on or about February 28, 2017, Fee Owner issued the Note and

Mortgage in favor of All Year, together with other Loan-related documents (collectively, the

"Loan Documents").

52.     Upon information and belief, admits that All Year purports to have transferred the

Loan Documents to Mishmeret Trust Company Limited ("Mishmeret"), in the latter's capacity as

Trustee under a certain "Deed of Trust" for the holders of All Year's Series C Bonds (the

"Bondholders"), on or about March 16, 2021 (the "Loan Document Transfer"), and that upon the

Loan Document Transfer, Mishmeret became the Lender under the Loan Documents, including

the Note and Mortgage.

53.     Admits that, on or about April 16, 2021, Defendant received an e-mail from

Michael Friedman, Esq. of Chapman and Cutler LLP, attached to which was a letter from

Mishmeret addressed to All Year, Wythe Berry, Goldman, and Weiss, all at the same physical

address, which is a mailbox service to which neither Wythe Berry nor Weiss had or has access,

(the "Misheret Notice of Default"); but except as thus expressly admitted, denies the allegations

set forth in Paragraph 53 of the Complaint.

54.     Denies the allegations set forth in Paragraph 54 of the Complaint.

55.     Admits that, on or about the date stated, Fee Owner caused to be delivered to

Wythe Berry a document bearing the mentioned title; but except as thus expressly admitted,

Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

56.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 56 of the Complaint.

57.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 57 of the Complaint.

58.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 58 of the Complaint.

59.    Denies the allegations set forth in Paragraph 59 of the Complaint.

60.    Admits that, on or about the date stated, Fee Owner caused to be delivered to Wythe Berry a document bearing the mentioned title; but except as thus expressly admitted, Defendant denies the allegations set forth in Paragraph 60 of the Complaint.

61.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 61 of the Complaint.

62.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 62 of the Complaint.

63.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 63 of the Complaint.

64.     States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 64 of the Complaint.

65.     Admits that Wythe Berry served written notice upon Fee Owner denying the validity of the so-called "Notice of Cancellation and Termination."

66.     Admits that, given its good-faith belief that the so-called "Notice of Cancellation and Termination" was invalid, Wythe Berry did not return to Fee Owner the "Hardship Declaration"; but except as thus expressly admitted, Defendant denies the allegations set forth in Paragraph 66 of the Complaint.

67.     Denies the allegations set forth in Paragraph 67 of the Complaint.

68.     Admits that Wythe Berry is in possession of the Property, including the Complex and its Hotel, and in consideration of its possession, to date Wythe Berry has paid $22.5 million in use and occupancy to Fee Owner and/or its designee, Mishmeret.

69.     Admits that, (a) pursuant to the Loan Documents, in particular the Assignment of Leases and Rents and Security Agreement, dated February 28, 2017 (the "Lease Assignment"), (i) Fee Owner ceased being the "Lessor" under the Lease, and its status was reduced to that of a holder of a revocable license, authorized to perform limited specified acts with respect to the Lease and the Property, and (ii) Fee Owner's license "shall automatically terminate without notice to [Fee Owner]" upon and during the continuance of an Event of Default, (b) pursuant to the Mishmeret Notice of Default, one or more Events of Default had occurred under the Loan Documents no later than April 16, 2021, and (c) pursuant to the Loan Documents, in particular the Lease Assignment, Fee Owner's license automatically terminated as of that date; but except as thus expressly admitted, Defendant denies the allegations set forth in Paragraph 69 of the

Complaint.

70.    Defendant repeats and incorporates each of the answers set forth in all preceding paragraphs of this Answer as if they were repeated here at length.

71.    States that, to the extent Paragraph 71 purports to state conclusions of law, no answer is required; and admits that the Lease is valid and in force; but except as thus expressly admitted, denies any remaining allegations set forth in Paragraph 71 of the Complaint.

72.    Denies the allegations set forth in Paragraph 72 of the Complaint.

73.    States that, to the extent Paragraph 73 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 73 of the Complaint.

74.    States that, to the extent Paragraph 74 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 74 of the Complaint.

