UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| In re<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No. 22-11340 (MG) |

------------------------------------------------------------X

| | |
|---|---|
| WYTHE BERRY FEE OWNER LLC<br><br>                Plaintiff,<br><br>v.<br><br>WYTHE BERRY LLC, YOEL GOLDMAN and ZELIG WEISS,<br><br>                Defendants. | Adv. Proc. No. 23-01012 (MG) |

------------------------------------------------------------X

**RESPONSE OF WB LLC TO THE STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF DEBTOR-PLAINTIFF
WYTHE BERRY FEE OWNER LLC'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO LIABILITY AGAINST DEFENDANT WYTHE BERRY LLC**

Pursuant to Local Bankruptcy Rule 7056-1(c), Wythe Berry LLC ("**WB LLC**"), a defendant in the above-captioned adversary proceeding, submits this response to the "Statement of Undisputed Material Facts" [ECF No. 32] submitted by debtor-plaintiff, Wythe Berry Fee Owner LLC ("**Fee Owner**") in support of its motion for partial summary judgment against defendant WB LLC.

    1.    Disputed.

        (a) Fee Owner is in violation of Section 301(e) of the New York Limited Liability Company Law, in that it failed to submit the required Biennial Statement and pay the associated

fee to the New York State Department of State when due in February 2021 and again in February 2023. Answer ¶ 7(iii); Declaration of Jon Schuyler Brooks ("**Brooks Decl.**") ¶ 11 & Ex. H.

      (b) Fee Owner's "place of business" is a mailbox service. Declaration of Zelig Weiss ("**Weiss Decl.**") ¶ 15. Fee Owner, therefore, fails to maintain a physical office in New York State, as required of a foreign limited liability company by New York's Limited Liability Company Law § 802(3).

    2.    Disputed. WB LLC's principal place of business is located at 29 Little Nassau Street, Suite 118, Brooklyn, NY 11205. Answer ¶ 8; Weiss Decl. ¶ 16.

    3.    Undisputed.

    4.    Disputed. The Lease is signed by Yoel Goldman ("Goldman") on behalf of both Fee Owner and WB LLC. *See* Lease, attached as Exhibit 3 to the Declaration of Assaf Ravid (the "**Ravid Decl.**"). Goldman lacked authority to bind WB LLC. Weiss Decl. ¶ 17; Fifth Amendment to the Operating Agreement of Wythe Berry LLC, § 7(a) (Weiss Decl. Ex. A). Consequently, whether Fee Owner and WB LLC "entered into a Lease Agreement" is a question of law, not of fact.

    5.    Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

    6.    Undisputed that the Lease includes references to "Rent" in the amounts stated, but disputed: (a) for the reasons set forth above in numbered paragraph 4; (b) because Fee Owner directed WB LLC to make payments to a third party – specifically, Fee Owner's Lender, All Year Holdings Ltd. ("All Year") – in lieu of Rent in amounts significantly lower than Rent [Weiss Decl. ¶ 18]; and (c) because the Lease includes provisions for the abatement of Rent [*id*. ¶ 19; Lease (Ravid Decl. Ex. 3) §§ 2.1 & 3.2].

7. Undisputed that the Lease includes references to "Additional Rent" and interest, but disputed: (a) for the reasons set forth above in numbered paragraph 4; (b) because Fee Owner directed WB LLC to make payments to a third party – specifically, Fee Owner's Lender, All Year Holdings Ltd. ("All Year") – in lieu of Rent in amounts significantly lower than Rent [Weiss Decl. ¶ 18]; and (c) because the Lease includes provisions for the abatement of Rent [*id.* ¶ 19; Lease (Ravid Decl. Ex. 3) §§ 2.1 & 3.2].

8. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

9. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

10. Undisputed that the Lease includes the referenced items, but disputed for the reasons set forth above in numbered paragraph 4.

11. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

12. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

13. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

14. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

15. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

16. Undisputed that the Lease includes the quoted language, but disputed for the

reasons set forth above in numbered paragraph 4.

17. Disputed. The statement presents a conclusion of law. Furthermore, by operation of the historical course of conduct instituted by Fee Owner (at the direction of Goldman) from the putative inception of the Lease, no payment of $7.5 million was due on February 1, 2021. Weiss Decl. ¶¶ 5-6, 18 & Ex. B.

18. Undisputed that WB LLC made no such payments during calendar year 2021.

19. Disputed. The statement presents a conclusion of law. Furthermore, WB LLC cured the violations issued by the New York City Department of Buildings. Weiss Decl. ¶¶ 8, 20 & Ex. C.

