**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

In re

WYTHE BERRY FEE OWNER LLC,

        Debtor.

---------------------------------------------------------- X

WYTHE BERRY FEE OWNER LLC

        Plaintiff,

        v.

WYTHE BERRY LLC, YOEL GOLDMAN
and ZELIG WEISS,

        Defendants.

----------------------------------------------------------X

Chapter 11

Case No. 22-11340 (MG)

Adv. Proc. No. 23-01012 (MG)


**DECLARATION OF ZELIG WEISS IN OPPOSITION TO
DEBTOR-PLAINTIFF WYTHE BERRY FEE OWNER LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
LIABILITY AGAINST DEFENDANT WYTHE BERRY LLC**

I, Zelig Weiss, hereby declare the following under penalty of perjury to the best of my knowledge, information, and belief:

1. I am the Managing Member of Wythe Berry LLC ("**WB LLC**"), a defendant in the above-captioned adversary proceeding, and I am fully familiar with the facts and circumstances set forth herein.

2. I respectfully submit this declaration in opposition to the motion of debtor-plaintiff Wythe Berry Fee Owner LLC ("**Fee Owner**") for partial summary judgment against defendant WB LLC ("**Fee Owner's Motion**").

*Preliminary Statement*

3. As I understand it, Fee Owner's Motion is based on the allegation that WB LLC failed to comply with certain provisions of a ground lease, dated February 28, 2017, that names Fee Owner and WB LLC, respectively, as "Lessor" and "Lessee" (the "**Lease**"); specifically, by failing (a) to pay "Rent" to Fee Owner in the amount of $7.5 million on February 1, 2021; (b) to provide financial information to Fee Owner; and (c) to cure violations issued by the New York City Department of Buildings ("DOB").

4. Those allegations are false, in various ways and for various reasons.

5. *First*, it must be understood that the Lease, in its entirety, was a fiction; a part of the refinancing scheme (the "**Goldman Refi Scheme**") for The William Vale Hotel Complex (the "**Complex**") devised and implemented by Yoel Goldman ("**Goldman**"). As Goldman explained the Goldman Refi Scheme to me, because he and I were the owners of both WB LLC (directly) and Fee Owner (indirectly), and because he personally controlled (indirectly) the titular Managing Member of Fee Owner's parent, as between Fee Owner and WB LLC, the Lease was a nullity; there never would be a need for WB LLC to comply with any aspect of the Lease.

6. Consequently, from the inception of the Lease, Fee Owner *never* expected, *never* demanded, and *never* collected payment of the semi-annual "Rent" under the Lease. Instead, every six months, Goldman or someone from his company, All Year Holdings Ltd. ("**All Year**") – the entity at the top of a string of companies through which Goldman held his indirect interest in Fee Owner – would instruct WB LLC to make a payment, *in lieu of Rent*, directly to All Year ostensibly to service the mortgage debt owed by Fee Owner to All Year that was created as part of the Goldman Refi Scheme (but in actuality a somewhat greater amount than Fee Owner owed, because Goldman added to Fee Owner's debt service a currency exchange differential in order to

2

cover All Year's debt under the bonds it had issued on the Tel Aviv Stock Exchange to fund the Goldman Refi Scheme (the "**Series C Bonds**")). Each of those semi-annual payments was ***millions of dollars less*** than the $7.5 million semi-annual "Rent" that appears in the Lease.

7. Similarly, notwithstanding the language of the Lease regarding financial reports, Fee Owner (through Goldman or someone from All Year) only occasionally asked WB LLC for a specific item of information, which WB LLC provided. Most important, to address my concerns about the possible dissemination of WB LLC's confidential and proprietary business information – a risk that did not exist before the Goldman Refi Scheme, as that information was shared between only Goldman and me as WB LLC's Members – Goldman assured me that the Lease actually would protect the information against such dissemination, because Fee Owner would be a buffer between WB LLC and third parties.

8. Finally, anyone who does construction of any significance in New York City expects to get violations from DOB, so it is no surprise that DOB issued violations against the massive undertaking involved in remediating a grossly-contaminated former Brooklyn Union Gas manufactured gas holder site and redeveloping it into the Complex. What is surprising is that Fee Owner claims those violations were not cured, when in fact – as Fee Owner knows for at least two years – they were addressed and removed. WB LLC proved that fact in this litigation years before Fee Owner removed it to this Court.

9. *Second*, because of my past experiences with Goldman, I needed to make sure the Goldman Refi Scheme, which would divest WB LLC of title to the Complex, would not – **could not** – ever put WB LLC at risk of losing its ability to run the Complex even though it no longer was the *de jure* owner. For that reason, I made sure that the Lease could not be cancelled without my consent.

3

10.     Accordingly, that requirement was written into the Limited Liability Company Agreement of Fee Owner's sole member, Wythe Berry Member LLC ("**Member LLC**"), of which I own fifty (50%) percent of the Membership Interests.

11.     I never consented to the termination of the Lease. More incredibly, YG WV LLC ("**YGWV**") – the owner of the other fifty (50%) percent of the Membership Interests in Member LLC, and at the time the wholly-owned subsidiary of All Year – never even called a meeting to discuss the issue or otherwise ask for my consent.

