**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>Debtor. | FOR PUBLICATION<br><br>Case No. 22-11340 (MG) |
| WYTHE BERRY FEE OWNER LLC,<br><br>Plaintiff,<br><br>v.<br><br>WYTHE BERRY LLC, YOEL GOLDMAN<br>AND ZELIG WEISS,<br><br>Defendants. | Adv. Pro. Case No. 23-01012 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST WYTHE BERRY LLC**

*A P P E A R A N C E S:*

HERRICK, FEINSTEIN LLP
*Counsel for Plaintiff Wythe Berry Fee Owner LLC*
Two Park Avenue
New York, New York 10016
By:   Avery S. Mehlman, Esq.
      Stephen B. Selbst, Esq.
      Janice Goldberg, Esq.
      Meaghan Roe, Esq.

ABRAMSON BROOKS LLP
*Counsel for Defendant Wythe Berry LLC*
1051 Port Washington Blvd. #322
Port Washington, New York 11050
By:   Jon Schuyler Brooks, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 30) of debtor and

debtor-in-possession Wythe Berry Fee Owner LLC (the "Debtor" or "Plaintiff"), seeking partial

summary judgment against defendant Wythe Berry LLC (the "Lessee" or "Defendant") in the

above-captioned adversary proceeding pursuant to Rule 56 of the Federal Rules of Civil

Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

(Motion ¶ 1.)  The other defendants in the adversary proceeding, Zelig Weiss ("Weiss") and

Yoel Goldman ("Goldman," and together with Lessee and Weiss, the "Defendants"), are not

subject to the Motion.  (*Id.*)

Specifically, the Debtor seeks partial summary judgment as to the first, second, third,

fourth, and sixth causes of action set forth in the Debtor's Verified Complaint (the "Complaint")

as to the Lessee and dismissal of certain of Lessee's affirmative defenses and counterclaims.

(*Id*.)

In support of the Motion, the Debtor has filed the following:

1.    memorandum of law in support ("Partial Summary Judgment Memo," ECF Doc. # 31);

2.    statement of undisputed material facts ("Statement of Undisputed Material Facts," ECF Doc. # 32);

3.    declaration of Assaf Ravid—plan administrator of Wind-Down Co.[1] and the sole member of YG WV LLC, the managing member of Wythe Berry Member LLC ("WB Member LLC"), which, in turn, is the sole member of the Debtor—in support of the Motion ("Ravid Declaration," ECF Doc. # 33); and

4.    declaration of Janice Goldberg, an attorney at Herrick, Feinstein LLP and counsel to the Debtor ("Goldberg Declaration," ECF Doc. # 34).

---

[1]    Wind-Down Co.is "the entity that succeeded to All Year Holdings Ltd's . . . interests in YG WV LLC pursuant to that certain Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited, dated December 9, 2022 as confirmed by that certain Confirmation Order entered January 31, 2023."  (Ravid Declaration at 1, n.1.)

Lessee opposes the relief sought and has filed the following opposition papers:

1.      counterstatement of undisputed material facts ("Counterstatement of Undisputed Material Facts," ECF Doc. # 39);

2.      declaration of Zelig Weiss, a managing member of the Lessee, in opposition to the Motion ("Weiss Declaration," ECF Doc. # 40);

3.      declaration of Jon Schuyler Brooks, a partner at Abramson Brooks LLP and counsel to Lessee, in opposition to the Motion ("Brooks Declaration," ECF Doc. # 41); and

4.      memorandum of law in opposition to the Motion ("Opposition Memo," ECF Doc. # 42).

The Debtor filed a reply memorandum ("Reply Memo," ECF Doc. # 43) as well as the reply declaration of Janice Goldberg ("Goldberg Reply Declaration," ECF Doc. # 44), both in further support of the Motion.  On September 26, 2023, the Court held a hearing on the Motion.

For the reasons discussed below, the Court **GRANTS** the Motion as to the first, second, third, fourth, and sixth causes of action and **DISMISSES** the Lessee's affirmative defenses and counterclaims.[2]

---

[2]      This proceeding was initially commenced in New York state court and was subsequently removed to this Court in February 2023.  It involves prepetition state law claims that are undoubtedly non-core.  The claims fall within this Court's "related to" jurisdiction as resolution of such claims could conceivably impact the Debtor's pending bankruptcy proceeding (Case No. 22-11340).  *See, e.g., Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (stating that prior to confirmation, a "civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate"); *see also* M-431 Amended Standing Order of Reference (Bankr. S.D.N.Y. Feb. 1, 2012) (providing that pursuant to 28 U.S.C. § 157(a), "any or all cases . . . related to a case under title 11 are referred to the bankruptcy judges for this district").  As a removed action, however, the Debtor was not initially required to plead whether it consents to entry of final orders or judgment by a bankruptcy court.  *See* FED. R. BANKR. P. 7008(a) (requiring, in adversary proceedings before bankruptcy courts, a statement in complaints, counterclaims, cross-claims, or third-party complaints that the "pleader does or does not consent to entry of final orders or judgment by the bankruptcy court").  Following removal, however, all three defendants filed answers to the complaint in this Court.  None of the answers complied with Bankruptcy Rule 7012(b).  *See* FED. R. BANKR. P. 7008(b) (requiring, in adversary proceedings, that "[a] responsive pleading shall include a statement that the party does or not consent to entry of final orders or judgment by the bankruptcy court").  Courts may nonetheless infer implied consent to a bankruptcy court entering final judgment with the "key inquiry [being] whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case.'"  *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)).

This issue of consent need not be resolved now.  Even absent consent, a bankruptcy court may enter partial summary judgment in related-to adversary proceedings without submitting proposed findings of fact and

## I.   <u>BACKGROUND</u>

The following facts, unless otherwise noted, are undisputed between the Debtor and the Lessee and/or are derived from supporting documentation as cited.

### A.  The Parties and the Lease Agreement

The Debtor is the owner of a commercial real property complex located at 55 Wythe Avenue, Brooklyn, New York 11249 that is comprised of a 183-room luxury hotel, otherwise known as The William Vale Hotel, as well as office and retail space and parking (collectively, the "Leased Premises").  (Statement of Undisputed Material Facts ¶ 3; Ravid Declaration ¶ 6, Ex. 3 (the "Lease") at 1.)  The Debtor is wholly owned by WB Member LLC, which serves as the Debtor's sole member.  (Statement of Undisputed Material Facts ¶ 32.)  WB Member LLC is itself co-owned by defendant Weiss and entity YG WV LLC with each holding 50% of the membership interests in WB Member LLC and YG WV LLC serving as the managing member.  (*Id.* ¶ 33; Goldberg Declaration, Ex. 11 ("State Court Decision & Order") at 1.)  Previously, All Year Holdings Ltd. ("All Year") served as the sole member of YG WV LLC and is a debtor in a separate chapter 11 case pending before this Court.[3]  (Statement of Undisputed Material Facts ¶ 33.)  Presently, Wind-Down Co., as the successor in interest to All Year, serves as the sole member of YG WV LLC.  (*Id.* ¶ 35; *supra* note 1.)

The Lessee is owned by defendants Weiss and Goldman, each holding 50% of the membership interests with Weiss serving as the managing manager.  (State Court Decision & Order at 2; Weiss Declaration, Ex. A (the "Fifth Amendment to Lessee Operating Agreement") §

---

conclusions of law.  *See In re Trinsum Grp., Inc.*, 467 B.R. 734, 741–42 (Bankr. S.D.N.Y. 2012) (holding that the bankruptcy court is not required to submit proposed findings of fact and conclusions of law when granting a motion for partial summary judgment on related-to claims).

[3]    *See In re All Year Holdings Ltd.*, Case No. 21-12051.

4

2(d) and § 7(a) (stating that Weiss shall be the managing member "responsible for the management of the business and affairs of the Company and the day to day operation and functioning of the Property, and Goldman shall be responsible for overseeing matters relating to the funding, financing and refinancing of Property").)

On February 28, 2017, the Debtor, as lessor, entered into a 15-year ground lease with the Lessee pursuant to which the Debtor leased the Leased Premises to Lessee for a term beginning on February 1, 2017 through January 31, 2032 "unless sooner terminated" in accordance with the Lease. (Statement of Undisputed Material Facts ¶¶ 4, 5; Lease §§ 1.1, 1.2.) Defendant Goldman was the signatory for both the Debtor and the Lessee on the Lease and both Goldman and Weiss serve as guarantors for the Lessee under the same.[4] (Lease at 28 (reflecting Goldman as the signatory for both the Debtor and the Lessee and the signatures of Goldman and Weiss as guarantors).)

Section 2.1 of the Lease obligates the Lessee to pay rent in the amount of $15,000,000 per year, payable in semiannual installments of $7,500,000 on February 1 and August 1 of each calendar year. (Statement of Undisputed Material Facts ¶ 6; Lease § 2.1.) In addition to the foregoing, the Lessee is also obligated to pay, as additional rent ("Additional Rent"), "all expenses, of every kind and nature, relating to or arising from the Leased Premises, including Impositions[5] . . . and expenses arising from the leasing, insurance, management, operation,

---

[4]     The Lessee disputes whether Goldman had authority to "bind [Lessee]" and, therefore, questions whether the Lease is valid. (Counterstatement of Undisputed Material Facts ¶ 4; Opposition Memo at 5 (arguing that the Lease is a "nullity").)

[5]     Subject to certain exclusions, "impositions" is defined in the Lease to include "(a) all real estate taxes, all special assessments and all other property assessments . . . (b) all ad valorem, sales and use taxes, (c) all rent and occupancy taxes and all similar taxes, (d) all personal property and other taxes on the Personal Property, (e) all water, sewer, and other utility charges imposed by any governmental authority, (f) all fines, fees, charges, penalties, and interest imposed by any governmental authority or utility, and (g) all other governmental charges and taxes." (Lease § 2.1.)

5

maintenance, repair, use, or occupancy of the Leased Premises and all construction relating to the Leased Premises." (Statement of Undisputed Material Facts ¶ 7; Lease § 2.1.)

### B.   The 2017 Refinancing Transaction and Subsequent Lease Assignment

Contemporaneous with the execution of the Lease, the Debtor also "refinanced particular debt secured by the Leased Premises with All Year." (Statement of Undisputed Material Facts ¶ 36.) On February 28, 2017, the Debtor and All Year entered into, among other things, (i) the Amended and Restated Promissory Note (the "Promissory Note"), evidencing a loan in the amount of $166,320,000 that was secured by an Agreement of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing (the "Security Interest") and (ii) the Assignment of Leases and Rents and Security Deposits (the "Assignment Agreement," Ravid Declaration, Ex. 6, and altogether with other loan documents, the "Loan Documents"). (Statement of Undisputed Material Facts ¶ 36; Ravid Declaration, ¶ 25; State Court Decision & Order at 4.)