75.    Defendant repeats and incorporates each of the answers set forth in all preceding paragraphs of this Answer as if they were repeated here at length.

76.    States that, to the extent Paragraph 76 purports to state conclusions of law, no answer is required; and admits that the Lease is valid and in force; but except as thus expressly admitted, denies any remaining allegations set forth in Paragraph 76 of the Complaint.

77.    Denies the allegations set forth in Paragraph 77 of the Complaint.

78.    States that, to the extent Paragraph 78 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 73 of the Complaint.

79.    Admits that Wythe Berry is in possession of the Property, including the Complex

and its Hotel, and in consideration of its possession, to date Wythe Berry has paid $22.5 million

in use and occupancy to Fee Owner and/or its designee, Mishmeret; but except as thus expressly

admitted, denies the allegations set forth in Paragraph 79 of the Complaint.

80.     States that, to the extent Paragraph 80 purports to state conclusions of law, no

answer is required; and denies any remaining allegations set forth in Paragraph 80 of the

Complaint.

81.     States that, to the extent Paragraph 81 purports to state conclusions of law, no

answer is required; and denies any remaining allegations set forth in Paragraph 81 of the

Complaint.

82.     Defendant repeats and incorporates each of the answers set forth in all preceding

paragraphs of this Answer as if they were repeated here at length.

83.     States that, to the extent Paragraph 83 purports to state conclusions of law, no

answer is required; and admits that the Lease is valid and in force; but except as thus expressly

admitted, denies any remaining allegations set forth in Paragraph 83 of the Complaint.

84.     Admits that Wythe Berry disputes whether the Lease had been terminated and

whether Fee Owner had the required authority to terminate the Lease, and avers the Lease is in

effect; but except as thus expressly admitted, denies the allegations set forth in Paragraph 84 of

the Complaint.

85.      States that, to the extent Paragraph 85 purports to state conclusions of law, no

answer is required; and denies any remaining allegations set forth in Paragraph 85 of the

Complaint.

86.     States that, to the extent Paragraph 86 purports to state conclusions of law, no

answer is required; and denies any remaining allegations set forth in Paragraph 86 of the

Complaint.

87.    States that, to the extent Paragraph 87 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 87 of the Complaint.

88.    Defendant repeats and incorporates each of the answers set forth in all preceding paragraphs of this Answer as if they were repeated here at length.

89.    Admits that, since the Title Transfer, title to the Property has been vested in Fee Owner, and respectfully refers the Court to Paragraph 1 of this Answer; but except as thus expressly admitted, denies the allegations set forth in Paragraph 89 of the Complaint.

90.    States that, to the extent Paragraph 90 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 90 of the Complaint.

91.    States that, to the extent Paragraph 91 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 91 of the Complaint.

92.    States that, to the extent Paragraph 92 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 92 of the Complaint.

93.    Admits that Wythe Berry is in possession of the Property, including the Complex and its Hotel; but except as thus expressly admitted, denes the allegations set forth in Paragraph 93 of the Complaint.

94.    States that, to the extent Paragraph 94 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 94 of the

Complaint.

95.     States that, to the extent Paragraph 95 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 95 of the Complaint.

96.     States that, to the extent Paragraph 96 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 96 of the Complaint.

97.     Admits that Fee Owner caused to be delivered to Wythe Berry documents bearing the mentioned titles; but except as thus expressly admitted, Defendant denies the allegations set forth in Paragraph 97 of the Complaint.

98.     Admits that Wythe Berry served written notice upon Fee Owner denying the validity of the so-called "Notice of Cancellation and Termination" and, given its good-faith belief that the so-called "Notice of Cancellation and Termination" was invalid, Wythe Berry did not return to Fee Owner the "Hardship Declaration"; but except as thus expressly admitted, Defendant denies the allegations set forth in Paragraph 98 of the Complaint.

99.     States that, to the extent Paragraph 99 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 99 of the Complaint.

100.    States that, to the extent Paragraph 100 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 100 of the Complaint.

101.    Defendant repeats and incorporates each of the answers set forth in all preceding paragraphs of this Answer as if they were repeated here at length.