20. Disputed. The statement presents a conclusion of law. Furthermore, by operation of the historical course of conduct instituted by Fee Owner (at the direction of Goldman) from the putative inception of the Lease, WB LLC provided financial information as, when, and if requested by Fee Owner prior to the time Goldman lost control of All Year (and, therefore, also of Fee Owner). Weiss Decl. ¶¶ 7, 21 & Ex. D. Moreover, WB LLC agreed to provide all such information to Fee Owner (and All Year) pursuant to a Non-Disclosure Agreement, that WB LLC and Fee Owner/All Year fully negotiated prior to the time Fee Owner acted to terminate the Lease. *Id*. ¶ 21; Brooks Decl. ¶ 4 & Ex. F. Fee Owner then changed its counsel and, without explanation, decided not to execute the fully-negotiated and mutually-approved NDA, and instead proceeded on a path that culminated in the commencement of the State Court Action. Brooks Decl. ¶ 5.

21. Undisputed that WB LLC received the referenced document, but disputed to the extent that WB LLC rejected the referenced document for stated cause and deemed it a nullity. Weiss Decl. ¶ 23 & Ex. E.

4

22. Disputed. *See*, *supra*, ¶¶ 17, 19, 20.

23. Disputed. The statement presents a conclusion of law. Furthermore, by operation of the historical course of conduct instituted by Fee Owner (at the direction of Goldman) from the putative inception of the Lease, no payment of $7.5 million was due on February 1, 2021. Weiss Decl. ¶¶ 5-6, 18 & Ex. B.

24. Undisputed that WB LLC received the referenced document.

25. Undisputed that the referenced document includes the quoted language, but disputed to the extent it includes a conclusion of law (*i.e.*, the effect of the document).

26. Undisputed that the referenced document was accompanied by the referenced form.

27. Undisputed.

28. Undisputed that the Lease includes the quoted language.

29. Undisputed that the Lease includes the quoted language, but disputed for the reasons set forth above in numbered paragraph 4.

30. Undisputed that WB LLC currently is in possession of the Complex, and also that WB LLC has the right to use and occupy the Complex pursuant to its payment to Fee Owner of court-ordered use and occupancy on August 1, 2023, in the amount of $7.5 million, covering the period August 1, 2023 through and including January 31, 2024.

31. Disputed. The statement presents a conclusion of law. Furthermore, by operation of the historical course of conduct instituted by Fee Owner (at the direction of Goldman) from the putative inception of the Lease, no payment of $7.5 million was due on February 1, 2021. Weiss Decl. ¶¶ 5-6, 18 & Ex. B.

32. Undisputed.

33. Undisputed.

34. Undisputed that the referenced document includes the quoted language.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Undisputed that the referenced Notice of Events of Default: Reservation of Rights was sent, but disputed that the "identified defaults, which are payment defaults, stem from [WB LLC's] failure to pay Rent to [Fee Owner]." Weiss Decl. ¶ 22.

39. Disputed. The carefully worded language in the referenced paragraph of the Declaration of Rami Katzav ("**Katzav Decl.**") does not state Mishmeret Trust Co. Ltd. ("**Mishmeret**") gave prior written consent to Fee Owner to terminate the Lease by *legal* action. Rather, it states that Fee Owner's actions in (a) sending (i) the Notice of Default and (ii) Notice of Cancelation and Termination, and (b) commencing this litigation were "consistent with [Mishmeret's] demand and consent to take these actions." Katzav Decl. ¶ 8. Mishmeret's alleged "demand and consent" refers to the letter from counsel for Mishmeret (Chapman & Cutler LLP) to counsel for All Year (Weil Gotshal & Manges LLP) attached to the Katzav Declaration as Exhibit 1 (the "**Chapman Letter**"). Katzav Decl. ¶ 5. The Chapmam Letter, however, is dated February 18, 2021. Katzav Decl. (Ravid Decl. Ex. 8) Ex. 1. At that time, All Year had not yet assigned the Loan Documents to Mishmeret, an event that Fee Owner concedes first happened on March 16, 2021. Ravid Decl. ¶ 26; Katzav Decl. ¶ 6; Complaint ¶ 52. Consequently, at the time Mishmeret's counsel sent the Chapman Letter to All Year's counsel, Mishmeret had not yet assumed the role of Lender under the Loan Documents. Given that the Loan Documents expressly prohibit Fee Owner from terminating the Lease "without the prior written consent of

6

[Fee Owner's] **Lender**" (*see* Assignment of Leases and Rents and Security Deposits ("**Lease Assignment**" [Ravid Decl. Ex. 6], § 6(b) (emphasis added)), then as a matter of fact (and law) the Chapman Letter could not have provided the required authorization. Fee Owner fails to introduce any prior written consent from Mishmeret *after* it became Fee Owner's Lender.