12.     All in all, there is a genuine dispute about the basic facts on which Fee Owner's Motion is based.

13.     Consequently, it is my understanding that Fee Owner is not entitled to partial summary judgment.

14.     Accordingly, for the reasons set forth below and in WB LLC's other papers submitted in opposition to Fee Owner's Motion, I respectfully request that the Court deny Fee Owner's Motion in all respects, and provide WB LLC a full opportunity to have its day in court, including the live cross-examination of Fee Owner's witnesses, during a hearing or trial of not only the issues raised by Fee Owner's Motion, but also WB LLC's counterclaims.

***Disputed Items in Fee Owner's Statement of Undisputed Material Facts***

15.     The address given as Fee Owner's "place of business" is a mailbox service. *See* https://therealdeal.com/new-york/2016/02/09/meet-the-little-williamsburg-building-thats-home-to-over-1000-llcs/. Fee Owner does not maintain a physical office.

16.     The address given as WB LLC's principal place of business is incorrect. WB LLC's principal place of business is located at 29 Little Nassau Street, Suite 118, Brooklyn, NY 11205.

17. The Lease is signed by Goldman on behalf of both Fee Owner and WB LLC. *See* Lease, attached as Exhibit 3 to the Declaration of Assaf Ravid (the "**Ravid Decl.**"). Goldman lacked authority to bind WB LLC. *See* Fifth Amendment to the Operating Agreement of Wythe Berry LLC, a true and correct copy of which is attached hereto as Exhibit A, § 7(a).

18. From the inception of the Lease until 2021, Fee Owner directed WB LLC to make payments to a third party – specifically, Fee Owner's Lender, All Year – *in lieu of Rent*, and in amounts significantly lower than Rent. Attached as Exhibit B are examples of such payments.

19. The Lease includes provisions for the abatement of Rent and Additional Rent.

> If at any time during the Lease Term the Rent is not fully collectible by reason of any Law (as hereinafter defined), Lessee shall enter into such agreements and take such other action as Lessor reasonably requests and which is not prohibited by any Law, to permit Lessor to collect the maximum permissible Rent (but not in excess of the Rent). On the termination of that Law prior to the Expiration Date (a) the Rent shall be paid in accordance with this Lease, and (b) Lessee shall pay to Lessor, if not prohibited by any Law, the Rent which would have been paid but for that Law, less the Rent paid by Lessee to Lessor during the period of that Law.

Lease (Ravid Decl., Ex. 3) § 2.1. "Law" is defined in the Lease as "any and all federal, state and local laws, statutes and ordinances and all regulations, orders and directives of appropriate governmental and accrediting agencies, as such laws, statutes, ordinances, regulations, orders and directives now existing or that may hereafter be enacted." *Id*. § 3.2. The Lease further provides for abatement of Rent as the result of casualty or government action. *Id*. §§ 10.1 & 10.2.

20. WB LLC cured the outstanding DOB violations. A true and correct copy of each DOB document confirming those facts are attached, collectively, as Exhibit C.

21. From the inception of the Lease, WB LLC provided financial information as, when, and if requested by Fee Owner prior to the time Goldman was stripped of his management of All Year (and, therefore, also of Fee Owner). Attached as Exhibit D is an example.

5

Furthermore, after All Year's creditors stripped Goldman of his management of All Year, WB LLC agreed to provide all such information to Fee Owner (and All Year) pursuant to a Non-Disclosure Agreement, that WB LLC and Fee Owner/All Year fully negotiated prior to the time Fee Owner acted to terminate the Lease. Declaration of Jon Schuyler Brooks ¶ 4 & Ex. F.

22. As implemented by Goldman during the years he managed All Year and (through All Year's ownership of YGWV) also Member LLC, the Goldman Refi Scheme meant that no cash actually flowed into Fee Owner, or from Fee Owner up to Member LLC (Fee Owner's sole member). Consequently, neither Fee Owner nor Member LLC held any reserves, despite the standard obligation in Member LLC's Limited Liability Company Agreement of "holding reasonable reserves" (*see* Ravid Decl. Ex. 9, § 4.2). Such reserves would have permitted Fee Owner to pay its mortgage debt service, as required under the Lease. "It is understood and agreed that Lessor shall be obligated to make any mortgage payments relating to the Leased Premises [*i.e.*, the Complex] as said payments become due." Lease (Ravid Decl. Ex. 3) § 2.1 at p.4. Nothing in the Lease conditions or otherwise ties Fee Owner's obligation to pay its mortgage debt service on payment of Rent by WB LLC.

23. Although Fee Owner sent a Notice of Default to WB LLC, WB LLC rejected the same as a nullity. Letter from WB LLC to Asaf Ravid, dated May 14, 2021, a true and correct copy of which is attached as Exhibit E.

## CONCLUSION

**WHEREFORE**, I respectfully request that the Court deny Fee Owner's Motion in all respects, and grant WB LLC such other or further relief, including its costs (including attorney's fees) of opposing Fee Owner's Motion, as this Court may deem just and proper.

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information, and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct. Executed on September 8, 2023.

<i>/s/ Zelig Weiss</i><br>
Zelig Weiss