On March 16, 2021, All Year transferred and assigned its rights, title, and interest in the Loan Documents to Mishmeret Trust Company Limited ("Mishmeret") pursuant to the following, each between All Year and Mishmeret: (i) the Assignment of Modification of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing; (ii) the Assignment of Loan Documents; and (iii) the Allonge. (Statement of Undisputed Material Facts ¶ 37.) As a result, Mishmeret became the lender under the Loan Documents. (*Id.*)

### C.   The Debtor's Alleged Default

On April 16, 2021, Mishmeret served a Notice of Events of Default; Reservation of Rights ("Mishmeret Notice of Default") on the Debtor and the Defendants, indicating that "certain [e]vents of [d]efault have occurred and are continuing under the Loan Documents."

(Ravid Declaration, Ex. 7 ("Mishmeret Notice of Events of Default") at 3.)  Specifically,

Mishmeret states that the Debtor failed to make timely payments of principal and interest due on

February 28, 2021 in accordance with section 2.1 of the Promissory Note and section 13.01(b) of

the Security Interest, each triggering an event of default under each of the foregoing Loan

Documents.  (*Id.*)

In addition, Mishmeret also disclosed that it was aware that the Lessee had failed to

comply with its rental obligations pursuant to section 2.1 of the Lease, missing the rent payment

due on February 1, 2021, as discussed in greater detail below.  (*Id.*)  In connection with this,

Mishmeret stressed that any unpaid amounts relating to rent and other related obligations would

accrue interest in accordance with the terms of the Lease.  (*Id.*; *see also* Lease § 12.2(E) ("To the

extent any amounts due to Lessor under the terms of this Lease, whether as a result of an Event

of Default or otherwise, are not timely paid, such amounts shall bear interest at the rate of

eighteen percent (18%) per annum from the date such amounts were due until paid to Lessor.");

Statement of Undisputed Material Facts ¶ 14 (same).)  Mishmeret also noted that Weiss and

Goldman, as guarantors, were now "each jointly and severally liable for such unpaid rental

obligations."  (Mishmeret Notice of Events of Default at 3.)

**D.  The Lessee's Alleged Default and the Debtor's Notice of Default**

On May 5, 2021, the Debtor served a Notice of Default on Lessee via email and

overnight delivery, which the Lessee admits it received, asserting that the Lessee was in default

under the Lease due to its:

- non-payment of $7,500,000 in rent that was due on February 1, 2021 and Additional Rent as required under Article 2 of the Lease, constituting an event of default under section 12.1(A) of the Lease;[6]

- failure to timely cure the at least 17 violations against the Leased Premises from the New York City Department of Buildings ("NYC DOB"), dating back to January 1, 2020 as required under section 3.2 of the Lease,[7] constituting an event of default under section 12.1(C) of the Lease;[8] and

- failure to provide certain financial records as required under sections 16.1, 16.2, and 17.8 of the Lease,[9] including (i) signed financial reports for the years 2019 and 2020; (ii) documents relating to loans the Lessee received or anticipated to receive from the U.S. Small Business Administration's Paycheck Protection Program; and (iii) details pertaining to Lessee's business practices and measures taken to address decreased commercial activity, constituting an event of default under section 12.1(C) of the Lease.

---

[6]     Section 12.1(A) of the Lease provides that the Lessee's failure to pay rent "shall constitute" an event of default of the Lessee under the Lease. (Lease § 12.1(A).) Specifically, "[f]ailure by Lessee to pay or cause to be paid, within thirty (30) days of the date required, rent specified to be paid under Section 2.1 hereof or any other monetary amount due to Lessor." (*Id.*)

[7]     Section 3.2 of the Lease provides, among other things, that the Lessee "shall timely and fully comply . . . with any and all federal, state, and local laws, statutes, and ordinances and all regulations, orders and directives of appropriate governmental and accrediting agencies . . . applicable to the Leased Premises." (*Id.* § 3.2.) Additionally, Lessee "shall promptly cure all violations of Law as to which a notice of violation has been issued or as to which a directive or order has been issued by any public officer or other person having authority . . . ." (*Id.*)

[8]     Section 12.1(C) of the Lease provides that "[f]ailure of the Lessee to observe and perform any covenant, condition or agreement of Lessee under this Lease, other than a breach addressed in Section 12.1(A) above, within ten (10) days after the date Lessee receives written notice of such failure of performance, or, with respect to failures of performance not susceptible of cure within ten (10) days upon approval in writing by the Lessor, the failure of Lessee to thereafter diligently prosecute same to completion and/or cure the same within sixty (60) days." (Lease § 12.1(C); *see also id.* § 12.1(J) ("A failure by Lessee, whether by action or inaction, to meet any of the other material terms, covenants or conditions of this Lease . . . and the failure by Lessee to remedy such failure within thirty (30) days following receipt of Notice thereof from Lessor").)

[9]     Section 16.1 of the Lease provides that "Lessor shall have access to records of the Lessee, which are determined by mutual agreement . . . to be reasonably necessary for the Lessor to be able to ensure that the Lessee is complying with the terms and conditions set forth herein." (Lease § 16.1.)

Section 16.2 of the Lease provides that "Lessee shall keep true books of record and account" in accordance with GAAP and must regularly furnish certain specified financial information to the Debtor, as applicable, on a monthly, quarterly, and annual basis, as well as tax returns. (*See id.* § 16.2; Statement of Undisputed Material Facts ¶¶ 10, 15.)

Section 17.8 of the Lease provides that "Lessee will make available to Lessor's agents, independent auditors and/or governmental agencies such documents and information in respect of the Leased Premises to the extent necessary to facilitate audits, compliance with governmental requirements and regulations and the prosecution or defense of claims or for other legitimate purposes." (Lease § 17.8.)

(Statement of Undisputed Material Facts ¶ 21; Ravid Declaration, Ex. 4 ("Debtor Notice of Default") at 1–3.; Goldberg Declaration, Ex. 20 at 4 (admitting Lessee received the Debtor Notice of Default).)

The Lessee nonetheless asserts that it is not in breach of the Lease for a variety of reasons, including primarily the parties' course of conduct that "modified the Lease." (Opposition Memo at 3–4; Counterstatement of Undisputed Material Facts ¶ 17 (stating that the Lessee is not in breach for failure to pay rent by operation of the parties' "historical course of conduct"); *id.* ¶ 19 (stating that the Lessee is not in breach as it has cured the NYC DOB violations); *id.* ¶ 20 (stating that the Lessee is not in breach for failure to provide financial information by operation of the parties' "historical course of conduct" and that it was operating pursuant to the terms of a "fully negotiated" but unexecuted nondisclosure agreement ("NDA")).)

Notably, the Lessee does not dispute that it failed to make any payments to the Debtor and/or its lenders during the 2021 calendar year.  (Counterstatement of Undisputed Material Facts ¶ 18 ("Undisputed that [Lessee] made no such payments during calendar year 2021."); Lessee Objections and Responses at 4 (admitting the same).)  Nor does the Lessee dispute that the NYC DOB issued at least 17 violations to the Lessee with respect to the Leased Premises. (*See* Counterstatement of Undisputed Material Facts ¶ 19.)  Rather, the Lessee indicates that such violations have since been cured such that it is no longer in default in this respect.  (*Id.*; Weiss Declaration, Ex. C at 2–18 (reflecting that the active violations highlighted in Exhibit 10 to the Ravid Declaration were possibly resolved as of September 2, 2021).)

### E. The Debtor's Notice of Cancellation and Termination on Lessee

On May 20, 2021, the Debtor served a Notice of Cancellation and Termination on the

Defendants via email and overnight delivery, stating that the Debtor elected to "terminate the

Lease and Lessee's tenancy . . . effective immediately as of May 20, 2021." (Statement of

Undisputed Material Facts ¶¶ 24, 25; Ravid Declaration, Ex. 5 ("Notice of Cancellation") at 1);

*see* Counterstatement of Undisputed Material Facts ¶ 24 (confirming Lessee's receipt of the

Notice of Cancellation); Lessee Objections and Responses at 4 (admitting the same).) The

Notice of Cancellation included a Notice to Commercial Lessee and a Hardship Declaration form

pursuant to the COVID-19 Emergency Protect Our Small Businesses Act of 2021, the latter of

which the Lessee did not complete and return to the Debtor. (Statement of Undisputed Material

Facts ¶¶ 26, 27.) Among other things, the Notice of Cancellation indicates that, as of May 20,

2021, the Lessee owed the Debtor $7,587,076.19, comprising all outstanding rent and accrued

interest. (Notice of Cancellation at 2.)

Ultimately, the Lessee did not surrender the Leased Premises to the Debtor and presently

remains in possession of the same. (Statement of Undisputed Material Facts ¶ 30;

Counterstatement of Undisputed Material Facts ¶ 30.)

### F. The Verified Complaint and the State Court Proceedings

On June 11, 2021, the Debtor filed the Complaint in the Supreme Court of the State of

New York, County of Kings ("State Court") in the case captioned *Wythe Berry Fee Owner LLC*

*v. Wythe Berry LLC et al.*, Index No. 514152/2021. (Goldberg Declaration ¶ 4.) As noted in the

State Court Decision & Order, the Debtor elected to commence the action after Mishmeret

served the Mishmeret Notice of Default in connection with the Debtor's default on its debt

service payments under the Loan Documents. (State Court Decision & Order at 2.) The Debtor

alleges that its default stemmed from the Defendants' failure to pay rent. (*Id.*; *see also* Partial Summary Judgment Memo at 5.)

The Complaint sets forth six causes of action as follows:

- <u>First Cause of Action</u> – Breach of contract against Lessee, seeking as pre-termination damages, rent due prior to the termination of the Lease in the amount of $7,500,000 plus interest. (Complaint ¶¶ 70–74.)

- <u>Second Cause of Action</u> – Breach of contract against Lessee, seeking as post-termination damages under the Lease, at least $157,500,000 plus interest. (Complaint ¶¶ 75–81.)

- <u>Third Cause of Action</u> – Declaratory judgment that the Lease was cancelled and terminated by the Notice of Cancellation, effective May 20, 2021. (Complaint ¶¶ 82–87.)

- <u>Fourth Cause of Action</u> – Ejectment of Lessee from the Leased Premises. (Complaint ¶¶ 88–100.)

- <u>Fifth Cause of Action</u> – Breach of contract against Weiss and Goldman jointly and severally, seeking monetary damages due to their guaranty of certain of Lessee's obligations under the Lease. (Complaint ¶¶ 101–106.)