102.    States that, to the extent Paragraph 102 purports to state conclusions of law, no answer is required; and admits that the Lease is valid and in force; but except as thus expressly admitted, denies any remaining allegations set forth in Paragraph 102 of the Complaint.

103.    Denies the allegations set forth in Paragraph 103 of the Complaint.

104.    States that, to the extent Paragraph 104 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 104 of the Complaint.

105.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 105 of the Complaint.

106.    States that, to the extent Paragraph 106 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 106 of the Complaint.

107.    Defendant repeats and incorporates each of the answers set forth in all preceding paragraphs of this Answer as if they were repeated here at length.

108.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 108 of the Complaint.

109.    States that, to the extent the Complaint is quoting documents, Defendant respectfully refers the Court to the documents for an accurate and complete statement of their contents; and denies any remaining allegations set forth in Paragraph 109 of the Complaint.

110.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 110 of the Complaint.

111.     States that, to the extent Paragraph 106 purports to state conclusions of law, no answer is required; and denies any remaining allegations set forth in Paragraph 111 of the Complaint.

## ANSWER TO PRAYER FOR RELIEF

Defendant denies the allegations in the Prayer for Relief, including the "Wherefore" clause, that Fee Owner is entitled to any form or any amount of relief.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following affirmative and other defenses. By stating the following defenses, Defendant does not assert or admit that any of Fee Owner's allegations are true, or that Defendant bears the burden of proving a particular defense. In listing the defenses below, Defendant does not knowingly or intentionally waive any defenses, including arguments about which issues fall within Fee Owner's burden of proof. Defendant also reserves the right to rely on any affirmative or other defense or claim that subsequently may come to light, and expressly reserves the right to amend its Answer to assert such additional defenses or claims.

## FIRST AFFIRMATIVE DEFENSE

Fee Owner is not the real party in interest, and therefore, under New York law, lacks standing to sue Defendant.

## SECOND AFFIRMATIVE DEFENSE

Fee Owner is not the real party in interest, and Wythe Berry objected to Fee Owner prosecuting this action as though it were the real party in interest, but despite the passage of a reasonable time, the real party in interest – Mishmeret – has not ratified, joined, or been substituted into the action.

## THIRD AFFIRMATIVE DEFENSE

Prior to the commencement of this action, Fee Owner failed to obtain the required written authority from Mishmeret, as Lender under the Loan Documents, to commence this action.

## FOURTH AFFIRMATIVE DEFENSE

Prior to sending the so-called "Notice of Cancellation and Termination," Fee Owner failed to obtain the unanimous consent of the members of its sole member, Member LLC, including Weiss, as required by the Limited Liability Company Agreement of Member LLC (the "Member LLC OA"), to terminate the Lease.

## FIFTH AFFIRMATIVE DEFENSE

Fee Owner is equitably estopped from asserting its claims regarding Rent under the Lease because, from the inception of the Lease until February 2021, the parties' course of dealing was such that Fee Owner waived the payment of Rent (other than on paper) by Wythe Berry, directed Wythe Berry to pay an amount to All Year (an amount that Wythe Berry assumed was equal to Fee Owner's debt service under the Loan to All Year, but Wythe Berry subsequently learned was greater than Fee Owner's debt service under the Loan, and apparently calculated to cover All Year's debt obligations to Mishmeret under the Series C Bonds), and Wythe Berry complied with that direction.

## SIXTH AFFIRMATIVE DEFENSE

Fee Owner's claims regarding Rent under the Lease are barred by operation of the Lease, which entitled Wythe Berry to an abatement of Rent in circumstances such as those encountered because of the COVID-19 pandemic.

## SEVENTH AFFIRMATIVE DEFENSE

Fee Owner's claims regarding Rent under the Lease are barred by operation of Executive

Orders issued, and/or laws or ordinances enacted, in response to the COVID-19 pandemic, all or any of law, adversely affected the operation of the Complex, including the Hotel, and entitled Wythe Berry to an abatement of Rent.