Furthermore, even if the Chapman Letter had been sent after Mishmeret became Fee Owner's Lender (which it was not), it nonetheless does not constitute prior written consent to terminate the Lease. Indeed, by its own terms, in the Chapman Letter, Mishmeret's counsel states only that Misheret "expects and demands that All Year and Fee Owner take all ***reasonable commercial actions*** to enforce all available rights and remedies under the Lease against the Lessee, which thus far All Year and Fee Owner have been unable or unwilling to do." Chapman Letter (Ravid Decl. Ex. 8 [Katzav Decl. Ex. 1]) at 2 (emphasis added). Clearly, a general allusion to "reasonable ***commercial*** actions" is insufficient to constitute the mandated prior written consent for Fee Owner to take ***legal*** actions to terminate the Lease. That point is demonstrated by not only the omission from the Chapman Letter of any mention at all about termination of the Lease, but also by the inclusion in the Chaplman Letter of the specific direction that All Year "cause [WB LLC] to permit [Mishmeret] and/or its agents or representatives, including external advisors, reasonable access to the Property for inspection of the physical premises as well as business records, hardware, computer systems, and other assets located thereon" (*ibid* at 2), a direction that confirms the continuing future presence of WB LLC in the Complex, not the termination of the Lease.[1]

---

[1] Even if the Chapman Letter had been sent after Mishmeret became Fee Owner's Lender (which it was not), and even it had made mention of terminating the Lease (which it does not), it nonetheless would not be valid because, as indicated on its face, it was sent by e-mail. Katzav Decl. (Ravid Decl. Ex. 8) Ex. 1. The Loan Documents require that such documents be "delivered personally" or sent "by Federal Express or other nationally recognized overnight delivery service" to Fee Owner. Lease Assignment § 15 (referencing "Security Instrument," a term defined in the third WHEREAS clause of the Lease Assignment as being the "Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing"); Security Instrument [Brooks Decl. Ex. G] § 11.01.

Finally, a subsequent letter from Mishmeret itself, sent after it became Fee Owner's Lender, demonstrates that the Chapman Letter did not constitute the prior written consent from the Lender required by the Lease Assignment to overcome the express prohibition on Fee Owner terminating the Lease. In that letter – the "Notice of Events of Default; Reservation of Rights," dated April 16, 2021 ("**Mishmeret Notice**" [Ravid Decl. Ex. 7]) – Mishmeret states,

> under the Section 3 of each of the SNDAs, upon an Event of Default under the Ground Lease, Mishmeret, in its capacity as Lender, **has the right to (i) terminate the Ground Lease upon ten (10) days' prior written notice** and (ii) terminate the leases between Lessee and the Subtenants.
> Despite the existence of the Designated Defaults, Mishmeret has indicated **a willingness to discuss a consensual resolution** of the Designated Defaults. …
> Mishmeret will continue to monitor the default situation very carefully and **will decide in its sole discretion on a "day-by-day" basis whether or not to exercise its rights and remedies under the Loan Documents and/or the Ground Lease**.

Mishmeret Notice [Ravid Decl. Ex. 7] at 2-3 (emphases added).

The willingness in mid-April 2021 to discuss a consensual resolution is not consistent with an alleged prior written consent in mid-February 2021 to terminate the Lease. Similarly, that Mishmeret "will decide [*i.e.*, in the future] … whether or not to exercise its right under the Loan Documents and/or Ground Lease" demonstrates that Mishmeret had not done at the time its counsel sent the Chapman Letter, or at any other time prior to April 16, 2021.

40.     Undisputed that the Chapman Letter is an exhibit to an exhibit of the Ravid Declaration, and that it contains the quoted language, but disputed to the extent Fee Owner implies the quoted language provided the "prior written consent of Lender" required by the Lease Assignment to overcome the Lease Assignment's express prohibition on Fee Owner's termination of the Lease without such prior written consent. *See*, *supra*, ¶ 39.

8

23-01012-mg    Doc 39    Filed 09/08/23    Entered 09/08/23 18:43:42    Main Document
Pg 9 of 9

Dated: Nassau County, New York
September 8, 2023

**ABRAMSON BROOKS LLP**

By:   */s/ Jon Schuyler Brooks*
    Jon Schuyler Brooks
1051 Port Washington Blvd. #322
Port Washington, NY 11050
(516) 455-0215
jbrooks@abramsonbrooks.com

*Counsel for Wythe Berry LLC*