- <u>Sixth Cause of Action</u> – Attorneys' fees as provided for in the Lease. (Complaint ¶¶ 107–111.)

(Ravid Declaration ¶ 32; *id.*, Ex. A ¶¶ 70–111; Goldberg Declaration ¶ 4.) As noted above, all but the fifth cause of action are subject to the Motion. (*See* Partial Summary Judgment Memo at 1.)

Contemporaneous with the filing of the Complaint in State Court, the Debtor also sought entry of an order directing (i) the Lessee to pay the Debtor "*pendente lite* use and occupancy for [as] long as the Lessee . . . remain[s] in possession of the [Leased Premises] and the action remain[s] pending and (ii) the immediate production of all books, records and financial information concerning the [Leased Premises]" as requested by the Debtor and/or otherwise required to be produced in accordance with the Lease and any expedited discovery. (Goldberg Declaration ¶ 5.)

On December 6, 2021, the State Court entered the State Court Decision & Order, denying the Lessee's and Weiss' motion to dismiss and barring the Lessee and Weiss from interposing any answer to the Complaint on grounds that their motion to dismiss had been untimely filed. (*Id.* ¶ 7.)  The State Court further awarded the Debtor, among other things, use and occupancy *pendente lite*, requiring the Lessee to pay the Debtor $7,500,000 on a semiannual basis beginning on February 1, 2022.  (*Id.* ¶ 8.)  In response, the Lessee moved to reargue the State Court Decision & Order, which the State Court ultimately denied, and the Lessee and Weiss abandoned their efforts to appeal the ruling.  (*Id.* ¶¶ 9, 10.)

In accordance with the State Court Decision & Order, the Lessee has paid $7,500,000 to the Debtor for use and occupancy on February 1, 2022, August 1, 2022, February 1, 2023, and August 1, 2023.[10]  (*Id.* ¶¶ 11–13; Counterstatement of Undisputed Material Facts ¶ 30 (acknowledging Lessee's August 1, 2023 use and occupancy payment to the Debtor in accordance with the State Court Decision & Order).)  The Lessee states that its August 1, 2023 "court-ordered use and occupancy payment" grants it the "right to use and occupy the [Leased Premises] . . . [from] August 1, 2023 through and including January 31, 2024." (Counterstatement of Undisputed Material Facts ¶ 30.)

### G.  The Involuntary Bankruptcy and Removal of the State Court Action

The Debtor's own foray into bankruptcy commenced on October 6, 2022 after Mishmeret filed an involuntary Chapter 11 petition against the Debtor as the alleged debtor.  (Goldberg Declaration ¶ 15.)  Weiss moved to dismiss the involuntary petition and, following a trial on January 17, 2023, the Court denied Weiss' motion and entered an order for relief on January 18,

---

[10]     Lessee had initially failed to make the August 1, 2022 payment.  (Goldberg Declaration ¶ 12.)  In response, the Debtor filed a motion to eject the Lessee from the Leased Premises that was subsequently withdrawn after parties entered into a stipulation pursuant to which Lessee made payments of $7,500,000 on August 1, 2022 and February 1, 2023 for the use and occupancy of the Leased Premises.  (*Id.* ¶¶ 12–14.)

2023.  (Case No. 22-11340, ECF Doc. ## 56, 57; *see also* Memorandum Opinion Denying Zelig

Weiss' Motion to Dismiss the Involuntary Petition, Case No. 22-11340, ECF Doc. # 71.)

As a result of the Debtor's Chapter 11 case, the Debtor removed this proceeding from

State Court to the U.S. District Court for the Southern District of New York on February 9, 2023,

with the intent to have this action, upon removal, referred to the U.S. Bankruptcy Court for the

Southern District of New York.  (Notice of Removal, ECF Doc. # 1 at 1–2.)  On February 14,

2023, the proceeding was removed from State Court to this Court.  (*See generally* ECF Doc. # 1;

*see also* SDNY Docket Sheet, ECF Doc. # 1-20 at 2; Goldberg Declaration ¶ 16.)

On May 9, 2023, the Lessee and Weiss filed answers to the Complaint, including

affirmative defenses and counterclaims, to which the Debtor responded to on May 30, 2023.

(Goldberg Declaration ¶¶ 17, 18; Opposition Memo at 4; *see* Goldberg Declaration, Ex. 14

("Lessee Answer"); *id.*, Ex. 15 ("Weiss Answer"); *id.*, Ex. 16 ("Debtor Reply to Lessee"); *id.*,

Ex. 17 ("Debtor Reply to Weiss").)  Following a discovery conference on July 18, 2023,

Goldman also filed an answer to the Complaint on July 28, 2023.  (Goldberg Declaration ¶ 19;

*id.*, Ex. 18 ("Goldman Answer").)  Finally, on August 3, 2023, the Debtor served its first

requests for admission upon the Lessee and the Lessee responded just one day later with its

objections and responses.  (*See id.*, Ex. 19 ("Debtor First Requests for Admission"); *id.*, Ex. 20

("Lessee Objections and Responses").)

**H.  The Debtor's Motion for Partial Summary Judgment**

The Debtor characterizes this proceeding as a "straightforward action for non-payment of

rent under a commercial lease agreement, a declaratory judgment that the lease was effectively

terminated, and ejectment of [the] Lessee from the Debtor's property."  (Partial Summary

Judgment Memo at 1.)  Accordingly, the Debtor asserts that partial summary judgment is

appropriate as to the Lessee with respect to the first, second, third, fourth, and sixth causes of action set forth in the Complaint. (*Id.* at 2.) The Debtor further argues that dismissal of the Lessee's 20 affirmative defenses and certain counterclaims is also warranted on grounds that they are "baseless and do not preclude summary judgment." (*Id.* at 1.) The following addresses each of the Debtor's arguments in the order in which they were presented in the Motion.

        1.  <u>Debtor's Third Cause of Action</u>

The Debtor asserts that it is entitled to judgment against the Lessee on its third cause of action for declaratory judgment that the Lease has been terminated, effective May 20, 2021, pursuant to 28 U.S.C. § 2201(a). (*Id.* at 3.) The Debtor contends that that (i) declaratory judgment is appropriate and warranted based on the undisputed facts and (ii) it possesses both standing and authority to terminate the Lease. (*Id.* at 3–12.)

First, the Debtor argues that the "controversy" over whether the Lease was terminated is appropriate for declaratory judgment relief and the undisputed facts warrant the granting of the same. (*Id.* at 4–5.) The Debtor states that it is undisputed that (i) the Debtor and Lessee entered the Lease; (ii) the Debtor performed under the Lease; (iii) the Lessee continues to occupy the Leased Premises; and (iv) the Lessee made no payments to the Debtor or its lender in the 2021 calendar year. (*Id.* at 4.) Accordingly, the Debtor asserts that the Lessee breached the Lease when it failed to pay the $7,500,000 in rent due on February 1, 2021, rendering it in default under section 12.1(A) of the Lease. (*Id.*) Moreover, the Lessee did not cure the default after the Debtor delivered the Debtor Notice of Default on May 5, 2021. (*Id.*) The Debtor therefore argues that it properly terminated the Lease, effective May 20, 2021, upon the delivery of the Notice of Cancellation in accordance with section 12.2(A) of the Lease such that it is entitled to a declaration stating the same. (*Id.* at 3, 5.)

Second, the Debtor argues that dismissal of the Lessee's first through third affirmative defenses[11] is appropriate in light of the State Court Decision & Order, which already determined that the Debtor possessed standing to terminate the Lease. (*Id.* at 6–7.) Specifically, the Lessee asserts in its first through third affirmative defenses that the Debtor lacked authority to terminate the Lease because Mishmeret had declared an event of default on the loan secured by a mortgage on the Leased Premises. (*Id.* at 5.) The Lessee had previously argued that the Assignment Agreement granted the Debtor a "revocable license" to act as the landlord under the Lease, which "automatically terminated" upon Mishmeret's service of the Mishmeret Notice of Default, rendering Mishmeret the real party-in-interest with standing to terminate the Lease. (*Id.* at 6.)

Alternatively, the Debtor also argues that, notwithstanding the State Court's ruling—none of the Loan Documents, including the Assignment Agreement—divested the Debtor of authority to terminate the Lease and to pursue its claims. (*Id.* at 7.) The Debtor indicates that Mishmeret has not taken any actions to "step into Debtor's shoes" as landlord of the Leased Premises pursuant to section 3 of the Assignment Agreement, which provides that Mishmeret "may (but shall have no obligation to . . . ) perform all acts necessary and appropriate for the operation and maintenance of the Property" where an event of default has occurred and remains continuing. (*Id.* at 8–10). Mishmeret confirms this. (*See* Ravid Declaration, Ex. 8 ("Katzav Affirmation") ¶ 9 (stating that Mishmeret "has not stepped into [the Debtor's] shoes as landlord, and has instead (subject to its reservation of rights . . . ) looked to [the Debtor] to proceed directly against defendants, including by bringing this action in [the Debtor's] name").) Accordingly, the Debtor

---

[11]   The Lessee's first affirmative defense asserts that Debtor "is not the real party in interest and . . . lacks standing to sue Defendant. (Goldberg Declaration, Ex. 14 ("Lessee Answer") at 18.) The Lessee's second affirmative defense asserts that the Debtor "is not the real party in interest, and . . . the real party in interest—Mishmeret—has not ratified, joined, or been substituted into the action." (*Id.* at 18.) The Lessee's third affirmative defense asserts that "[p]rior to the commencement of this action, [the Debtor] failed to obtain the required written authority from Mishmeret, as Lender under the Loan Documents, to commence this action." (*Id.* at 19.)

argues that any determination that Mishmeret is the "sole party with standing to act under, enforce, or terminate the Lease would lead to an absurd result and contradict the terms of the [Assignment Agreement]." (Partial Summary Judgment Memo at 9.) It asserts that such an interpretation would also allegedly negate the Assignment Agreement's permissive language. (*Id.* at 9–10.)

Lastly, the Debtor argues that Weiss' prior consent as a member of WB Member LLC was not required for the Debtor to terminate the Lease, warranting dismissal of the Lessee's fourth affirmative defense.[12] (*Id.* at 12.) The Debtor highlights section 5.2 of the WB Member operating agreement that requires the managing member to obtain the prior written consent of all members to terminate the Lease where "the Lessee is not in material financial default under the terms of the Lease." (*Id.* at 11; Ravid Declaration, Ex. 9 ("WB Member Operating Agreement") § 5.2.9.) Here, the Debtor argues that the Lessee's failure to make the February 1, 2021 rent payment in the amount of $7,500,000 constitutes a "material default" under the Lease under New York law. (Partial Summary Judgment Memo at 11.) Accordingly, it argues that Weiss' prior consent was not required.