### EIGHTH AFFIRMATIVE DEFENSE

Due to the COVID-19 pandemic, and its indisputable devastating impact on the hospitality industry, especially in New York City, including on the operation of the Complex and its Hotel, Fee Owner's claims regarding Rent under the Lease are barred by operation of the common law doctrines of commercial impracticability and/or frustration of purpose.

### NINTH AFFIRMATIVE DEFENSE

Fee Owner is collaterally estopped from asserting its claim that Rent is due and owing.

### TENTH AFFIRMATIVE DEFENSE

Fee Owner is equitably estopped from asserting its claims regarding reporting of financial information under the Lease because, from the inception of the Lease until February 2021, the parties' course of dealing was such that Fee Owner waived all and any such formal reporting requirements.

### ELEVENTH AFFIRMATIVE DEFENSE

Fee Owner is equitably estopped from asserting its claims regarding reporting of financial information under the Lease because, since February 2021, Wythe Berry offered to produce financial information pursuant to a non-disclosure agreement ("NDA"), Fee Owner accepted that offer, and counsel for Fee Owner and Wythe Berry then fully negotiated a mutually-acceptable NDA prior to the date Fee Owner commenced this action, but Fee Owner unilaterally reneged and failed to execute the NDA.

## TWELFTH AFFIRMATIVE DEFENSE

Fee Owner is equitably estopped from asserting its claims regarding liability for and damages from its default under the Loan because, in waiving payment of Rent (other than on paper) by Wythe Berry and directing Wythe Berry to pay All Year instead, Fee Owner failed to collect Rent and, in so doing, failed to collect funds either needed to establish and maintain a reasonable cash reserve, or, in the alternative, to send such funds "upstream" to Member LLC so that Member LLC could establish and maintain a reasonable cash reserve prior to making any distributions to its members, as required by the Member LLC OA.

## THIRTEENTH AFFIRMATIVE DEFENSE

Fee Owner's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

## FOURTEENTH AFFIRMATIVE DEFENSE

Fee Owner's Complaint is barred, in whole or in part, because Defendant has not breached any legal duty or obligation owed Fee Owner.

## FIFTEENTH AFFIRMATIVE DEFENSE

Fee Owner's Complaint is barred, in whole or in part, by operation of the doctrines of unclean hands and/or waiver and/or laches.

## SIXTEENTH AFFIRMATIVE DEFENSE

Wythe Berry acted consistently with its legally enforceable obligations under the Lease.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Fee Owner's Complaint is barred, in whole or in part, because any alleged damages were not caused by Defendant, but by circumstances for which Defendant is not legally responsible.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Fee Owner's claims fail in whole or in part because Fee Owner's damages, if any, were not the legal result of any alleged wrongful conduct on the part of Defendant.

## NINETEENTH AFFIRMATIVE DEFENSE

Granting the relief sought is inequitable and contrary to the public interest.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and developments in this case.


## COUNTERCLAIM

Counterclaim plaintiff, Wythe Berry, by and through its attorney, Abramson Brooks LLP, as and for its counterclaim against counterclaim defendant, Fee Owner, alleges as follows:[2]

## NATURE OF THE PROCEEDING

1.      As part of the Goldman Refi Scheme, the Title Transfer divested Wythe Berry of ownership of the Property (including the Complex and its Hotel), and vested title in a newly-formed entity, Fee Owner.

2.      Fee Owner and Wythe Berry then entered into the Lease.

3.      The Lease imposes various obligations on Fee Owner, and vests certain rights in Wythe Berry.

4.      One obligation imposed by the Lease on Fee Owner is to "make any mortgage payments relating to the Leased Premises [*i.e.*, payments under the Note issued to All Year and the Mortgage on the Property] as said payments become due." *See* Lease § 2.1.

---

[2] Capitalized terms not otherwise defined in the Counterclaim have the meaning ascribed to them in the Answer.

5.      Since at least February 2021, Fee Owner failed to make payments under the Note and Mortgage as said payments became due.

6.      One set of rights vested by the lease in Wythe Berry is "an equitable abatement of the rent during such time as it is unable to enjoy the use of the whole or part of the Leased Premises." Lease § 10.1.