## 2. Debtor's First and Second Causes of Action

The Debtor argues that it is entitled to judgment against the Lessee with respect to the first and second causes of action for breach of contract and entitlement to pre- and post-termination damages. (*Id.* at 12.) The Debtor states that the undisputed facts reflect that each requirement for a plaintiff to prevail on a motion for summary judgment for breach of contract under New York law has been satisfied. (*Id.* (noting that the requirements are "the existence of a

---

[12]     The Lessee's fourth affirmative defense states that the Debtor "failed to obtain the unanimous consent of the members of its sole member, [WB] Member LLC, including Weiss, as required by the [WB Member Operating Agreement], to terminate the Lease." (Lessee Answer at 19.)

16

contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting

damages").)  Accordingly, the Debtor argues that it is entitled to judgment as to Lessee with

respect to its first and second causes of action for pre-termination rent and interest and post-

termination damages and interest, respectively, pursuant to due under Article 2 and section

12.2(E) of the Lease.  (*Id*. at 13.)

The Debtor further believes that it is entitled to additional damages stemming from the

Lessee's continued possession of the Leased Premises and requests that the Court direct a

hearing to determine the appropriate monetary award that Debtor is entitled to receive.  (*Id*.)

### 3.   Debtor's Fourth Cause of Action

The Debtor argues that it has made a *prima facie* showing that the Lease was properly

terminated, effective as of May 2021, and that the Lessee has not surrendered the Leased

Premises to the Debtor.  (*Id*. at 14.)  The Debtor asserts that it possesses an "immediate right to

possession of [the Leased Premises]" and that the Lessee "does not have any rights to possession

or occupancy."  (*Id*. at 13–14.)  Accordingly, it believes that it is entitled to a judgment against

the Lessee for ejectment.  (*Id*. at 14.)

### 4.   Debtor's Sixth Cause of Action

The Debtor argues that it is entitled to payment of attorneys' fees, costs, and damages,

stemming from the Lessee's breach as set forth in sections 12.2, 14.2, and 17.2 of the Lease.

(*Id*.)  As with the Debtor's first and second causes of action, the Debtor requests that the Court

direct that a hearing be held to determine the Debtor's monetary damages and attorneys' fees.

(*Id*.)

     5. <u>Lessee's Affirmative Defenses</u>

The Debtor asserts that all twenty of the Lessee's affirmative defenses should be

dismissed and/or do not otherwise bar granting summary judgment relief.  The Debtor's reasons

in support of dismissal with respect to each are summarized below:

- <u>First through Third Affirmative Defenses</u> – The Lessee's first through third affirmative defenses assert that Mishmeret is the proper lessor under the Lease and dispute that the Debtor's standing to bring suit.  (*Id.* at 15.)  As already discussed, the Debtor asserts that such defenses should be dismissed as the Debtor has standing, is the proper plaintiff, and has obtained written authority from Mishmeret to bring this action.  (*Id*. at 15.)

- <u>Fourth Affirmative Defense</u> – The Lessee's fourth affirmative defense asserts that the Debtor did not have the unanimous consent of all WB Member LLC members to terminate the Lease.  (*Id.*)  The Debtor argues that the defense should be dismissed as such consent was not required under the WB Member Operating Agreement as discussed above.  (*Id.*)

- <u>Fifth Affirmative Defense</u> – The Lessee's fifth affirmative defense asserts that the Debtor is equitably estopped from seeking rent due to parties' course of dealing.  (*Id.*)  The Debtor argues that the defense should be dismissed given section 12.2(D) of the Lease and the "no waiver" provision set forth in section 17.6 of the Lease.[13]  (*Id.* at 15–16.)  Additionally, the Debtor notes that the Lessee has clarified via discovery that it does not dispute that payment was due but rather objects to the amount of payment due.  (*Id.* at 16.)

- <u>Sixth through Eighth Affirmative Defenses</u> – The Lessee's sixth through eighth affirmative defenses relate to Lessee's claim for an entitlement to abatement of rent due to the COVID-19 pandemic.  (*Id.*)  The Debtor argues that such defenses should be dismissed as (i) no laws preclude Lessee's payment (or Debtor's collection of) rent due to the COVID-19 pandemic; (ii) section 2.1 of the Lease[14] that the Lessee cites protects the Debtor only; and (iii) courts have rejected arguments of commercial impracticability and frustration of purpose.  (*Id.* at 17–19.)

---

[13]    Section 17.6 of the Lease provides, in relevant part, that "[a]ny failure or delay by Lessor to exercise any right or remedy under this Lease shall not be deemed a waiver of such right or remedy, and no right or remedy of Lessor shall be deemed to be waived unless expressly waived in writing by Lessor.  The waiver of any right or remedy by Lessor hereunder shall not constitute or operate as a waiver of any future similar right or remedy." (Lease § 17.6.)

[14]    Section 2.1 of the Lease provides, in relevant part, that "[i]f at any time during the Lease Term the Rent is not fully collectible by reason of any Law. . . , Lessee shall enter into such agreements and take such other action as Lessor reasonably requests and which is not prohibited by any Law, to permit Lessor to collect the maximum permissible Rent."  (Lease § 2.1.)

- <u>Ninth Affirmative Defense</u> – The Lessee's ninth affirmative defense asserts that the Debtor is collaterally estopped from asserting that rent is due and owing. (*Id.* at 20.) The Debtor argues dismissal is appropriate as such defenses are barred by the "no waiver" provision in section 17.6 of the Lease and set forth conclusions of law without supporting facts. (*Id.* at 21.)

- <u>Tenth and Eleventh Affirmative Defenses</u> – The Lessee's tenth and eleventh affirmative defenses assert that the Debtor is equitably estopped from asserting claims for breach of financial reporting obligations due to the parties' course of dealing and Debtor's failure to execute an NDA. (*Id.* at 19.) The Debtor argues that such defenses should be dismissed due to the "no waiver" provision in section 17.6 of the Lease and regardless, do not otherwise bar summary judgment. (*Id.* at 20.)

- <u>Twelfth Affirmative Defense</u> – The Lessee's twelfth affirmative defense asserts that the Debtor is equitably estopped from asserting claims for liability and damages as Debtor failed to maintain a reasonable cash reserve and therefore, waived rent under the Lease. (*Id.*) The Debtor argues that the defense should be dismissed due to the "no waiver" provision in section 17.6 of the Lease and does not otherwise bar summary judgment. (*Id.*)

- <u>Thirteenth Affirmative Defense</u> – The Lessee's thirteenth affirmative defense asserts that the Debtor fails to state a claim upon which relief can be granted. (*Id.* at 21.) The Debtor argues that such defense is "surplusage" and may be dismissed if other affirmative defenses are dismissed as legally insufficient. (*Id.*)

- <u>Fourteenth through Nineteenth Defenses</u> – The Lessee's fourteenth through nineteenth affirmative defenses assert that the Debtor's claims are barred because (i) the Lessee is not in breach of any legal duty or obligation; (ii) the doctrines of "unclean hands and/or waiver and/or laches"; (iii) the alleged damages were not caused by Lessee; (iv) the Lessee acted consistently with its legal obligations under the Lease; and (v) granting the relief sought is inequitable and contrary to public interest. (*Id.* at 20–21.) The Debtor argues that the defenses should be dismissed for the same reasons as the twelfth affirmative defense. (*Id.* at 21.)

- <u>Twentieth Affirmative Defense</u> – The Lessee's twentieth affirmative defense is merely a reservation of rights to assert additional defenses, which the Debtor argues should be dismissed as it is not a valid affirmative defense. (*Id.*)

6.  <u>Lessee's Counterclaims</u>

The Debtor asserts that certain of the Lessee's six counterclaims should be dismissed and that none bar a granting of summary judgment relief. The Debtor's reasons in support of dismissal with respect to each are summarized below.

###### a.  First Counterclaim

The Lessee's first counterclaim alleges breach of the Lease due to the Debtor's failure to pay the mandatory debt service under the Loan Documents.  (*Id.* at 22.)  The Debtor argues that dismissal is appropriate because (i) Debtor did not have a mandatory obligation under section 2.1 of the Lease given Lessee's failure to pay the February 1, 2021 rent and (ii) the counterclaim is inconsistent with Lessee's argument that the Lease was modified as a result of the parties' course of conduct.  (*Id.*)

The Debtor further argues that regardless, the Debtor's breach does not relieve Lessee of its obligation to pay rent such that even if the Lessee prevails on this counterclaim, any damages it is entitled to would be offset by damages it owes to the Debtor.  (*Id.* at 23.)

###### b.  Second Counterclaim

The Debtor contends that the Lessee's second counterclaim, which alleges breach of the Lease due to the Debtor's refusal to accept an abatement of rent due to the COVID-19 pandemic, should be dismissed for the same reasons as the sixth through eighth affirmative defenses.  (*Id.*)

###### c.  Third Counterclaim

The Debtor asserts that the Lessee's third counterclaim, which alleges breach of the implied covenant of good faith due to the Debtor's refusal to discuss an abatement of rent due to the COVID-19 pandemic, should be dismissed as the Debtor had no obligation to abate rent.  (*Id.* at 23–24.)

###### d.  Fourth Counterclaim

The Lessee's fourth counterclaim alleges violation of New York Real Property Law § 227 due to the Debtor's refusal to grant an abatement of rent after the COVID-19 pandemic rendered the Leased Premises "untenable and unfit for occupancy."  (*Id.* at 24.)  The Debtor

asserts that dismissal is appropriate as the statute the Lessee relies upon is inapplicable since the Lessee is holding over the Leased Premises and the statute deals with when a tenant must surrender property. (*Id.*)

### e. Fifth Counterclaim

The Debtor argues that the Lessee's fifth counterclaim, which alleges commercial tenant harassment, should be dismissed as (i) the Debtor has not engaged in any action prohibited under New York City's administrative code; (ii) the Debtor has not threatened the Lessee; (iii) the Lessee did not receive any rent concession or forbearance; and (iv) the Debtor's exercise of its rights under the Lease cannot otherwise constitute commercial tenant harassment. (*Id.* at 24–25.)

### f. Sixth Counterclaim

The Lessee's sixth counterclaim seeks payment of attorneys' fees pursuant to section 17.2 of the Lease. (*Id.* at 25.) The Debtor states that this counterclaim should be dismissed as the Lessee should fail on its other counterclaims and would not be a prevailing party that would otherwise be entitled to attorneys' fees. (*Id.*) Notwithstanding, to the extent any counterclaim survives, the Debtor asserts that the damages Lessee may be entitled to should be offset from the damages due from Lessee to the Debtor. (*Id.*)

## I. The Lessee's Opposition

The Lessee opposes the Motion and the relief sought on grounds that (i) genuine issues of material fact exist; (ii) the Debtor has not otherwise demonstrated that it is entitled to judgment as a matter of law; and (iii) the Debtor inappropriately seeks dismissal of the Lessee's affirmative defenses and counterclaims pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Opposition Memo at 2–3.)