7.      Another, similar, right vested by the Lease in Wythe Berry is an abatement of Rent if, as the result of any "Law" – a term the Lease gives an extremely broad definition – any time "Rent is not fully collectible." Lease §§ 2.1 & 3.2.

8.      In response to the devastation caused by the COVID-19 pandemic and the Laws enacted to protect public health, Wythe Berry invoked its rights under the Lease (and otherwise) to an abatement of Rent.

9.      Notwithstanding the rights granted by the Lease to Wythe Berry (or other rights), Fee Owner refused to any abatement of Rent.

10.     For at least two independent reasons, Fee Owner breached the Lease.

11.     Wythe Berry has suffered and continues to suffer damages caused by Fee Owner's breaches, and seeks to recover those damages in this Counterclaim.

## STATEMENT OF RELEVANT FACTS

12.     As a result of the Goldman Refi Scheme, on or about February 1, 2017, three new entities were established: Fee Owner; Member LLC; and YG WV LLC ("YG WV").

13.     At all relevant times, the sole member of Fee Owner was Member LLC.

14.     At all relevant times, the members of Member LLC were YG WV and Weiss.

15.     At all relevant times, YG WV and Weiss each owned 50% of the membership interests of Member LLC.

16.     At all relevant times, according to the Member LLC OA, YG WV was Managing Member of Member LLC.

17.     At all relevant times, the sole member of YG WV was All Year.

18.     As a result of the Goldman Refi Scheme, on or about February 28, 2017, (a) the Title Transfer occurred, (b) Fee Owner issued the Note, Mortgage, and other Loan Documents in favor of All Year, and, upon information and belief, (c) All Year collaterally assigned the Note, Mortgage, and other Loan Documents to Mishmeret.

19.     As a further result of the Goldman Refi Scheme, on or about February 28, 2017, Fee Owner and Wythe Berry entered into the Lease. A true and correct copy of the Lease is annexed hereto as Exhibit A.

20.     Section 2.1 of Lease, in pertinent part, reads as follows:

> … Lessee [Wythe Berry] covenants and agrees to pay, as lease payments hereunder Fifteen Million Dollars ($15,000,000.00) per year (the "**Rent")** for each year of the Lease Term. The Rent shall be due and payable on or before the first day of each six month period beginning February 1, 2017….
> …
> If at any time during the Lease Term the Rent is not fully collectible by reason of any Law (as hereinafter defined), Lessee shall enter into such agreements and take such other action as Lessor reasonably requests and which is not prohibited by any Law, to permit Lessor to collect the maximum permissible Rent (but not in excess of the Rent)….
> …
> It is understood and agreed that Lessor [*i.e.*, Fee Owner] shall be obligated to make any mortgage payments relating to the Leased Premises as said payments become due….

Lease § 2.1 at pp. 2-3, 3, & 4.

21.     Section 3.2 of the Lease, in pertinent part, reads as follows:

> Lessee shall maintain and conduct Lessee's business on the Leased Premises in a lawful manner and shall timely and fully comply in all material respects at all times, with any and all federal, state and local laws, statutes and ordinances and all

> regulations, orders and directives of appropriate governmental and
> accrediting agencies, as such laws, statutes, ordinances,
> regulations, orders and directives now existing or that may
> hereafter be enacted (**"Law"**) applicable to the Leased Premises....

Lease § 3.2.

22.     Section 10.1 of the Lease, in pertinent part, reads as follows:

> Lessee [*i.e.*, Wythe Berry] ***shall be allowed an abatement of the
> rent during such time as it is unable to enjoy the use of the whole
> or part of the Leased Premises*** [*i.e.*, the Property].

Lease § 10.1 (emphasis added).

**FIRST COUNTERCLAIM**
**(BREACH OF CONTRACT)**

23.     From the inception of the Lease until February 2021, notwithstanding the

language of section 2.1 of the Lease regarding payment of Rent in semi-annual installments of

$7.5 million, Fee Owner – acting at the direction of Goldman through All Year, YG WV, and

Member LLC – directed Wythe Berry not to pay any Rent to Fee Owner (other than on paper),

and instead to pay an amount to All Year (an amount that Wythe Berry assumed was equal to

Fee Owner's debt service under the Loan to All Year, but Wythe Berry subsequently learned was

greater than Fee Owner's debt service under the Loan, and apparently calculated to cover All

Year's debt obligations to Mishmeret under the Series C Bonds).