1.  Alleged Genuine Issues of Material Fact

The Lessee asserts that the following constitute genuine issues of material fact:

- whether the Lease is a nullity given Goldman's lack of authority to bind the Lessee when he signed on behalf of both the Debtor and the Lessee as Weiss was the managing member of the Lessee (which the Lessee argues also precludes the Debtor's entitlement to judgment as a matter of law);

- whether any rent was actually due from the Lessee in February 2021 given the parties' course of conduct that the Lessee asserts modified the Lease with respect to rent;

- whether the Lessee was obligated to produce financial reports to the Debtor given the parties' course of conduct that also modified the Lease with respect to financial reporting obligations; and

- whether the Lessee failed to cure the NYC DOB violations.

(*Id.* at 5–9.)  With respect to rent in particular, the Lessee states that from the "inception of the Lease," the parties adhered to the following course of conduct:

> Undisputed admissible evidence demonstrates that, in lieu of Rent, [the Debtor] (acting through Goldman by his control of All Year and its control of [YG WV LLC]), instructed [the Lessee] to make semi-annual payments directly to All Year to cover the [Debtor's] mortgage debt service to All Year (or, more precisely, that All Year owed to the holders of the Series C Bonds), and that each of those payments, there was in an amount millions of dollars less than the semi-annual $7.5 million Rent stated in the Lease.

(*Id.* at 6.)  The Lessee asserts that this ultimately modified the Lease with respect to rent.  (*Id.*)  Along a similar vein, the Lessee indicates that the parties' "historical course of conduct" with respect to the Lessee's furnishing of financial information was, from the "inception of the Lease" up and until Goldman lost control of All Year, for the Lessee to provide such information as, when, and if requested by the Debtor.  (*Id.* at 8.)  Lessee notes that after Goldman was "stripped of his management of All Year," the Lessee agreed to provide such information to the Debtor pursuant to the terms of a fully negotiated NDA that was ultimately never executed.  (*Id.*)

Finally, the Lessee also asserts that it was entitled to an abatement of rent under the terms of the Lease due to the COVID-19 pandemic "when, as a result of Law or other government

action, [the Lessee] is denied full use of the Leased Premises." (*Id.* at 7 (citing sections 2.1, 3.2, and 10.1 of the Lease).)

### 2. Alleged Lack of Authority to Terminate the Lease

The Lessee asserts that the Debtor lacked authority to terminate the Lease as it failed to obtain the required consents from two sources: (i) the prior written consent of Mishmeret in accordance with the Assignment Agreement and (ii) the unanimous prior written consent of all members of WB Member LLC (i.e., Weiss) in accordance with the WB Member Operating Agreement. (*Id.* at 9.)

### 3. Dismissal of Lessee's Affirmative Defenses and Counterclaims is Time Barred

The Lessee argues that the Debtor's request to dismiss the Lessee's affirmative defenses and counterclaims should have been brought under Rules 12(f) and 12(b) of the Federal Rules of Civil Procedure, respectively, as opposed to Rule 56. (*Id.* at 13–14.) Lessee asserts that the Debtor is therefore time barred from seeking dismissal as Rule 12(f) requires a motion to strike to be made before responding to the pleading (or within 21 days of being served if no responses are allowed) while Rule 12(b) requires a motion to be made before pleading if responsive pleadings are allowed. (*Id.*)

### J. The Reply Memorandum

On September 21, 2023, the Debtor filed the Reply Memorandum in further support of the Motion. First, the Debtor asserts that it has established its entitlement to (i) a declaratory judgment that the Lease was terminated, effective May 20, 2021; (ii) a judgment against the Lessee as to liability for pre-termination rent, post-termination damages, interest and attorneys' fees; and (iii) ejectment. (Reply Memorandum at 2.)

Second, the Debtor argues that the Lessee's assertions that the Lease is a "nullity" are

baseless. (*Id.* at 2–4.) The Debtor notes that the Lessee has waived this defense and has instead

"repeatedly asserted the validity of the Lease," including making numerous judicial admissions

over the course of the case that the Lease is valid and binding. (*Id.* at 2–3.) Moreover, the

Debtor further argues that Goldman, acting as signatory for the Lessee, was not inconsistent with

the terms of the Fifth Amendment to Lessee Operating Agreement as it was part and parcel to the

"financing scheme" that Goldman was engaged in. (*Id.* at 3.) Indeed, Goldman, consistent with

the Fifth Amendment to the Lessee Operating Agreement, had confirmed that he was the

"managing member of [the Lessee] for the purposes of financing and funding." (*Id.* (quoting

Goldberg Reply Declaration, Ex. 24 ¶ 2).) If anything, the Debtor argues that Weiss was

"wholly aware of, and in fact participated in, the financing transaction that included the

execution of the Lease" and that the Lessee effectively ratified the Lease when it accepted

possession of the Leased Premises. (*Id.* at 4 (highlighting that Weiss, as guarantor, signed the

"very Lease that he now claims Goldman was not authorized to sign for").)

Third, with respect to the Lessee's arguments that there was modification of the Lease as

to the amount of rent due, the Debtor argues that the "no waiver" clause of the Lease set forth in

section 17.6 bars such an argument and, regardless, the issue goes to damages and not to liability.

(*Id.* at 5.) The Debtor echoes its arguments in the Partial Summary Judgment Memo that the

COVID-19 pandemic neither triggered abatement nor absolved the Lessee of its rent obligation

and that section 10.1 of the Lease is inapplicable. (*Id.* at 6.)

Lastly, the Debtor argues that it possessed both lender consent and authority to terminate

the Lease and that the Lessee's affirmative defenses and counterclaims may be appropriately

dismissed under Rule 56 of the Federal Rules of Civil Procedure. (*Id.* at 6–10.) The Debtor

asserts that the Lessee has not offered any facts or legal arguments to support its ninth, eleventh

through twentieth affirmative defenses or any of its counterclaims, rendering them "abandoned

or dismissed based on Debtor's demonstration that there is no basis to sustain them." (*Id.* at 10.)

## II.    <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of

the Federal Rules of Bankruptcy Procedure, generally provides that a party "may move for

summary judgment, identifying each claim or defense—or the part of each claim or defense—on

which summary judgment is sought." FED. R. CIV. P. 56(a).  A court shall grant summary

judgment if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Id.*  The movant bears the initial burden of demonstrating the

absence of a question of material fact and, in making this determination, the Court must view all

facts in the light most favorable to the nonmoving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130,

132, 137 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden "[t]hen the onus shifts to the party resisting summary

judgment." *Holcomb*, 521 F.3d at 137.  "'[A] party may not rely on mere speculation or

conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *In re

Kao*, 612 B.R. 272, 280 (Bankr. S.D.N.Y. 2020) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010)).  Rather, the opposing party must establish a genuine issue of fact by "citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials." FED. R. CIV. P. 56(c)(1)(A).  Alternatively, the opposing party may also make

"showing that the materials cited do not establish the absence or presence of a genuine dispute."

FED. R. CIV. P. 56(c)(1)(B).  While a court need only consider the cited materials, "it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

### III.   <u>DISCUSSION</u>

For the reasons discussed below, the Court **GRANTS** the Motion as to the first, second, third, fourth, and sixth causes of action and **DISMISSES** the Lessee's affirmative defenses and counterclaims.

### A.  The Lease is Valid and Enforceable

As a threshold matter, the Lessee contends that the Lease is a nullity due to Goldman's "lack of authority to bind [the Lessee]" as Weiss was and remains the sole managing member of the Lessee.  (Opposition Memo at 5–6 (citing to trial court order *Shannon v. Mendes*, 2008 WL 913040 (N.Y. Sup. Ct. Mar. 11, 2008), which concluded that the operating agreement provides that "only the managing member has the authority to bind").)  Section 7(a) of the Fifth Amendment to Lessee Operating Agreement states that Weiss shall be the managing member "responsible for the management of the business and affairs of the Company and the day to day operation and functioning of the Property, and Goldman shall be responsible for overseeing matters relating to the funding, financing and refinancing of Property."  (Fifth Amendment to Lessee Operating Agreement § 7(a).)  The Lessee asserts that, for this reason alone, the Debtor should not be entitled to judgment as a matter of law even in the absence of any genuine issues of material fact.  (Opposition Memo at 6.)

This position, however, directly contradicts the Lessee's own admission that the Lease is valid and enforceable.  In response to the Debtor's assertion in the Complaint that "[t]he Lease is a valid and enforceable contract between Lessor and Lessee," the Lessee states in no less than four instances in the Lessee Answer that it "admits [that] the Lease is valid and in force."

(Lessee Answer at 13–14, 17 (admitting the validity and enforceability of the Lease in paragraphs 71, 76, 83, and 102).)  Moreover, in asserting its counterclaims against the Debtor, the Lessee concedes that the Debtor and the Lessee "entered into the Lease" and that the "Lease imposes various obligations on [the Debtor], and vests certain rights in [the Lessee]."  (Lessee Answer at 22.)  Indeed, the Lessee's own counterclaims, certain of which allege that the Debtor breached the Lease, are predicated upon the enforceability (and, therefore, validity) of the Lease. (*Id.* at 25–29.)

Aside from the Lessee's own admissions, the Lessee also warranted and represented that it possessed the authority to execute and enter into the Lease at the time of entry.  Specifically, Article V and section 5.2 of the Lease provide that:

> [A]s of the date of this Lease and continuing up to and throughout the Lease Term . . . Lessee has ***full power and authority to execute*** and to deliver this Lease and all related documents, and to carry out the transactions contemplated herein. This Lease is valid, binding and enforceable as against Lessee in accordance with its terms. ***The execution of this Lease and the consummation of the transaction contemplated herein do not result in a breach of the terms and conditions nor constitute default under or violate Lessee's Articles of Organization*** or any law, regulations, Court order, mortgage, note, bond, indenture, agreement, license ***or other instrument or obligation to which Lessee is a party or by which Lessee or any of the assets of Lessee may be bound or affected***.