24.     From the inception of the Lease through and including the semi-annual Rent

payment due under the Lease on August 1, 2020, Wythe Berry complied with that direction.

25.     By directing Wythe Berry to forego payment of Rent under the Lease (other than

on paper), and by directing Wythe Berry instead to pay to All Year an amount equal to or greater

than Fee Owner's debt service under the Note and Mortgage, Fee Owner failed to establish and

maintain a reasonable reserve (or, alternatively, to send cash "upstream" to Member LLC, so that

it could establish and maintain a reasonable reserve).

26.     Upon information and belief, due to the lack of a cash reserve, Fee Owner lacked the resources to pay the debt service under the Note and Mortgage due in February 2021, and Fee Owner therefore failed to make that payment as and when it became due.

27.     By failing to pay the debt service in February 2021, Fee Owner breached its mandatory obligation under the Lease: "Lessor [*i.e.*, Fee Owner] ***shall be obligated*** to make any mortgage payments relating to the Leased Premises [*i.e.*, the Property] as said payments become due." *See* Lease § 2.1 at p.4 (emphasis added).

28.     Upon information and belief, Fee Owner's breach of its mandatory obligation to pay the debt service under the Note and Mortgage was a proximate cause of Mishmeret issuing the Mishmeret Notice of Default. A true and correct copy of the Mishmeret Notice of Default is annexed hereto as Exhibit B.

29.     Fee Owner's breach of the Lease has caused, and continues to cause, Wythe Berry to suffer monetary and reputational damages.

## SECOND COUNTERCLAIM
## (BREACH OF CONTRACT)

30.     Wythe Berry repeats and realleges the allegations set forth in all preceding Paragraphs of the Counterclaim.

31.     In or about March 2020, COVID-19 emerged as a global pandemic.

32.     The COVID-19 pandemic proved devastating, especially in New York City, and not only to public health, but also to commercial activity.

33.     The COVID-19 pandemic hit the hospitality industry particularly hard.

34.     In response to the COVID-19 pandemic, to comply with the highest level of government requirements and guidance, and out of concern for public health, the Hotel suspended operations in March 2020, and remained closed through May 2020.

35.    Notwithstanding the extreme loss of revenue caused by the COVID-19 pandemic and/or the corresponding closure of the Hotel, in August 2020, Wythe Berry – as again directed by Fee Owner – paid, in lieu of Rent, Fee Owner's semi-annual debt service under the Note and Mortgage in full and on time.

36.    From March 2020 to March 2021, the Hotel experience a running 12-month occupancy rate of only 34.6%, a decline of 52.3% over the prior 12-month period.

37.    Faced with this reality, on January 31, 2021, Wythe Berry sent Fee Owner a "Notice of Abatement of Rent," a true and correct copy of which is annexed hereto as Exhibit C.

38.    Notwithstanding multiple provisions of the Lease that entitle Wythe Berry to an abatement of Rent, Fee Owner refused to abate the Rent.

39.    Fee Owner's refusal to accept an abatement of Rent breached the Lease.

40.    Fee Owner's breach of the Lease has caused, and continues to cause, Wythe Berry to suffer monetary and reputational damages.

### THIRD COUNTERCLAIM
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH)

41.    Wythe Berry repeats and realleges the allegations set forth in all preceding Paragraphs of the Counterclaim.

42.    Fee Owner not only refused to accept an abatement of Rent, but also refused even to discuss the issue.

43.    Fee Owner's refusal to discuss an abatement of Rent because of the impact of the COVID-19 pandemic breached the covenant of good faith implied in every contract, including the Lease.

44.    Fee Owner's breach of the implied covenant of good faith has caused, and continues to cause, Wythe Berry to suffer monetary and reputational damages.