(Lease Art. V and § 5.2 (emphasis added).)  As set forth above, the Lessee represented that, among other things, the Lessee possessed the "full power and authority to execute" the Lease and that its execution and the consummation of the contemplated transaction did not breach the Lessee's Articles of Organization or "other instrument or obligation . . . by which Lessee . . . may be bound or affected."  (*Id.* § 5.2.)  As the operating agreement governs the relationships of the Lessee's LLC members, it and any of its subsequent amendments indisputably affects the Lessee.  Accordingly, the Lessee's representations set forth in section 5.2 that its actions are

consistent with any "other instrument or obligation . . . by which Lessee . . . may be bound or affected" likely includes the Fifth Amendment to Lessee Operating Agreement.

Finally, the parties and this case generally have otherwise operated as if the Lease is enforceable and valid. (*See, e.g.*, State Court Decision & Order at 6 (noting that the Defendants "demonstrated the lease assignment was made to All Year"); *id.* at 11 (ordering the Defendants to "pay plaintiff U&O, pursuant to the lease, semi-annually in the amount of $7.5 million"); *id.* (stating that "the parties indicated during a judicial conference that the rent was current, while Weiss averred in an affidavit that Wythe Berry did not have funds to pay rent"); *id.* (stating that "as long as the rent is paid, [the Debtor] has no interest in how [the Lessee] expends its gross revenues"); Lessee Answer at 1–2 (acknowledging that the Debtor and Lessee entered into a lease that Goldman signed on behalf of both parties without asserting that he lacks authority).) Accordingly, the Lessee's assertion that the Lease is a nullity due to Goldman's lack of authority is without merit.

### B. The Parties' Course of Conduct Did Not Modify the Lease

The Lessee also asserts that the parties' "historical course of conduct" modified the Lease in two respects: (i) the payment of rent and (ii) the Lessee's financial reporting obligations. (Counterstatement of Material Undisputed Facts ¶¶ 17, 20, 23, 31; Opposition Memo at 3–4.) This argument fails. Generally, in New York, "a clear and unambiguous no-waiver clause in a commercial lease . . . will be enforced." *36 Main Realty Corp. v. Wang Law Office, PLLC*, 19 N.Y.S.3d 654, 658 (N.Y. App. Term 2015) (citations omitted).[15] Absent evidence in the record of an intent of waiver, courts have otherwise enforced such provisions. *See, e.g., id.* (upholding a "no waiver" clause and the enforceability of lease provisions pertaining to repairs or rent

---

[15] Section 17.11 of the Lease provides that the Lease "shall be governed by and construed in accordance with the laws of the State of New York." (Lease § 17.11.)

notwithstanding tenant's argument regarding parties' course of conduct); *Heartland Assocs. v. Adam Oser Inc.*, 2003 WL 22757714 (N.Y. App. Term. Oct. 15, 2003) (enforcing a "no waiver" clause in a lease where landlord did not provide written waiver of a default).

Section 17.6 of the Lease sets forth the "no waiver" provision and provides that:

> Any failure or delay by Lessor to exercise any right or remedy under this Lease shall not be deemed a waiver of such right or remedy, and no right or remedy of Lessor shall be deemed to be waived unless ***expressly waived in writing by Lessor***. The waiver of any right or remedy by Lessor hereunder shall not constitute or operate as a waiver of any future similar right or remedy. All rights, powers, options, elections and remedies of Lessor herein contained shall be construed as cumulative and no one of them as exclusive of any other or exclusive of any rights or remedies as are or shall be allowed Lessor at law or in equity.

(Lease § 17.6 (emphasis added).) Here, the "no waiver" provision is unmistakably clear—there will be no waiver of any rights or remedies absent an express waiver in writing by the Debtor.

Similarly, section 17.13, which governs amendments and otherwise serves as the "merger clause" of the Lease, provides that oral modification of the Lease is prohibited:

> No changes in or amendments to this Lease shall be recognized unless and until ***made in writing and signed by all parties hereto or them[sic] respective successors and assigns***. This Lease may be executed in two or more counterparts, each and all of which shall be deemed an original and all of which together shall constitute but one and the same instrument. This Lease amends and supersedes any and all prior leases between Lessor and Lessee.

(*Id.* § 17.3 (emphasis added).) Going one step further than the "no waiver" clause, the amendment provision requires that any modifications or amendments to the Lease be made expressly in writing and signed by all parties or their respective successors and assigns. (*Id.*)

Here, the Lessee has not cited to anything in the record or even indicated that the Debtor has either expressly waived its rights and remedies or that the parties had entered into an executed agreement to amend the Lease with respect to the payment of rent and the furnishing of financial information. *See* Fed. R. Civ. P. 56(c)(1)(A) (imposing a burden on the opposing party

to "cite to particular parts of materials in the record" when asserting that a fact cannot be or is genuinely disputed). Rather, the Lessee states only that "every six months, Goldman or someone from his company [All Year] . . . would instruct [the Lessee] to make a payment, in lieu of Rent, directly to All Year" and the Debtor would "only occasionally ask[] [the Lessee] for a specific item of information" notwithstanding the requirements in the Lease. (Weiss Declaration ¶¶ 6–7; *see also* Counterstatement of Undisputed Material Facts ¶ 6 ("[Debtor] directed [the Lessee] to make payments to a third party").) Indeed, the Lessee has provided only a brief email correspondence illustrating a request by All Year for certain financial information. (*See* Weiss Declaration, Ex. D.) This email exchange, however, does not otherwise contain an express waiver of the requirements under the Lease. (*Id.*)

The Lessee also states that it agreed to provide financial information to the Debtor pursuant to the terms of a NDA that, while fully negotiated, was ultimately never executed. (Counterstatement of Undisputed Material Facts ¶ 20.) As the NDA was never executed (and is thus not binding on the parties), it is irrelevant to the issue at hand. The Lessee has not pointed to anything in the record that suggests that parties operated as of the NDA were in effect.

Accordingly, the Lessee has not established that the Lease has been modified by parties' course of conduct. The foregoing discussion also addresses the substance of the Lessee's fifth and tenth affirmative defenses, which assert that as a result of the parties' course of dealing, the Debtor is "equitably estopped" from asserting claims regarding (i) rent (fifth affirmative defense) and (ii) financial reporting (tenth affirmative defense). (Lessee Answer at 19–20.) The foregoing discussion also addresses the substance of the eleventh affirmative defense, which asserts that the Debtor is "equitably estopped" from asserting claims regarding financial reporting under the Lease due to a "fully negotiated" but non-executed NDA. Therefore, the

30

Court **GRANTS** the Motion and **DISMISSES** the Lessee's fifth, tenth, and eleventh affirmative defenses.

### C.  Summary Judgment is Appropriate as to the First, Second, Third, Fourth, and Sixth Causes of Action

Having established that the Lease is valid and enforceable and was not modified with respect to the Lessee's obligations to pay rent and furnish financial information, summary judgment is appropriate as to the first, second, third, fourth, and sixth causes of action for the reasons discussed below.

#### 1.  First and Second Causes of Action

The first and second causes of action allege breach of contract against the Lessee and seek pre- and post-termination damages plus interest, respectively.  Generally, to prevail on a claim for summary judgment for breach of contract, a plaintiff must show "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and the resulting damages."  *Ralusa, Inc. v. 1101 43rd Ave. Realty LLC*, 2015 WL 7348963, at *3 (N.Y. Sup. Ct. Nov. 20, 2015) (citations omitted).

##### a.  *The Debtor has Performed Under a Valid and Enforceable Lease*

The first two elements are satisfied.  As already discussed, the Lessee has conceded that the Lease is a valid and enforceable contract between the Lessee and the Debtor.  Additionally, it is also undisputed that the Debtor has performed under the terms of the Lease and granted the Lessee possession of the Leased Premises, which the Lessee continues to occupy.  (Ravid Declaration ¶¶ 22–23; Lessee Answer ¶ 68 (admitting that the Lessee is "in possession of [the Leased Premises], including the Complex and its Hotel, and in consideration of its possession . . . paid $22.5 million in use and occupancy"); *see also* Lease § 1.1 ("Lessor hereby leases, rents,

and lets unto Lessee, and Lessee hereby leases, rents and hires from Lessor, for the Lease Term"

the Leased Premises).)

>    b.  *The Lessee is in Breach as to Rent and the Production of Financial*
>        *Information*

It is also evident that the Lessee is in breach.  The Lessee does not dispute that it has not

made any payments during the 2021 calendar year.  (Counterstatement of Undisputed Material

Facts ¶ 18 ("Undisputed that [the Lessee] made no such payments during the calendar year

2021.").  As already discussed, the parties' course of conduct has not modified the terms of the

Lease with respect to the payment of rent.  Accordingly, Lessee's failure to pay the February

2021 rent constitutes an event of default pursuant to section 12.1(A) of the Lease.  (*See* Lease §

12.1(A) (stating that the Lessee's failure to pay rent within 30 days of the date required

constitutes an event of default under the Lease).

Additionally, the Debtor further asserts that the Lessee is in breach as it did not comply

with certain financial information reporting obligations set forth under section 16.2 of the Lease.

(Counterstatement of Undisputed Material Facts ¶¶ 10, 20 (acknowledging that section 16.2 of

the Lease requires the Lessee to furnish certain financial information but arguing that the parties'

course of conduct modified its obligations).  Section 12.1(C) of the Lease provides that the

Lessee will be in default if it fails to "observe and perform any covenant, condition or agreement

. . . under this Lease, other than a breach addressed in Section 12.1(A) above, within ten (10)

days after the date Lessee receives written notice of such failure of performance."  (Lease §

12.1(C).)  It is undisputed that the Lessee received the Debtor Notice of Default, dated May 5,

2021, which articulated that the Lessee failed to comply with section 16.2 of the Lease.

(Counterstatement of Undisputed Material Facts ¶ 21; Weiss Declaration ¶ 23; *see* Debtor Notice

of Default at 2–3 (stating how the Lessee has failed to produce certain financial information).)

As already discussed, the Lessee's obligations to provide financial information have not been modified by parties' course of conduct. Accordingly, the Lessee is likely also in default in this respect as it has not pointed to anything in the record or indicated that this breach was timely cured within 10 days of receipt of the Debtor Notice of Default.

In addition to the foregoing, the Debtor has also asserted that the Lessee is in breach of section 3.2 of the Lease for its failure to timely cure at least 17 violations against the Leased Premises from the NYC DOB, constituting an event of default under section 12.1(C) of the Lease. The Lessee asserts that such violations have been cured so that a genuine issue of material fact exists. (*See* Counterstatement of Undisputed Material Facts ¶ 19. *Compare* Ravid Declaration, Ex. 10 at 3 (containing a list of the open NYC DOB violations) *with* Weiss Declaration, Ex. C at 2–18 (including copies of NYC DOB records that reflect that each of the listed open NYC DOB violations in the Ravid Declaration were resolved as of September 2, 2021).) As set forth in section 12.1(C) of the Lease, the Lessee is obligated to cure such violations within 10 days of receipt of the Debtor Notice of Default. (*See also* Debtor Notice of Default at 2 (stating that if Lessee fails to cure the NYC DOB violations within ten days of receipt, an additional event of default would occur pursuant to section 12.1(C) of the Lease).) The NYC DOB records the Lessee provides suggest that the date of resolution with respect to the active violations that the Debtor highlighted was September 2, 2021 but it is unclear whether that date is the actual date of resolution. Accordingly, a potential factual dispute may exist whether the NYC DOB violations were cured.