## FOURTH COUNTERCLAIM
## (VIOLATION OF REAL PROPERTY LAW § 227)

45.     Wythe Berry repeats and realleges the allegations set forth in all preceding Paragraphs of the Counterclaim.

46.     The COVID-19 pandemic, on its own and in conjunction with government-imposed restrictions, forced the Hotel to close temporarily, and thereafter reduced drastically the sale of room nights and events.

47.     The COVID-19 pandemic, on its own and in conjunction with government-imposed restrictions, therefore actually or constructively rendered all or part of the Complex (including its Hotel, food and beverage, and parking facilities) untenantable and unfit for occupancy for a period of time.

48.     In such circumstances, pursuant to Real Property Law § 227, Wythe Berry was entitled to an abatement of Rent under the Lease.

49.     Fee Owner refused to grant Wythe Berry an abatement of Rent under the Lease.

50.     By refusing to grant Wythe Berry an abatement of Rent under the Lease, Fee Owner violated Real Property Law § 227.

51.     Fee Owner's violation of Real Property Law § 227 has caused, and continues to cause, Wythe Berry to suffer monetary and reputational damages.

## FIFTH COUNTERCLAIM
## (COMMERCIAL TENANT HARASSMENT)

52.     Wythe Berry repeats and realleges the allegations set forth in all preceding Paragraphs of the Counterclaim.

53.     Wythe Berry is a commercial tenant under the Lease.

54.     Pursuant to the Administrative Code of the City of New York, Wythe Berry was a business impacted by COVID-19.

55.     Pursuant to the Administrative Code of the City of New York, Fee Owner harassed Wythe Berry by, among other things, refusing to accept Wythe Berry's abatement of Rent, by wrongfully attempting to place Wythe Berry in default under the Lease, by wrongfully attempting to terminate the Lease, by commencing this action, and by seeking in this action to prevent Wythe Berry from entering into subleases for vacant spaces within the Complex.

56.     Pursuant to the Administrative Code of the City of New York, Fee Owner is liable not only for a civil penalty of up to $50,000, but also to Wythe Berry for compensatory and punitive damages, as well as attorney's fees and costs.

57.     Fee Owner's harassment of Wythe Berry has caused, and continues to cause, Wythe Berry to suffer monetary and reputational damages.

**SIXTH COUNTERCLAIM**
**(ATTORNEY'S FEES)**

58.     Wythe Berry repeats and realleges the allegations set forth in all preceding Paragraphs of the Counterclaim.

59.     Pursuant to Section 17.2 of the Lease, the "prevailing party" in this action "will be entitled to recover its legal expenses, including, without limitation, reasonable attorney's fees, costs, and necessary disbursements, in addition to any other relief to which such party shall be entitled."

60.     Wythe Berry has incurred and continues to incur attorney's fees and costs in defending this action and in bringing its Counterclaims.

**PRAYER FOR RELIEF**

**WHEREFORE**, Wythe Berry respectfully requests the Court enter judgment:

1.     Denying in all respects the relief requested by Fee Owner in its Complaint;

2.     Dismissing the Complaint in its entirety, with prejudice;

3.  Awarding Wythe Berry monetary damages against Fee Owner on the First, Second, Third, Fourth, and Fifth Counterclaim in an amount to be determined at trial;

4.  Awarding Wythe Berry punitive damages against Fee Owner on the Fifth Counterclaim in an amount to be determined at trial;

5.  Awarding Wythe Berry attorneys' fees and costs against Fee Owner on the Fifth Counterclaim in an amount to be determined at trial;

6.  Awarding Wythe Berry attorney's fees and costs against Fee Owner on the Sixth Counterclaim in an amount to be determined at trial, plus interest pursuant to the Lease; and

7.  Awarding Wythe Berry such other and further relief as the Court deems just, proper and equitable.

Dated:  Nassau County, New York
        May 9, 2023

ABRAMSON BROOKS LLP

By:    _/s/ Jon Schuyler Brooks_
Jon Schuyler Brooks
1051 Port Washington Blvd. #322
Port Washington, NY 11050
(516) 455-0215
jbrooks@abramsonbrooks.com

_Counsel for Wythe Berry LLC_