Notwithstanding the foregoing, the Lessee's failure to pay rent and provide certain financial information are sufficient to render it in breach of the Lease, removing the need for the Court to determine whether a factual dispute exists over the NYC DOB violations.

*c. Abatement of Rent is Not Warranted*

The Lessee has asserted that abatement of rent is warranted given the impact of the

COVID-19 pandemic.  (Opposition Memo at 7.)  In support of this, the Lessee cites to sections

2.1 and 10.1 of the Lease.  Section 2.1 provides that:

> If at any time during the Lease Term the Rent is not fully collectible by
> reason of any Law (as hereinafter defined), Lessee shall enter into such
> agreements and take such other action *as Lessor reasonably requests and*
> *which is not prohibited by any Law*, to permit Lessor to collect the
> maximum permissible Rent (but not in excess of the Rent). On the
> termination of that Law prior to the Expiration Date (a) the Rent shall be
> paid in accordance with this Lease, and (b) Lessee shall pay to Lessor, if
> not prohibited by any Law, the Rent which would have been paid but for
> that Law, less the Rent paid by Lessee to Lessor during the period of that
> Law.

(Lease § 2.1.)  The Lease defines "law" to refer to "any and all federal, state and local laws,

statutes and ordinances and all regulations, orders and directives of appropriate governmental

and accrediting agencies, as such laws, statutes, ordinances, regulations, orders and directives

now existing or that may hereafter be enacted."  (*Id.* § 3.2.)  As the Debtor has recognized, New

York courts have generally rejected the argument that laws imposed due to the COVID-19

pandemic suspended any obligation to pay rent.  *See CAB Bedford LLC v. Equinox Bedford Ave,*

*Inc.*, 2020 WL 7629593, at *2 (N.Y. Sup. Ct. Dec. 22, 2020) (noting that the "executive orders

cited by defendants did not suspend a commercial tenant's obligation to pay rent").

Section 10.1 of the Lease provides that the "Lessee shall be entitled to an equitable

abatement of the rent during such time as it is unable to enjoy the use of the whole or party of the

Leased Premises."  (Lease § 10.1.)  This provision is irrelevant.  Section 10.1 generally relates to

the specific circumstance of the damage or destruction of the building upon which the Leased

Premises sits, including total or partial destruction or damage by any cause.  As the Debtor has

recognized, New York courts have rejected such arguments, finding that physical damage is

typically necessary to implicate such a provision.  *See, e.g. Gap, Inc. v. 170 Broadway Retail Owner LLC*, 195 A.D.3d 575, 577 (N.Y. App. Div. 2021) ("[P]laintiff is not entitled to a rent abatement under the lease 'due to loss of use of all or a portion of the Demised Premises due to [a] Casualty' . . . [which] refers to singular incidents causing physical damage to the premises and does not contemplate loss of use due to a pandemic or resulting government lockdown."); *274 Madison Co. LLC v. Carnegie Nat'l Abstract LLC*, 2021 WL 4264007, at *4 (N.Y. Sup. Ct. Sept. 20, 2021) (concluding that the casualty clause in the lease "exclusively refers to physical damage to the premises and that COVID-19 does not quality as such").

Accordingly, abatement of rent is not warranted.  The foregoing discussion also addresses the substance of the Lessee's sixth, seventh, and eighth affirmative defenses, which assert that (i) the Debtor's claims regarding rent are "barred by operation of the Lease, which entitled [the Lessee] to an abatement of Rent . . . because of the COVID-19 pandemic" (sixth affirmative defense); (ii) "barred by operation of . . . laws or ordinances enacted, in response to the COVID-19 pandemic," entitling the Lessee to an abatement of rent (seventh affirmative defense); and (iii) common law doctrines of commercial impracticability and/or frustration of purpose due to the COVID-19 pandemic (eighth affirmative defense), respectively.  (Lessee Answer at 19–20.) Therefore, the Court **GRANTS** the Motion and **DISMISSES** the Lessee's sixth, seventh, and eighth affirmative defenses.

### d.  *The Debtor is Entitled to Termination of the Lease and Damages*

As the Lessee was in breach of the Lease, the Debtor was permitted to terminate the Lease and is also entitled to damages pursuant to section 12.2(E).  Section 12.2 of the Lease outlines the remedies available to the Debtor in the event the Lessee is in default, including, among other things, (i) termination of the lease; (ii) repossession of the Leased Premises and

ejection of the Lessee or occupant; and (iii) payment of any amounts due to the Debtor at an annual interest rate of 18% until such amounts are repaid. (*See* Lease § 12.2(A) (granting the Debtor termination rights); *id.* § 12.2(B) (permitting the Debtor to repossess the Leased Premises and eject the Lessee or occupant without termination of the Lease and re-let the property); *id.* § 12.2(E) (permitting the Debtor to collect unpaid amounts due to the Debtor so long as not timely paid, irrespective of whether an event of default exists, with such amounts bearing interest at a rate of 18% per annum).) As provided for in section 12.2, the Debtor may elect to pursuant "any one or a combination of" the remedies outlined "without any notice to or demand upon Lessee whatsoever." (*Id.* § 12.2.)

　　　　As already discussed, the Lessee is in breach for its failure to remit the February 2021 rent and the production of certain financial information. Accordingly, the Debtor was permitted to terminate the Lease in accordance with section 12.2(A), which provides that upon the "occurrence and continuance, beyond any applicable cure period, of any Events of Default of Lessee specified in . . . Section 12.1, Lessor shall have the option to . . . terminate [the] Lease." (*Id.* § 12.2(A).) In such an event, the Lessee must "immediately surrender the Leased Premises . . . and if Lessee fails to surrender . . . and otherwise cooperate, Lessor may, without prejudice to any other remedy which Lessor may have, expel or remove Lessee and any other person who may be occupying the Leased Premises . . . at Lessee's expense." (*Id.*) Moreover, the Debtor may, "in addition to the foregoing, seek such other damages and remedies as are available at law or in equity for Lessee's breach of this Lease." (*Id.*) On May 20, 2021, the Debtor issued a Notice of Cancellation, electing to terminate the Lease and the Lessee's tenancy, effective immediately as of May 2021. The Lessee confirmed its receipt of the Notice. (Statement of

36

Undisputed Material Facts ¶ 24; Counterstatement of Undisputed Material Facts ¶ 24

(confirming that the Lessee received the Notice of Cancellation).)

Accordingly, there is no genuine issue of material fact that that the Debtor is entitled to

damages under the Lease given the Lessee's default.

*e.    The Debtor Possessed Authority to Terminate the Lease*

The Lessee asserts that the Debtor lacked authority to terminate the Lease as it (i) the

Assignment Agreement prohibited the Debtor from terminating the Lease without the prior

consent of its lender[16] and (ii) the WB Member Operating Agreement required the unanimous

prior written consent of all members, including Weiss.  (Opposition Memo at 9–13.)  The

Lessee's arguments are unpersuasive.

First, Mishmeret has consistently taken the position that the Debtor's termination of the

Lease was done pursuant to and in accordance with its February 2021 written demand.  In a letter

dated February 18, 2021, Mishmeret stated that it "expects and demands that All Year and [the

Debtor] take all reasonable commercial actions to enforce all available rights and remedies under

the Lease against the Lessee."  (Katzav Affirmation, Ex. 1 at 2.)  While the Lessee takes issue

with the timing of this letter, stating that it was issued prior to Mishmeret officially became

lender on February 28, 2017, such timing is irrelevant.  (*See* Opposition Memo at 9–10 (arguing

that the Debtor failed to produce any prior written consent from Mishmeret after it became the

Debtor's lender).)  Indeed, Mishmeret confirms that it has not taken any steps to "step into

Debtor's shoes" as landlord of the Leased Premises pursuant to section 3 of the Assignment

Agreement, which provides that Mishmeret "may (but shall have no obligation to . . . ) perform

---

[16]    Section 6(b) of the Assignment Agreement provides that "Borrower shall not terminate, grant concessions in connection with, modify or amend any Lease without the prior written consent of Lender, except in accordance with the terms of the Security Instrument."  (Assignment Agreement § 6(b).)

all acts necessary and appropriate for the operation and maintenance of the Property" where an

event of default has occurred and remains continuing.  (Assignment Agreement § 3; Katzav

Affirmation ¶ 8 (stating that Mishmeret "has not stepped into [the Debtor's] shoes as landlord").)

Rather, Mishmeret makes clear that it "has instead (subject to its reservation of rights . . . )

looked to [the Debtor] to proceed directly against defendants, including by bringing this action in

[the Debtor's] name."  (Katzav Affirmation ¶ 9.)  Indeed, Mishmeret notes that the Debtor,

"consistent with Mishmeret's demand in its February 18, 2021 letter, continued to enforce

Lessor's rights and remedies under the Lease, including by noticing defaults under the Lease,

terminating the Lease, and commencing a lawsuit on the Lease, and, through each's counsel,

kept Mishmeret apprised of developments across its enforcement efforts."  (*Id.* ¶ 7).  Moreover,

Mishmeret further confirms that the Debtor's service of the Debtor Notice of Default, the

subsequent Notice of Cancellation, and the filing of the Complaint in the Debtor's name were,

"at all relevant times hereto . . . consistent with Mishmeret's demand and consent to take these

actions."  (*Id.* ¶ 8.)

    The Debtor also asserts that the State Court Decision & Order had already addressed the

issue of Debtor's standing and that its ruling remains the law of the case.  (Partial Summary

Judgment Memo at 6.)  Rule 9027(i) of the Federal Rules of Bankruptcy Procedure provides that

"[a]ll injunctions issued, orders entered and other proceedings had prior to removal shall remain

in full force and effect until dissolved or modified by the court."  *See also In re Briarpatch Film

Corp.*, 281 B.R. 820, 830 (Bankr. S.D.N.Y. 2002) (stating "the fact that a State action may

technically be removed at a late stage and even after judgment has been entered does not, in the

bankruptcy context, invalidate the principle that the bankruptcy court is bound to respect State

court orders and judgments").  However, the State Court's determination that the defendants

"failed to sustain their burden of showing plaintiffs lack standing" was premised on the court "declin[ing] to take judicial notice of [certain] loan documents."  (State Court Decision & Order at 7.)  As the State Court's ruling was not based on the substance of the relevant agreements, the Debtor's argument in this respect is unpersuasive.  Additionally, counsel to the Debtor stated at the hearing that the Debtor was not arguing that preclusive effect should be given to the State Court Decision & Order.

Second, section 5.2 of the WB Member Operating Agreement, which governs "Major Decisions," states that the "Managing Member shall have no authority to bind the Company" without the "prior written unanimous consent of all the Members" with respect to, among other things, the termination of the Lease "provided that the Lessee is not in material financial default under the terms of the Lease."  (WB Member Operating Agreement § 5.2.9.)  Generally, under New York law, the failure to timely pay rent is considered a "material financial default" under the terms of the Lease.  *See, e.g., Madison Ave. Leasehold, LLC v. Madison Bentley Assoc. LLC*, 861 N.E.2d 69 (N.Y. 2006) ("An agreement to pay rent on a certain date is generally a material term of a lease."); *Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 N.Y.2d 573, 575 (N.Y. 1979) (determining that "failing to tender payment of two monthly rental payments or even offering to cure the default" rendered the tenant in "willful breach of a material term of the lease").  As the Lessee has itself conceded, the Lessee has not made any payments to the Debtor during the 2021 calendar year, which by itself constitutes a material default.

Accordingly, the Debtor possessed the authority to terminate the Lease.

### *f.   Partial Summary Judgment is Appropriate*

Given the foregoing, the Court **GRANTS** the Motion as to the Lessee with respect to the first cause of action for pre-termination rent and interest due under Article 2 and section 12.2(E)

of the Lease.  The Debtor seeks a "monetary judgment against the Lessee, in an amount to be determined at trial, but no less than $7,500,000.00 plus interest."  (Complaint at 21.)  Any damages award must await further proceedings.

As the Lessee remains in possession of the Leased Premises, the Court **GRANTS** the Motion as to the Lessee with respect to the second cause of action for any post-termination damages and interest due under due under Article 2 and section 12.2(E) of the Lease in an amount to be decided but with consideration of any amounts already paid for use and occupancy. The Debtor seeks a "monetary judgment against the Lessee, in an amount to be determined at trial, but no less than $157,500,000.00, plus interest."  (*Id*.)  The Debtor has asked that a hearing be held to determine the appropriate amount of post-termination monetary damages as it asserts that liability against the Lessee will continue to accrue until the Lessee surrenders possession of the Leased Premises.  (Partial Summary Judgment Memo at 13.)

Additionally, the foregoing discussion also addresses the substance of the Lessee's first, second, third, and fourth affirmative defenses, which assert (i) that the Debtor is not the real party in interest and lacks standing (first affirmative defense); (ii) Mishmeret is the real party in interest and has not ratified, joined, or been substituted into the action (second affirmative defense); (iii) the Debtor failed to obtain the required written authority from Mishmeret to commence this action (third affirmative defense); and (iv) the Debtor failed to obtain the unanimous consent of the members of WB Member LLC to terminate the Lease (fourth affirmative defense), respectively.  (Lessee Answer at 18–19.)  Accordingly, the Court **GRANTS** the Motion and **DISMISSES** the Lessee's first, second, third, and fourth affirmative defenses.

### 2.  Third Cause of Action

The third cause of action seeks a declaration that the Lease has been terminated, effective May 20, 2021.  As noted above, section 12.2(A) grants the Debtor the unilateral right to terminate the lease in the event the Lessee fails to timely cure the nonpayment of rent.  (Lease § 12.2(A).)  For the reasons discussed above, the Debtor was entitled to terminate the Lease.

Accordingly, the Court **GRANTS** the Motion as to the Lessee with respect to the third cause of action and declare that the Lease was cancelled and terminated by the Notice of Cancellation on May 20, 2021.

### 3.  Fourth Cause of Action

The fourth cause of action seeks an ejectment of the Lessee from the Leased Premises.  As already discussed, the Debtor terminated the Lease pursuant to its rights and remedies under section 12.2(A) of the Lease.  In such an event, the Lessee must "immediately surrender the Leased Premises . . . and if Lessee fails to surrender . . . and otherwise cooperate, Lessor may, without prejudice to any other remedy which Lessor may have, expel or remove Lessee and any other person who may be occupying the Leased Premises . . . at Lessee's expense."  (Lease § 12.2(A).)  Indeed, such a right exists even "without notice to or demand upon the Lessee" and/or the termination of the Lease.  (*Id.* at Article 2.)  Section 12.2(B) permits the Debtor to enter and take possession of the Leased Premises and "expel or remove Lessee and any other person who maybe occupying Leased Premises, at Lessee's expense . . . without terminating [the] Lease."  (*Id.* § 12.2(B).)  It is undisputed that the Lessee remains in possession of the Leased Premises.

Accordingly, the Court **GRANTS** the Motion as to the Lessee with respect to the fourth cause of action.  The Debtor also seeks entry of an order that "permanently enjoins the Lessee

from occupying or possessing the Leased Premises." (Complaint at 22.) Entry of such an order,

however, must await the entry of a final order or judgment

### 4.  Sixth Cause of Action

The sixth cause of action seeks payment of attorneys' fees pursuant to the terms of the

Lease. Section 17.2 of the Lease provides:

> In the event either Lessor or Lessee institute any proceedings to enforce or
> interpret any provision of this Lease, the prevailing part will be entitled to
> recover its legal expenses, including without limitation, reasonable
> attorney's fees, costs, and necessary disbursements, in addition to any other
> relief to which such party shall be entitled.

(Lease § 17.2; *see also id*. § 14.2 ("Lessee agrees to and does hereby indemnify and hold the

Lessor . . . harmless from and against any claims, demands, causes of action, liability, loss,

damage, deficiency, cost or expense (including . . . reasonable attorney's fees . . . ) resulting from

(i) the acts or omission of Lessee and Lessee's employees"); *id*. § 12.2(A) (stating that the

"Lessor may . . . expel or remove Lessee . . . at Lessee's expense . . . [and] seek such other

damages and remedies as are available at law or in equity for Lessee's breach").)

Accordingly, the Court **GRANTS** the Motion as to the Lessee with respect to the sixth

cause of action. The determination of the amount of any monetary damages and attorneys' fees

must await further proceedings.

### D.  Dismissal of Affirmative Defenses and Counterclaims is Appropriate Under Summary Judgment

In response to the Debtor's requested dismissal of the Lessee's affirmative defenses and

counterclaims, the Lessee argues solely that the Debtor's request should have been brought under

Rules 12(f) and 12(b) of the Federal Rules of Civil Procedure, respectively, as opposed to Rule

56. (Opposition Memo at 13–14.) Accordingly, the Lessee asserts that the Debtor's request for

dismissal is therefore, time barred.

Generally, by its own language, Rule 56 may be applied to claims and defenses. (*See* FED. R. CIV. P. 56(a) (provides that a party "may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought").) In support of its contention that Rule 12(f) applies, the Lessee cites to *Bernstein v. Universal Pictures, Inc.*, 517 F.2d 976, 979 (2d Cir. 1975).[17] However, the *Bernstein* case only mentions in passing that the lower court had concluded that Rule 56 was an "inappropriate vehicle for dismissal of affirmative defenses" and made no ruling itself on the matter. As such, the *Bernstein* case is not instructive. Indeed, courts have dismissed affirmative defenses and counterclaims based on a summary judgment. *See, e.g.*, *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 2022 WL 3536133, at *5 (S.D.N.Y. Aug. 17, 2022) (granting a motion for summary judgment on plaintiff's breach of contract claims and on all of defendant's affirmative defenses and cross-motion for summary judgment). Accordingly, affirmative defenses and counterclaims may be dismissed under summary judgment pursuant to Rule 56.

### 1.  Dismissal of the Remaining Affirmative Defenses

Dismissal of the Lessee's affirmative defenses is warranted. Generally, where a plaintiff seeks summary judgment to "challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.'" *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993) (internal quotations omitted)). This is consistent with the notion that "in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be no genuine

---

[17]    The Lessee has offered no support for its contention that Rule 12(b) applies as opposed to Rule 56 with respect to the dismissal of the Lessee's counterclaims.

issue as to any material fact since a complete failure of proof concerning an essential element of

the [defendant's affirmative defense] necessarily renders all other facts immaterial."

*Giammettei*, 34 F.3d at 54–55 (quoting *Celotex*, 477 U.S. at 323) (internal quotations omitted).

As such, "[f]ederal courts may deem a claim abandoned when a party moves for summary

judgment on one ground and the party opposing summary judgment fails to address the argument

in any way." *Dunkin' Donuts Franchised Rest. LLC v. Tim & Tab Donuts, Inc.*, 2009 WL

2997382, at *9 (E.D.N.Y. Sept. 15, 2009) (finding defendants abandoned their affirmative

defenses and counterclaims by failing to oppose and granting plaintiffs' motion for summary

judgment as to the same) (citation omitted).

Here, the Lessee has failed to adequately oppose dismissal, arguing only that the Debtor

is "improperly [trying] to recast a Rule 12(f) motion as a Rule 56 motion." (Opposition Memo at

14.) For reasons already discussed, this assertion is meritless. While alternative grounds exist

for the dismissal of the Lessee's first through eighth and eleventh affirmative defenses as noted

above, dismissal is also warranted with respect to all twenty affirmative defenses on grounds that

the Lessee has not otherwise presented any facts or legal arguments to sustain them.

Accordingly, the Court **GRANTS** the Motion and **DISMISSES** the Lessee's affirmative

defenses.

## 2. Dismissal of the Counterclaims

The Lessee's sole argument in opposition to the dismissal of its counterclaims is that

Rule 12(b) of the Federal Rules of Civil Procedure applies. (*Id.* at 3, 14.) Again, for reasons

already discussed, this argument is meritless as well. The Lessee has also failed to provide any

facts or legal arguments to sustain its counterclaims and "abandoned" its claims. *See Dunkin'*,

2009 WL 2997382, at *2 ("Federal courts may deem a claim abandoned when a party moves for

summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citation omitted).

Accordingly, the Court **GRANTS** the Motion and **DISMISSES** the Lessee's counterclaims.

## IV.    <u>CONCLUSION</u>

For the reasons discussed, the Court **GRANTS** the Motion as to the first, second, third, fourth, and sixth causes of action and **DISMISSES** the Lessee's affirmative defenses and counterclaims.

**IT IS SO ORDERED.**

Dated:    October 5, 2023
          New York, New York

_Martin Glenn_

MARTIN GLENN
Chief United States Bankruptcy Judge